UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JAKUB MADEJ | : |
| | : CIVIL ACTION NO. |
| PLAINTIFF | : 3:20-cv-00133-JCH |
| | : |
| v. | : |
| | : |
| YALE UNIVERSITY, MARVIN CHUN, | : |
| MARK SCHENKER, PETER SALOVEY AND | : |
| JESSIE ROYCE HILL | : |
| | : |
| DEFENDANTS | : |
| | : MARCH 19, 2020 |

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO
PLAINTIFF'S MOTION FOR EXPEDITED DISCOVERY**

**I.    Factual Background.**

As this Court already knows as a result of the March 3, 2020 hearing on the plaintiff's application for injunctive relief relating to his prescription medication, the plaintiff was placed on an involuntary two semester withdrawal from his studies at Yale University because he received an F in the course entitled ECON 456 when he was on Academic Warning. The following facts are undisputed:

- The plaintiff was notified on October 10, 2019 that he was on Academic Warning and that he would need to pass all of his courses in order to avoid an involuntary withdrawal. (PX 13, p. 1)

- The plaintiff has admitted that it was his responsibility to monitor his own academic progress pursuant to Yale's Programs of Study. Id.

- On October 10, 2019, two weeks prior to mid-term exams, the plaintiff received a letter from Dean Hill stating: **"Please note if you do not pass all of your courses during the Fall 2019 term, you will be withdrawn from Yale for academic reasons".** (DX E.)

- As a result of these communications, which occurred two weeks prior to mid-term examinations and eight weeks prior to the end of the term, the plaintiff was fully aware that a failing grade in any of his courses that semester would result in his involuntary withdrawal from Yale College for two semesters.

- On November 22, 2019 Michael Schmertzler, the plaintiff's instructor for the course ECON 456, contacted the plaintiff to inform him that he was "at clear risk of failing his course." (DX J, p. 1; Schmertzler Affidavit, ¶ 5-6). The plaintiff's score on the mid-term exam was 30%, the lowest in the class. On the only other written assignment the plaintiff had scored a 65, also very low for this class.

- Professor Schmertzler offered to help the plaintiff if he wanted, and he counseled the plaintiff: "If you are to pass this course, you will have to write a solid final." The plaintiff never availed himself of the opportunity to obtain assistance from Professor Schmertzler. Id. ¶¶ 8-16.

- The plaintiff waited two full weeks before even responding to Professor Schmertzler's email. At that time, he reported that he was spending "40+ hours" managing his education consulting business, and, therefore, he had little time to spend on course work. (DX J, p. 1; SchmertzlerAffidavit, ¶ 9.) The plaintiff also stated that he was aware that if he failed just one class, he would be automatically withdrawn and stated: "I don't aspire to get an A or even a B, but I hope not to get an F." (DX J, p. 1; Schmertzler Affidavit, ¶ 11.)

- On December 12, 2019, the first day of the final exam period, Professor Schmertzler posted the take-home final examination for access by students in the class and stated to all students in the class in his email that the response to the take-home exam needed to be transmitted to him no later than 5:30 p.m. on December 18, 2019, adding: "NO PAPER SENT AFTER THAT TIME WILL BE ACCEPTED WITHOUT A DEAN'S WRITTEN EXCUSE. SERIOUSLY." (Emphasis in original) (Schmertzler Affidavit, ¶ 15.)

- Despite having six days to prepare his final exam for submission and despite his knowledge of the firm deadline of 5:30 p.m., the plaintiff did not submit his final exam until 8:55 p.m. on December 18, 2019. (DX L, p. 2; Schmertzler Affidavit, ¶ 17.)

- When Professor Schmertzler asked for an explanation for the late submission, the plaintiff admitted that he had no valid excuse: "I want to be honest; don't have a good excuse. I can't motivate myself to do class-related stuff with everything I try to do in real life… [A]fter 3 years at Yale I became more cynical about school—I still can't wrap my mind around that most Yale students spend

- days writing papers some graduate student flips through for four minutes and writes 1-sentence-long feedback." (DX L, p. 1; Schmertzler Affidavit, ¶ 18.)

- In further explanation of his tardy response on the exam, the plaintiff acknowledged that he had left to the last day of the exam period a large number of tasks: "I submitted a paper for a computer science & law class also late, and also at the airport. I have no convincing excuse for this, either—I could build an argument that the passport was more important than the paper but (1) I had days to write the paper, (2) I wouldn't believe this either." (DX L, p. 1; Schmertzler Affidavit, ¶ 19.)

- The plaintiff acknowledged that Professor Schmertzler's deadlines and requirements for submitting the final examination were "unambiguous and it was always my responsibility to meet them. I didn't and I'm sorry." (DX L, p. 1; Schmertzler Affidavit, ¶ 20.)

- The Programs of Study unambiguously provides: "A record that shows a grade of F for a student who is on Academic Warning in that term will result in that student's dismissal for academic reasons." (DX A, p. 3.)

- After being notified of his involuntary withdrawal for two semesters, the plaintiff filed a petition for an exception to the unambiguous rule outlined in the Programs of Study. In that petition to the Committee on Honors and Academic Standing ("CHAS"), the plaintiff stated: "I am familiar with Undergraduate Regulations, and I acknowledge, accept and agree that Dean Hill correctly applied the rule imposing the dismissal on me." Id., p. 1. The plaintiff also stated in his petition to CHAS: "I don't think Academic Regulations should apply differently to me than to any other student at Yale, nor do I think I'm above the Academic Regulations." Id., p. 11-12.

Given the foregoing undisputed facts, there is nothing surprising or inappropriate about Yale enforcing its clearly stated rules. During the hearing on plaintiff's motion seeking to compel Yale University to provide him with additional prescription medications, the Court noted that, as of the time of that hearing, the plaintiff had not made the required showing of a likelihood of success or serious questions going to the merits, which is a requirement for any application for preliminary relief. The Court also noted that where, as here, a mandatory injunction is sought, the plaintiff's burden of proof is even higher. The Court informed the plaintiff during that hearing that the plaintiff would have the opportunity to submit additional

3

materials on his motions for the Court's consideration no later than March 15, 2020. Up to the present time, the plaintiff has not done so. It is also noteworthy that, in an effort to understand plaintiff's arguments in advance of filing defendants' brief in opposition to the motion for preliminary injunction, defense counsel emailed the plaintiff numerous times requesting a date when plaintiff's brief would be filed. The plaintiff initially responded that he planned to file his brief by 8:00 a.m. on February 24, 2020. Thereafter, there were numerous emails between defense counsel and plaintiff, and each time the plaintiff offered a different time when he would file his brief, the latest one being March 5, 2020. (E-mail correspondence attached hereto as Attachment 1.) When no brief in support of the plaintiff's motion was filed, defendants filed their response to the application for preliminary injunction as scheduled on March 9, 2020. In short, the plaintiff has offered no justification for his Motion for Expedited Discovery.

**II.     The Plaintiff's Motion Should Be Denied Pursuant To Fed. R. Civ. P. 26(D)(1).**

Rule 26 (d)(1) provides that, with certain exceptions, "a party may not seek discovery from any source before the parties have conferred as required by Rule 26(f). The Court's Scheduling Order requires that the Rule 26(f) report be jointly filed no later than March 20, 2020. In anticipation of the need to file the Rule 26(f) report, defense counsel emailed a proposed discovery plan to the plaintiff on March 11, 2020. See Attachment 2. When the plaintiff failed to respond over the next several days, defense counsel then emailed him again on March 17, 2020 asking that he respond. Id. The plaintiff has still not responded to the proposed discovery plan. Instead, even though defense counsel's email on March 17 at 11:47 a.m. noted that defense counsel was unavailable on March 19 and 20 due to other commitments (and therefore requested that the plaintiff respond by the end of the day on March 18), the plaintiff sent seven Notices of Deposition for March 20 and 21 at 9:58 p.m. on March 17.

4

Thus, the plaintiff intentionally scheduled depositions at a time when he knows defense counsel has other commitments, and he intentionally failed to respond to defense counsel's proposed Rule 26(f) report. As outlined in greater detail in defendants' Motion to Quash the Notices of Deposition filed by the plaintiff, the Notices of Deposition are defective, and the depositions should not be allowed.

The plaintiff informed defense counsel on March 2, 2020 that he would prefer to meet in person for the Rule 26(f) conference. During that same conversation, he informed defense counsel that he was leaving the country on the evening of March 5. Since defense counsel was unavailable to meet on either March 3 or 4, it was agreed at that time that the in-person meeting which the plaintiff requested would be held when the plaintiff returned for the hearing on the preliminary injunction, which at that point was planned to be March 17, 2020.[1] The plaintiff repeated to the Court his plan to leave the country on the evening of March 5, during the hearing held on the plaintiff's request for injunction relating to his medication prescriptions on the afternoon of March 5. Defense counsel has had several email communications with the plaintiff, and each time has wished the plaintiff well as he visits with family in Poland. It only came to defense counsel's attention on the morning of March 18 that in fact, contrary to the terms of his involuntary withdrawal, the plaintiff has been surreptitiously living on the Yale campus in a basement room reserved for club meetings since January 17, 2020. When approached by the Superintendent of the Old Campus, the area of campus where the majority

---

[1] As the Court well knows, our world has changed substantially since March 2, 2020. Defense counsel, like most law offices and businesses, has adopted policies to severely restrict in-person communications. Accordingly, at the present time, defense counsel is unwilling to have an in-person meeting with the plaintiff for the purpose of discussing the Rule 26(f) report, or for any other purpose.

5

of first-year undergraduate students reside, the plaintiff refused to vacate and claimed that Edward Snyder, a professor at the School of Management, a graduate school, gave him permission to live there. See Attachment 3. Professor Snyder stated that he had given the plaintiff no such permission; indeed, Professor Snyder has no role in governance over undergraduate students, and he has never been involved with CHAS, which governs only undergraduate students. He has no authority to countermand restrictions placed on a student by CHAS. See Affidavit of Edward Snyder, filed concurrently with this memorandum. When the plaintiff continued his refusal to vacate the space, which was clearly not a dormitory room, the Yale Police Department was required to remove him. It should be noted that the plaintiff was quite well aware of the fact that under the rules, once he was placed on involuntary withdrawal, the plaintiff was not allowed to be present anywhere on campus.

There is absolutely no basis for the plaintiff to be given permission to circumvent the requirements of Rule 26 or the norms of engaging in discovery in an organized fashion. This would be so even in usual times. However, the plaintiff's present application is especially inappropriate at a time when the President of the United States, the Governor of the State of Connecticut, and this Court have all enacted extraordinary measures to combat the coronavirus. As noted in defendants' Motion to Quash the plaintiff's Notices of Deposition, it is, as a practical matter, impossible for the witnesses the plaintiff wishes to depose to be available on Friday, March 20 and Saturday, March 21. For this reason alone, the plaintiff's Motion for Expedited Discovery should be denied.

**III.     The Plaintiff's Motion For Expedited Discovery Should Be Denied Because There Is No Way For This Court To Provide The Relief The Plaintiff Seeks.**

The plaintiff filed this action and his Application for Preliminary Injunction in an effort

to graduate with his class in May, 2020. As laid out in great detail in defendants' Brief in Opposition to the Motion for Preliminary Injunction, the plaintiff is now seven courses short of meeting the graduation requirements. Even if the Court were to grant the injunction permitting the plaintiff to return to campus and try to take classes, there is no way for the plaintiff to achieve his goal. At the present time, the plaintiff has not signed up for any classes. Doing so at this point would mean that the plaintiff would need a total of seven courses to complete his requirements for graduation. On-line classes resume on Monday, March 23, 2020 and the last day of class is April 24, 2020. Thus, there are just five weeks of class left in the 13 week semester. The plaintiff has not yet signed up for a single course, nor is it likely that any professor will agree to have the plaintiff join a course at this late date.[2] As outlined in defendants' Brief in Opposition to the Motion for Preliminary Injunction, it is literally impossible for the plaintiff to achieve his goal of graduating this spring. Accordingly, there is no basis for this Court to interrupt the normal discovery process.

### IV.  The Plaintiff's Application for Expedited Discovery Should Be Denied Due to His Delay in Filing It.

Unreasonable delay in seeking preliminary relief is, in and of itself, grounds to deny the requested relief. "Preliminary injunctions are generally granted under the theory that there is an urgent need for speedy action to protect Plaintiffs' rights." Media Group, Inc. v. Ontel Prods. Corp., 2001 U.S. Dist. LEXIS 1993, *6-7 (D. Conn. Feb. 14, 2001) (Hall, J.) (quoting Citibank v. Citytrust, 756 F.2d 273, 276 (1985)). For this reason, it is well settled in the Second Circuit that a delay in seeking injunctive relief "*standing alone*" is sufficient to deny an application for a preliminary injunction. Tough Traveler, Ltd. v. Outbound Prods., 60 F.3d 964, 968 (2d Cir. 1995) (emphasis added); Borey v. Nat'l Union Fire Ins. Co. of

---

[2] Under Yale's rules, students who wish to join a class late in the semester must have the permission of the Professor teaching that class.

7

Pittsburgh, 934 F.2d 30, 35 (2d Cir. 1991) (delay belies claim of irreparable harm); Richard A. Leslie Co., Inc. v. Birdie, LLC, 2007 U.S. Dist. LEXIS 88437, *5 (S.D.N.Y. Nov. 26, 2007) (delay was sufficient "in and of itself" to warrant denial of preliminary relief.)

This case, like the plaintiff's current academic difficulty, is rife with unreasonable delay. The plaintiff filed this action on January 20, 2020. He waited a full month before filing his "emergency" Motion for Preliminary Injunction. Despite repeated requests from defense counsel, plaintiff has yet to file a brief in support of his "emergency" Motion for Preliminary Injunction. The plaintiff, who knew as of February 18, 2020 that he was no longer eligible for treatment through the Yale Health Plan, waited until he had just three doses left of his daily medication to seek emergency relief from this Court on March 4, despite knowing that he would be leaving the country and returning to Poland on March 5. He then waited until after learning that defense counsel was unavailable to conduct any discovery on March 20 to file his Motion for Expedited Discovery at 3:08 a.m. on February 17, seeking yet another emergency ruling from the Court. Under well-established principles governing the applications for preliminary relief, plaintiff's current application should be denied. [3]

## V.  Conclusion.

The plaintiff has not made any showing that he needs an emergency order requiring immediate delivery of discovery, for the simple reason that it is plaintiff's own written statements which demonstrate that he cannot meet the exact requirements of a mandatory preliminary injunction in that matter. Therefore, and for all the reasons stated in this memorandum, the plaintiff's application for expedited discovery should be denied.

---

[3] In order to spare the Court a lengthy argument, the defendants have not addressed the scope of the plaintiff's requested discovery. However, it should be noted that the plaintiff's claim that he needs discovery in order to understand the CHAS procedures and learn the identity of its members is disingenuous at best. The members of the committee are listed on Yale's website and have already been disclosed in both the plaintiff's and defendants' exhibits, already on file with this Court. Similarly, the rules governing CHAS are also on Yale's website and were also made exhibits previously. See PX 1 and PX 4; DX A and B.

THE DEFENDANTS,

YALE UNIVERSITY, MARVIN CHUN, MARK SCHENKER, PETER SALOVEY AND JESSIE ROYCE HILL

By: /s/
PATRICK M. NOONAN – CT00189
DONAHUE, DURHAM & NOONAN, P.C.
Concept Park
741 Boston Post Road, Suite 306
Guilford, CT  06437
Telephone:  (203) 458-9168
Email:  pnoonan@ddnctlaw.com

## CERTIFICATION

I hereby certify that, on the above-written date, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the court's CM/ECF System.

/s/
Patrick M. Noonan