UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JAKUB MADEJ | : | |
| PLAINTIFF | : | CIVIL ACTION NO. 3:20-cv-00133-JCH |
| v. | : | |
| YALE UNIVERSITY, MARVIN CHUN, MARK SCHENKER, PETER SALOVEY AND JESSIE ROYCE HILL | : | |
| DEFENDANTS | : | APRIL 7, 2020 |

**DEFENDANTS' MOTION FOR ORDER FOR RELIEF FROM REQUIREMENTS OF LOCAL RULES TO COMMUNICATE WITH THE PLAINTIFF IN PERSON OR VIA TELEPHONE**

The defendants hereby move for an order relieving defense counsel from the requirements of the Local Rules of Civil Procedure to communicate with the plaintiff in person or via telephone. Rather, defense counsel seeks an order of the Court requiring that the plaintiff and defense counsel communicate only through written email correspondence.

In his most recent filing with the Court, the plaintiff claims that defense counsel has been ignoring him. (Entry No. 70, p. 2.) This is patently untrue. Defense counsel has spoken to the plaintiff via telephone on numerous occasions since the beginning of this litigation. The plaintiff and defense counsel have also exchanged countless e-mails. In a recent e-mail exchange on April 2, 2020, the plaintiff claimed to have called defense counsel "at least four times yesterday" and accused defense counsel of ignoring those calls.[1] The plaintiff also asserted that he drove to Guilford, the location of defense counsel's office, but defense counsel "didn't make it any easier." The plaintiff then requested that he and defense counsel schedule an in person meeting either in Guilford or New Haven the following week to meet and confer.

[1] A copy of the April 2, 2020 e-mail correspondence is attached hereto as Exhibit A.

(Exhibit A hereto, p. 5.) All of this occurred after the Court had already denied the plaintiff's second motion for expedited discovery, concluding that expedited discovery was unnecessary in light of the Court's ruling on the plaintiff's motion for preliminary injunction and entry of a scheduling order. (Entry No. 68.)

Upon learning that the plaintiff intended to meet with defense counsel in person, defense counsel wrote the plaintiff the following e-mail, pleading with him to abide by the rules promulgated by the President and Governor:

> I am stunned that you would suggest that either of us should violate the rules promulgated by the President and the Governor during this emergency. I have been scrupulously abiding by those rules. I have not, and will not, meet with anyone in person aside from my wife. I have four children and five grandchildren, who are more important to me than my own life. I have not been able to hug any of them, and none of them have been in my house, nor I in theirs. At this moment, a former law partner who was my mentor and became a close friend is struggling for his life on a respirator at YNHH due to the COVID virus. It pains me that I cannot see him and beg him to continue the struggle to live. But I will not be doing any of those things, because my children are terrified that I will not survive an encounter with the virus; and I would never forgive myself if I were responsible for destroying another's family due to my callous refusal to obey the restrictions. In short, I will not meet you at any time or any place until it is safe to do so. I am begging you to abide by the restrictions and stay away from everyone except for obtaining your food.

(Exhibit A hereto, p. 3.)

Defense counsel went on to inform the plaintiff in that email that he received no calls from the plaintiff to either his office phone or cell phone the previous day. There were no voicemail messages from the plaintiff on that day on either the office or cell phone; and defense counsel did not have any missed calls on his cell phone. Defense counsel has been abiding by the orders of the President and the Governor to work from home as much as possible. Defense counsel was not in his office on April 1. However, those present in the office reported that no one arrived at the office seeking to meet with him. (Exhibit A hereto, p. 3.) When confronted with these facts, the plaintiff then stated that he called defense counsel on

March 31, 2020 at 1:34 p.m., 2:05 p.m., and 4:01 p.m. He also claimed that he had driven to Guilford on his way from Walmart and called defense counsel, but, when defense counsel did not answer, the plaintiff did not feel comfortable walking into defense counsel's office. (Exhibit A hereto, p. 2.) Defense counsel did not receive any calls, messages, or missed calls from the plaintiff during the week of March 30, 2020. However, defense counsel received and responded to the plaintiff's several e-mails during that week. Contrary to the plaintiff's claims, defense counsel has never ignored plaintiff's telephone calls or messages. Defense counsel has responded either by telephone or by e-mail.

In addition to falsely maintaining that defense counsel ignored the plaintiff's telephone calls, the plaintiff's recent e-mail communications with defense counsel also demonstrate that the plaintiff's interpretation of conversations and events, to put it most charitably, is often at variance with the facts. Despite Judge Hall's 41 page ruling on his application for preliminary injunction, the plaintiff apparently still maintains the following beliefs:

- "[T]his case has nothing to do with my grades."
- "Yale College's 'appeal process' is a sham – because there is no appeal process."
- "Mark Schenker never read what I wrote; no committee has ever met to discuss this dismissal; most likely no committee exists."

(Exhibit A hereto, p. 1.) Judge Hall's ruling on the motion for preliminary injunction demonstrates that the plaintiff's grades are a central issue in this case, since Judge Hall observed that receiving a grade of F while on Academic Warning was the cause of the plaintiff's dismissal. (Ruling, p. 22-23, 25, 30-31, 35-36.) Judge Hall also concluded that Yale University provided the plaintiff an opportunity for an appeal of his dismissal. The plaintiff was permitted to petition to CHAS for an exemption from the automatic academic withdrawal, the Committee reviewed that petition and the plaintiff's academic record, and Dean Schenker communicated the Committee's findings, and the justification therefor, to the plaintiff. (Ruling, p. 23, 26, 32-33, 36.) The fact that the plaintiff persists in his beliefs to the contrary demonstrates that

plaintiff's interpretation of conversations and events, on matters central to his lawsuit, is frequently at odds with the historical facts.

The plaintiff has made numerous inaccurate and contradictory statements during the pendency of this action:

- The plaintiff brought this action asserting breach of contract and negligence claims arising out of his dismissal from Yale University despite informing both his College Dean and CHAS that his academic dismissal was in accordance with Yale University's policies and recognizing that the Yale University's policies should not apply differently to him than to any other student at Yale.

- On March 4, the plaintiff filed an affidavit with the court stating: "While at Yale Health, I regularly saw a psychiatrist and a therapist. I know their names and contact information. For over two years, I regularly received two prescription medication for depression and attention deficit disorder." (Entry No. 28-1, p. 2.) These statements led the Court to believe that the plaintiff had been receiving treatment and medications through the defendant for two years. In fact, the plaintiff had first received the treatment and medications at issue through the defendant in December, 2019. Instead of receiving psychiatric therapy for a period of two years, the plaintiff had just one session with the psychiatrist prior to receiving the grade of F and being involuntarily withdrawn. (Exhibit A to Affidavit of Dr. Paxton.)

- During the hearing regarding the plaintiff's medications on March 5, the plaintiff represented to the Court that he was leaving for Poland that very evening. On March 19, the plaintiff averred that he had not been to a country with a travel restriction within the past two weeks. (Entry No. 51-1, p. 3.) Neither this Court nor defense counsel can know which of these statements – made just two weeks apart – is accurate.

- In prior communications, the plaintiff has variously represented that he spent the winter break in Poland, France or China. Again, there is no way for anyone to determine which, if any, of these statements mirrors reality.

- On March 17, the Superintendent of the Old Campus discovered the plaintiff living on campus in a basement room reserved for club meetings. This was at a time when students were not on campus. The plaintiff claimed that Edward Snyder, a professor at the School of Management, gave him permission to live there. In fact, Professor Snyder never gave the plaintiff permission to reside there, nor could he have given such permission. (Affidavit of Professor Snyder.) The plaintiff's refusal to vacate required the involvement of the Yale Police Department. Pursuant to the terms of his involuntary withdrawal, which was sent to him in early January, the plaintiff was notified in writing that he was not permitted to be physically present anywhere on campus. Yet he "misunderstood" this restriction and believed it was acceptable for him to live on campus in a room not set up as a dormitory room.

- The plaintiff filed a motion for expedited discovery on March 17 and then withdrew that motion in his March 19 response to the defendants' objection, stating, "I do not request any action from the Court at this time. We are experiencing some of *the* most extraordinary epidemic in our lifetimes. We need to provide care to those who need it the most now, here, today." (Emphasis in original.) (Entry No. 51, p. 5.) Despite this clear statement to the Court, the plaintiff then represented to the Court on April 1, 2020 that he had "inadvertently, conveyed to this Court an intention to withdraw his motion for expedited discovery, which he never had." (Entry No. 70, p. 3.)

- On March 19, the defendants filed their Rule 26(f) Report, indicating that defense counsel had initially drafted a report for submission by all parties and e-mailed that draft to the plaintiff on both March 11 and March 17. Defense counsel received no response to either e-mail. As a result, the defendants submitted their own Rule 26(f) Report. (Entry No. 49.) On March 24, the Court entered a scheduling order setting a discovery deadline of November 30, 2020. (Entry No., 57.) Despite this order, the plaintiff continues to maintain that the scheduling order entered by this Court is of no consequence and, on March 30, 2020, noticed six depositions to occur between April 3 and April 8, 2020.[2] (Exhibit B hereto.)

- The Court entered an order granting defendants' motion to quash six notices of deposition on the evening of April 2, 2020. The Court noted that this order was justified "in light of the pandemic;" and further observed: "the court views the number of depositions noticed, the compressed period of time in which they will occur, and the short notice given as further grounds to quash the notices without prejudice to re-noticing the depositions on a reasonable schedule, with reasonable notice, after the stay at home orders of the Governor and other government officials have been lifted." (Entry No. 72.) Several hours after receiving this order, the plaintiff emailed the attached subpoena seeking the virtual presence on April 17 of a non-party member of CHAS who did not participate in reviewing the plaintiff's petition to reverse the decision to put the plaintiff on involuntary withdrawal status, as well as production of a very broad collection of documents, many of which have no relevance to the present action, but do contain confidential information relating to other students. (Exhibit C hereto, p. 2-6.) This scheduling of a non-party deposition for April 17 suggests a significant misinterpretation of this Court's order, which clearly contemplated that no witness would be questioned until after the Governor's emergency order had been rescinded.

- At 2:20 p.m. on April 6, defense counsel's paralegal e-mailed the plaintiff to ask whether he would object to the defendants' motion for a three week extension to respond to the complaint. The following morning, the plaintiff claimed that defense counsel filed his motion for extension of time only 45 minutes after the paralegal sent her e-mail.[3] Contrary to the plaintiff's claim, the motion for extension of time was filed at 5:03 p.m., two hours and forty-three minutes after the paralegal's e-mail to the plaintiff. That the plaintiff could

[2] The notices of deposition are attached to the defendants' motion to quash. (Entry No. 67.)

[3] This e-mail exchange is attached to the defendants' Amended Motion for Extension of Time, Entry No. 74.

> make this two hour error, despite having received the paralegal's email less than 24 hours earlier and despite the fact that the first email was positioned immediately below the plaintiff's response demonstrates that the plaintiff has great difficulty reporting events accurately, even when he has a written document to rely on.

The court filings in this case demonstrate that the plaintiff is prone to making inaccurate and contradictory statements on a repeated basis. There can be no doubt that misinterpretations arise more readily from oral communications than from written ones. Given that fact, the defendants are at risk for the plaintiff to misunderstand and misinterpret if defense counsel is required to communicate through oral means. In turn, this exposes the defendants to the risk of having plaintiff's misinterpretation of oral communications appear in pleadings and in the media,[4] all to the defendants' disadvantage. Granting the present motion will not work to the plaintiff's disadvantage; rather the parties can continue to confer by email on any matter relating to the case, without disadvantaging either side. For example, when the plaintiff emailed a subpoena for Keshav Raghavan, defense counsel, rather than filing a motion, emailed the plaintiff a proposal for resolving the matter, conferring in writing and proposing a plan for discovery consistent with this Court's scheduling order and prior rulings. (Exhibit C hereto, p. 1.) It is ironic, given plaintiff's claim that defense counsel has refused to confer that, as of this writing, the plaintiff has not responded in any fashion to this proposal.

## CONCLUSION

For the foregoing reasons, defendants move for relief from the requirement that defense counsel must confer orally with the plaintiff; and request that the plaintiff and defense counsel be permitted to continue communicating via email.

---

[4] At a time when the plaintiff has experienced great difficulty filing pleadings on a timely basis, he has found the time to engage in interviews with the press. See, https://yaledailynews.com/blog/2020/03/24/student-suing-yale-files-preliminary-injunction/

THE DEFENDANTS,

YALE UNIVERSITY, MARVIN CHUN, MARK SCHENKER, PETER SALOVEY AND JESSIE ROYCE HILL

By:_____________/s/________________________

PATRICK M. NOONAN – CT00189
COLLEEN NOONAN DAVIS – CT27773
DONAHUE, DURHAM & NOONAN, P.C.
Concept Park
741 Boston Post Road, Suite 306
Guilford, CT 06437
Telephone: (203) 458-9168
Fax: (203) 458-4424
Email: pnoonan@ddnctlaw.com

**CERTIFICATION**

I hereby certify that, on the above-written date, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

________________/s/_________________
Patrick M. Noonan