On Thu, Apr 2, 2020 at 8:46 PM Jakub Madej <j.madej@lawsheet.com> wrote:

Hi Pat,

If you want to portray me as a monster and call the police on me, go ahead — <u>but please look me into the eyes first</u>. I endured all the lies you wrote about me in your pleadings — but before you ask me for something, please look me into the eyes first. Then you can alert the police, though I have <u>no</u> idea why you would.

Of course I don't want anyone to risk their lives. (By the way: I lost my insurance weeks ago.) You never responded to my suggestion for a virtual deposition, nor did you object to this option. If you disagree with my arguments on file, please file a reply to my response. I stand by everything I wrote. I see no reason to cease discovery. I will comply with Judge Hall's decision regarding repositions of course, but you will receive requests for production and interrogatories soon. If you continue to ignore me, I will move for sanctions next week. If you still continue to ignore me, I will move to disqualify counsel. Your March 5 move with "Doctor" Paxton and "confidential" records are enough to justify that motion.

For you, this "non-essential" litigation may be just a $500-an-hour job. For me, it's about having a place to live, an income, or even a chance to have an income. This <u>is</u> essential to me. Congratulations on withholding all evidence before Judge Hall could rule in my favor. In the game of litigation, it's an impressive success; in my personal life, it's yet another week without my clothes or my books stacked on campus — because you, or Yale lawyers, "want me off the property". Great job, Pat. The generous donor whose $220,000 contributed to my scholarship would appreciate this treatment.

I have no place to live, and no job. I would have both — as every other student does — had Mark Schenker did his job right, in good faith, with students' interest in mind. Had Jessie Hill, my former "dean", took responsibility for signing off a schedule with academic warning implied. They didn't, so you staunchly defend them and their egregious conduct. I understand it's your job — you get paid to disagree with me — but is this really in the best interest of Yale University?

Now I cannot make $5 an hour, when you make $500. I cannot enjoy time with my family — because I was too distraught after your aggressive move on March 5 that I didn't get myself to fly back to Europe. Now you continue to damage my remaining relationships at Yale — you know well who I think about — to weaken me. I don't know if you ever imagined what it feels like; you might not have worked abroad, where you don't enjoy the same rights as citizens like you do. Do you know what it's like when your child goes through this madness, going to court (!) for a prescription? That's how my mother feels every day.

If you only met and conferred with me, you'd realize this case has nothing to do with my grades. I have enough integrity to accept responsibility for what I did. Michael Schmertzler has nothing to do with this, even if you used him against me. I intentionally didn't name him anywhere because he did everything he could, and I still appreciate what he taught me.

You know very well that Yale College's "appeal process" is a sham — because there is no appeal process. Mark Schenker never read what I wrote; no committee has ever met to discuss this dismissal; most likely no committee exists. Mark Schenker arbitrarily deemed me unworthy of being a Yale student, disregarded any arguments I gave him, and lied that a full committee made their decision "without dissent". I am a student myself; I can tell when someone pretends they did the reading that they, in fact, never opened. He didn't even understand what I requested. I never challenged a grade with him, nor could I per Academic

Regulations, but he denied me that. He didn't even read the handbook. For him, it's worthless seconds; for someone else, it's life or death.

Mark Schenker knew I would never be capable of scrutinizing his egregious fraud because I had to leave the United States in two days' time, and he controlled all evidence. He refused to meet in person, like you have done for sixty-four (64) days in a row. But <u>no</u> committee has ever met, and no committee has ever discussed anything: my academic record, or anything else. In the meantime, Jessie Hill made sure that I cannot retrieve my items — *everything* I had in this country — and that nobody noticed. I don't like being treated like this.

NO student should be treated like this. I know for a fact other students have been harmed this way.

My allegations that you so artfully disregarded barely start here.

Nothing will bring back these horrible months: friendships, relationships, dreams, plans, and everything else Mark Schenker denied me for no reason whatsoever. Instead of trying to understand the dispute, you assumed I am yet another frivolous litigant. But just because I represent myself doesn't mean I am a lunatic, Pat. Or that this case is a joke — though that's how you certainly construe the omnipresent pi. It is <u>not</u>. Even $3,141,592 wouldn't be enough to make up for all these losses. No amount of money can.

I spent months learning the law to find a resolution outside of Yale — not because I wanted to but because nobody at Yale would take this seriously — all while keeping my obligations to Yale professors who I promised to help. Everything I received in return is Yale lawyers playing mind games with me. I highly respect your litigation experience, Pat; you did this for longer than I have been alive, and you're great at it. But if you seriously want to play these games, I can learn the rules even if you take everything from me.

I have no interest in inflicting harm on Yale for its own sake. Yale has not failed me, as you know. Yale professors have nothing to do with this; neither do custodial and administrative workers. But Yale lawyers are <u>not</u> part of Yale any more than I am.

As a reminder, you told me in your very first message that I should send you a waiver of the summons instead of my summons because what I did was "not permitted". I suggested twice on the phone in February that we can meet in Guilford, and that I can drive over. You subtly dismissed these suggestions because you never intended to meet with me, or to resolve any dispute. Let's face it: you assumed I would leave soon, the case would get closed, and everyone will be happy. I might've chosen the same strategy if I were you; given who you thought I am, it made sense in your profession. But you never gave me that benefit of the doubt that I may, in fact, be partly right.

I called you on March 31 at 1:34pm; 2:05pm; 4:01pm. I have a detailed history of all calls I made on my phone. I can repeat what I know to be true under oath because I can distinguish what's true, what's false, and what's a possible misunderstanding. I drove to Guilford on the way from Walmart; I gave you a call, and you didn't answer. I didn't feel comfortable walking in.

None of this is personal, Pat. I'm certain you're a great person in real life (= not over email). People spoke highly of your legal skills: people you fought against, and people you defended. Ted respects you a great deal. I wish every day we'd finally talk like people, resolve this dispute, say goodbye, and do something good for people we love — instead of wearing each other down. This is still an option, if only you want to find a mutually agreeable solution. But I'm not sure you do.

Best,
Jakub

65 Dwight St | New Haven, CT 06511 | (646) 776-0066 | j.madej@lawsheet.com

---------- Forwarded message ---------
From: **Pat Noonan** <PNoonan@ddnctlaw.com>
Date: Thu, Apr 2, 2020 at 12:13 PM
Subject: RE: We could have resolved this dispute weeks ago, Pat. If only you wanted to. We cannot resolve it unless you communicate with me.
To: Jakub Madej <j.madej@lawsheet.com>


Hi Jakub,

I am stunned that you would suggest that either of us should violate the rules promulgated by the President and the Governor during this emergency. I have been scrupulously abiding by those rules. I have not, and will not, meet with anyone in person aside from my wife. I have four children and five grandchildren, who are more important to me than my own life. I have not been able to hug any of them, and none of them have been in my house, nor I in theirs. At this moment, a former law partner who was my mentor and became a close friend is struggling for his life on a respirator at YNHH due to the COVID virus. It pains me that I cannot see him and beg him to continue the struggle to live. But I will not be doing any of those things, because my children are terrified that I will not survive an encounter with the virus; and I would never forgive myself if I were responsible for destroying another's family due to my callous refusal to obey the restrictions. In short, I will not meet you at any time or any place until it is safe to do so. I am begging you to abide by the restrictions and stay away from everyone except for obtaining your food. Pursuing this litigation at this time is not an "essential" activity that must be pursued on an urgent basis.

Although the governor's order has made the practice of law an "essential" business exempt from the executive order, we decided to provide every employee with remote access, instead of having them work in the office; we value their lives and the lives of their families. There are tasks that require some presence in the office periodically, but employees have been instructed to come in, do what is necessary and then go home. We had been leaving our office door propped open when anyone was present, so that people could go to the rest room and return without touching the door handle. That practice ended upon receipt of your email. If you come to the office you will find a locked door and you will not be admitted. I have also notified the Guilford police of your activities, so that they will be prepared if there is any difficulty.

I was working the entire day yesterday, with my cell phone at my side, finishing shortly after midnight. Calls to my office come to my cell phone. Contrary to your statement, I received no calls from you yesterday on either the office or the cell phone. I checked again just now and there are no messages from you on either phone. The people who were in the office yesterday reported that no visitors came or sought entry to the office, nor did anyone ask for me. I am not suggesting that you are lying when you say these things occurred; it may be that you honestly believe what you say, but the objective facts are otherwise. There are numerous instances in your prior emails with Yale instructors and administrators, as well as in your court filings, where you have provided contradictory information, and you have given interviews to the media containing statements that are not accurate. Again, it is entirely possible that you believe these statements when you make them, but there is proof that your statements are frequently inaccurate. Consequently, I will not accept any further telephone calls from you. I will, as I have throughout the progress of this case, respond to your emails; I am very busy with many matters that are on a more urgent time schedule than this case, and I will not always be able to respond immediately. As you know, Judge Hall has already concluded that there is no need for expedited discovery. While I am willing to communicate by email, I will not put myself in a position which might cause you to misunderstand a telephone conversation and then repeat your misinterpretation to the press or in your court filings. Accordingly, I will only communicate with you by email from this point forward.

Regarding your request that Yale settle this matter, as you know, Yale has already considered and rejected your demand, which included a reversal of the academic withdrawal, restoring you to the academic program prior to the end of the mandatory two semester academic withdrawal and payment of $314,159. You have indicated that that is the lowest demand that you will make; and that your demand will increase as time goes on. You made this demand in the face of overwhelming evidence that you are destined to lose this case. The evidence is clear that under Yale's rules,

you appropriately were placed on academic withdrawal after failing the economics course. The evidence is also clear that the professor had warned you in advance that you were at risk of failing because you had scored at the bottom of the class of the two written assignments prior to the final exam (one of which was graded as 35%). Finally, you acknowledged in writing that you had six days to prepare the response to the take home final exam, yet you started on it late and then submitted it two and a half hours past the deadline, despite having been told in writing that if the exam were not submitted on time, you would receive an F. Given these facts, there is simply no interest in pursuing settlement. You are free to withdraw this case at any time; if you do not, it will be decided on the merits.

As to the depositions, we will not be producing any witnesses at this time. We will wait until the hearing scheduled by Judge Hall to discuss that issue as well as any other discovery matter.


Pat


<span style="color:red">Please be advised that I will be intermittently working from home. My cell phone number is in my signature below.</span>


Patrick M. Noonan

Donahue, Durham & Noonan, P.C.

741 Boston Post Road

Guilford, CT 06437

(203)457-5209(direct)

(203)314-4562(cell)

(203)458-9168(office)


**From:** Jakub Madej <j.madej@lawsheet.com>
**Sent:** Thursday, April 2, 2020 3:14 AM
**To:** Pat Noonan <PNoonan@ddnctlaw.com>
**Subject:** We could have resolved this dispute weeks ago, Pat. If only you wanted to. We cannot resolve it unless you communicate with me.


Hello Pat,

I attach a copy of my response to the motion to quash that you filed this morning. I will be in touch later today regarding the logistics of Friday depositions.

I have called you at least four times yesterday, but you continue to ignore my messages. I even drove to Guilford, but you didn't make it any easier. I also suggest we do meet and confer, as we should. I am available in New Haven this week except for Thursday evening, and in Guilford any time except for Thursday. I am available throughout Monday as well. I will move for sanctions next week if you continue to ignore me.

We could have resolved this dispute weeks ago and save scarce judicial resources, but you were not interested. Perhaps, we can still resolve this dispute without involving Judge Hall but we won't do so unless we communicate (in good faith). Communication, by definition, is <u>two-sided</u>, Pat.

As a "reminder", we have <u>never</u> met to "discuss the nature and basis of" my claims, or informally discussed why I filed this lawsuit against Yale University in the first place. We have <u>never</u> discussed "any possibilities for achieving a prompt settlement or other resolution of the case". We have <u>not</u> discussed how to solve this dispute informally; we have <u>not</u> discussed "the disclosure and preservation of electronically stored information". You expressed <u>no</u> interest or initiative in <u>any</u> of these; you disregarded my attempts to confer and find a resolution. You <u>never</u> expressed any interest in doing *any* of the above. We have <u>never</u> met or conferred for anything.

Best,

Jakub

65 Dwight St | New Haven, CT 06511 | (646) 776-0066 | j.madej@lawsheet.com