# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

_____

**JAKUB MADEJ**

      **Plaintiff,**

**v.**

**YALE UNIVERSITY, MARK SCHENKER**
**JESSIE ROYCE HILL, MARVIN CHUN,**
**PETER SALOVEY**

      **Defendants.**

_____

**CIVIL ACTION No.  3:20-cv-00133-JCH**

**JURY TRIAL DEMANDED**

**APRIL 18, 2020**

## MOTION FOR SANCTIONS
### RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR EXTENSION OF TIME
### <u>MEMORANDUM OF LAW</u>

Defendants' request for extension is frivolous and must be denied. Here, counsel (i) failed to file a timely answer to plaintiff's complaint; (ii) failed to file a timely motion for extension; (iii) resisted a meet-and-confer, or any meeting with plaintiff; (iv) altered, or assisted in altering, an email solely to demonstrate plaintiff's lack of credibility and mislead the Court; (v) violated all Local Rules governing motions for extension, five days after Court warned counsel that he must comply with Local Rules; (vi) cannot establish excusable neglect under Fed. R. Civ. P. 6(b); (vii) violated two Court orders; and (viii) offered a boilerplate request that amounts to no request at all. Defendants provide no legal basis or factual why their extension should be granted. They could not offer such authority. Instead, defense counsel filed a motion for protective order [Doc. 75], asking not to speak with plaintiff or meet plaintiff in person. Defense counsel is adamant about

<u>Plaintiff respectfully requests an oral argument on this motion.</u>

not meeting in person – because he could not make any statement he knows to be false. But there is no protective order from truth.

Counsel's dilatory tactics are merely tactical attempts to obfuscate the truth and "dismantle" plaintiff's credibility, "whatever it takes". Counsel has *never* met with plaintiff, and even threatened plaintiff with police. He has not spoken with plaintiff over telephone since March 5. On April 2, he declared: "I will not accept any further telephone calls from you." [2]. Parties must collaborate in litigation – but to collaboration to happen, parties must want to collaborate. Parties should cooperate in discovery with minimal judicial intervention, but Defendants want *no* discovery to ever take place. Counsel's conduct in over fifty actions against Yale University in the last thirty years squarely shows that blind stonewalling is not a tactic employed against this plaintiff only, but a catch-all litigation strategy against most rules of procedure, solely to prevent external insight into Yale University's operations. (Or lack thereof.)

For the reasons that follow, Defendants' motion must be denied. Court should impose sanctions that it sees fit to ensure respect to and compliance with Federal and Local Rules. Nothing short of sanctions will compel defense counsel to respect "the ultimate equalizer" property of the law.

### PRELIMINARY STATEMENT

Counsel maintains a simple theory of the case: plaintiff is a dissatisfied student who was properly dismissed, and now unreasonably blames well-meaning administrators for plaintiff's blunders. Counsel advances a narrative where plaintiff is an implausible individual, unworthy of belief, one who sees no difference between a student mock trial club and the United States District Court.

Defendants' approach to this case is not a good faith error but a litany of deliberate steps to (i) deflect the Honorable Court's attention from plaintiff's allegations; and (ii) harass plaintiff solely to have him abandon this case. But counsel's duty to zealously advocate his client's case is *not* infinite – a thin line exists that borders unethical conduct. For the reasons that follow, defense counsel crossed that line here.

Litigation is contentious in nature – but collaboration is futile unless parties want to collaborate. Defendants' dilatory tactics and blind stonewalling is intentional – counsel refuses, as he always had and always will, to accept that Yale College could have done anything wrong.

Three months into the case, parties are only further away from a resolution than they were before. Parties have not met-and-conferred. Parties can't agree on dates. Parties cannot agree on anything. But do all parties *want* to agree on something?

In pursuit of character assassination, counsel recounts the Court a story wherein plaintiff "behave[s] like a pack of weasels and can't expect any part of [his] tale be believed". *Ridge v. DaimlerChrysler*, 516 F.3d 623 (7th Cir. 2008). Counsel engages in petty disputes over procedural minutiae, overheated rhetoric, and personal invectives targeted at plaintiff, who counsel knows to be unemployed, lawfully unemployable, and without income. Meanwhile, counsel fulfilled no discovery obligation: Defendants implemented no litigation hold, nor did they identify data custodians. (Fortunately, plaintiff will offer defense counsel a hand at this task.)

Counsel approaches this case as a zero-sum game, covering up insecurity with meaningless fights. Plaintiff condemns the tactics to prove plaintiff is "wrong by association", just because opposing him is the venerable Yale University. This is not a difficult strategy to follow and prevail.

But for plaintiff, this is not yet another game to win, or to lose. Plaintiff regrets mirroring counsel's approach to litigation, and proceeds with civility, respect, and facts.

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................... 2

TABLE OF AUTHORITIES ..................................................................................... 6

FACTUAL BACKGROUND ........................................................................................ 9

PROCEDURAL BACKGROUND ............................................................................. 11

ARGUMENT ............................................................................................................. 12

    1.   Defendants Approached This Case in Bad Faith at All Times ...................................... 14

    2.   Defendants Never Intend to Properly Answer Plaintiff's Complaint ........................... 18

    3.   Defendants Already Procured a Month-Long Extension without the Court or Plaintiff Noticing ............................................................................................................................ 22

    4.   Defendants Failed to File a Timely Motion for Extension, and Offer No Explanation to the Court ............................................................................................................................ 24

    5.   Defendants Resist A Rule 26(f) Conference, or Any Meeting at All ............................ 24

    6.   Counsel Presents an Altered Email to the Court Solely to Prove Plaintiff Is Not Sincere with Counsel ....................................................................................................................... 26

    7.   Defense Counsel Violated *All* Local Rules Governing Motions for Extension After Court Warned Counsel That He *Also* Must Follow Local Rules ..................................................... 31

    8.   Defendants Cannot Establish Excusable Neglect Under Fed. R. Civ. P. 6(b)(1)(B) ... 33

    9.   Counsel Engages in Dilatory and Obstructionist Tactics That Serve No Purpose But to Prevent a Speedy, Just, and Inexpensive Resolution of This Action .................................... 34

    10.   Defendants' Boilerplate Request Amounts to No Request at All .............................. 35

    11.   Productive Continuation of This Action Is Impossible Without Court's Intervention 36

REQUEST FOR SANCTIONS ................................................................................... 41

CONCLUSION ........................................................................................................... 42

# TABLE OF AUTHORITIES

## CASES

*Bagley v. Yale Univ. et al.*,
No. 3:13-cv-01890-CSH (D. Conn. 2014) .................................................... 41

*Boon Partners v. Advanced Financial Concepts, Inc.*,
E.D.N.C.1996, 917 F.Supp. 392 ................................................................ 34

*Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*,
498 U.S. 533, 551 (1991) .......................................................................... 30

*Chambers v. NASCO, Inc.*,
*501 U.S. 32, 43 (1991)* ............................................................................ 13

*Charles v. City of New York*,
No. 11 Civ. 2783 (AT) (RLE), 2015 WL 756886, at *3 (S.D.N.Y. Feb. 20, 2015)....... 13

*Chen v. MG Wholesale Distribution Inc.*,
16-CV-4439 (PKC) (RLM) (E.D.N.Y. May 4, 2018) .................................... 14

*Evon v. Law Offices of Sidney Mickell*,
688 F.3d 1015, 1035 (9th Cir. 2012).......................................................... 14

*Failure of Citizens' Protective League v. Clark*,
C.A.D.C.1949, 178 F.2d 703, 85 U.S.App.D.C. 282 .................................... 34

*Global-Tech Appliances, Inc. v. SEB S.A.*,
563 U.S. 754 (2011) .................................................................................. 39

*In re McCarthy*,
623 N.E.2d 473, 477 (Mass. 1993). .......................................................... 30

*Keeton v. Morningstar, Inc.*,
C.A.7 (Ill.) 2012, 667 F.3d 877 ................................................................ 34

*Liguria Foods, Inc. v. Griffith Laboratories, Inc.*,
2017 U.S. Dist. LEXIS 35370, at *32 (N.D. Iowa Mar. 13, 2017) ................ 36

*Liguria Foods, Inc. v. Griffith Labs., Inc.*,
320 F.R.D. 168 (N.D. Iowa 2017) .............................................................. 6

*Mancia v. Mayflower Textile Servs. Co.*,
    253 F.R.D. 354, 362 (D. Md. 2008) (citation omitted) .................................................. 36

Mays v. Wal-Mart Stores, Inc.,
    No. 19-55318 (9th Cir. Mar. 17, 2020) ...................................................................... 33

*Metropolitan Opera Ass'n, Inc. v. Local 100, Hotel Empl. and Rest. Employees Intern. Union*,
    212 F.R.D. 178 (S.D.N.Y. 2003) ............................................................................... 13

*Neitze v. Williams*,
    490 U.S. 319, 325 (1989)........................................................................................ 43

*Obiajulu v. City of Rochester, Dep't of Law*,
    166 F.R.D. 293, 295 (W.D. N.Y. 1996) ....................................................................... 35

Ransmeier v. Mariani,
    718 F.3d 64, 68 (2d Cir. 2013)........................................................................... 13, 14

*S.L. Sakansky & Assoc., Inc. v. Allied Am. Adjusting Co. of Florida, LLC*,
    2007 WL 2010860, at *1 (M.D. Fla. Jul. 6, 2007) ......................................................... 42

*Schlaifer Nance & Co. v. Estate of Warhol*,
    194 F.3d 323, 336 (2d Cir. 1999) .............................................................................. 14

*Shepherd v. Am. Broad. Cos.*,
    62 F.3d 1469, 1475 (D.C. Cir. 1995) .......................................................................... 14

*Smith v. Our Lady of the Lake Hosp., Inc.*,
    C.A.5 (La.) 1992, 960 F.2d 439 ................................................................................ 21

*St. Paul Reinsurance Co., LTD. v. Commercial Fin. Corp.*,
    198 F.R.D. 508, 511-513 (N.D. Iowa 2000)................................................................. 35

*Trade Well Int'l v. United Cent. Bank*,
    778 F.3d 627 (7th Cir. 2015) ................................................................................... 14

United States v. A.H. Fisher Lumber Co.,
    162 F.2d 872, 873 (4th Cir. 1947) ............................................................................ 18

*United States v. Jewell*,
    532 F. 2d 697, 700 (CA9 1976) (en banc) ................................................................... 39

*Vaigasi v. Solow Mgmt. Corp.*,
    11 Civ. 5088 (RMB)(HBP) (S.D.N.Y. Feb. 16, 2016) ..................................................... 13

Walker v. Lakewood Condo. Owners Ass'n,

    186 F.R.D. 584, 587 ................................................................................................. 36

### STATUTES

*Connecticut General Statutes Title 52. § 52-57* .................................................................. 24

Fed. R. Civ P. 11(b)(1) ...................................................................................................... 21

Fed. R. Civ. P. 11 .............................................................................................................. 30

Fed. R. Civ. P. 11(b)(2) ..................................................................................................... 22

Fed. R. Civ. P. 11(b)(3) ..................................................................................................... 21

Fed. R. Civ. P. 6(b)(1)(B) .................................................................................................. 34

### OTHER AUTHORITIES

Black's Law Dictionary (11th ed. 2019) .......................................................................... 15

Gensler, Steven S. and Rosenthal, Lee H. (2017) "Breaking the Boilerplate Habit in Civil

    Discovery," Akron Law Review: Vol. 51: Iss. 3, Article 3 ................................................. 35

Marty Solomon, *Are the Bad Old Days of Blind Stonewalling in Discovery Finally Coming to a*

    *Close?, Jul. 26, 2017* ...................................................................................................... 38

The Advisory Committee Notes to the 1983 Amendment to Rule 26(g) ................................ 31

### RULES

*ABA Model Rule 4.3.* ....................................................................................................... 24

*Commentary to Rule 4.3., Rules of Professional Conduct, Connecticut Bar Association* ...................... 24

District of Connecticut Local Rule 4(b) ............................................................................ 31

Local Rule 26(f)(1) ........................................................................................................... 25

### TREATISES

*Restatement (Second) of Contracts* § 205 cmt. d (1979) ................................................... 15

## FACTUAL BACKGROUND

Plaintiff Jakub Madej, a foreign[1] student at Yale College on full scholarship, has been involuntarily withdrawn in January 2020. Obliged by law to immediately leave the country, plaintiff rented a car, drove to Canada, and immediately returned to New Haven using his old visitor visa. He brought this action two weeks later, alleging unlawful withdrawal and negligence.

Plaintiff questions how Yale College administrators[2] determined that withdrawal, knowingly offered plaintiff no time to scrutinize their decision, not contacted plaintiff's academic advisor, and did not read plaintiff's petition. All administrators refused to meet plaintiff, or speak to him.

The home university is a quasi-government for every international student arriving in the United States. That university alone has the power to terminate student's immigration status, employment authorization, and obliged him to leave the country immediately, with no external oversight. Plaintiff here experienced this first-hand.

Plaintiff was lucky to have a driver's license, credit card, U.S. visitor visa, and visa-free entry to Canada to pursue his rights, as he does, within the law. Otherwise, he would be an illegal immigrant unlawfully present in the country and subject to removal[3]. Most students in plaintiff's shoes would not have that chance – they could not be expected to – no matter the merits of their cases[4]. On return from Canada, a state trooper stopped plaintiff at 01:33am in Williston County,

[1] Plaintiff is neither a citizen nor a permanent resident of the United States.

[2] Plaintiff's suit makes no allegations against Yale University faculty, or lower-level clerical and maintenance staff. Plaintiff maintains a cordial relationship with all to date. Plaintiff wishes to thank all professors and workers at Yale Law School and Yale School of Management who supported him in recent months: let plaintiff sit on courses they teach, and providing guidance unrelated to these proceedings. Many did so without their knowledge.

[3] Plaintiff's story shows precisely how honest people who arrive in the United States with good intentions overstay their visas and never leave. Because they cannot. Some appear before this Court years later – as defendants in criminal cases or removal proceedings.

[4] This motion does not concern the merits of plaintiff's case, and plaintiff will refer to them only to the extent necessary.

Vermont for exceeding the speed limit by 12 mph; Plaintiff wished to dispute that violation but could not even know where and when to appear in a county court: he receives multiple emails asking to pick up mail from his old College [7-14], but according to counsel, plaintiff could not be present on campus, a fact he knew about [Doc. 75]. If counsel were correct, why was plaintiff part of the Yale SOM course team that met twice a week until March [15-18]? Counsel had that knowledge because he (i) procured an affidavit from the same professor [Doc. 50-5]; (ii) caused plaintiff to lose access to a Box folder used for that course. Other team members have access to the same cloud storage folder. Counsel had that knowledge but still insists plaintiff knew he must remain off-campus.

Plaintiff received no answers within the College, and pursued his rights in the court of law. Defendants have hardly cooperated with plaintiff – they stalled all attempts at discovery, alleged facts they could easily verify are false, and altered (at least) one email to convince the Court that plaintiff is unworthy of belief. *None* of these actions were accidental.

Plaintiff has no home, because he lived in student dormitory and supported himself from financial aid and work prior to his withdrawal. He now has none. Plaintiff has received enormous support of friends and friendly faculty; however, as Defendants questioned several professors over plaintiff's actions ("did he really sit on that class at Yale Law School?"), plaintiff ceased contact with them – these remarkable people deserve only appreciation, not troublemaking from Yale lawyers.

Defendants advanced an ostensibly convincing fact pattern, putting all blame on plaintiff. Defense counsel has a right to maintain his theory of the case – but "each side is entitled to pursue intelligible theories of the case and [Defendants] cannot, by their sole insistence, declare evidence

10

undiscoverable and irrelevant merely because it does not fit into their own theory of the case." *Sentis Grp., Inc. v. Shell Oil Co., 763 F.3d 919, 926* (8th Cir. 2014). "Modern 'litigation' seems to favor wars of discovery attrition" – despite Defendants' obstructionist practices, plaintiff is still here, and is not going anywhere. *Liguria Foods, Inc. v. Griffith Labs., Inc.*, 320 F.R.D. 168 (N.D. Iowa 2017). Defense counsel refuses to accept that unexpected reality. What matters in this case, and what will matter for the jury, is what defendants have *not* revealed – not what story they first wrote.

Plaintiff proceeds without assistance of counsel. Plaintiff is a student member of Connecticut Bar Association, and a member of Section of Litigation, American Bar Association.

## PROCEDURAL BACKGROUND

Plaintiff filed this action on January 30, 2020. Parties have not met or conferred; they did not exchange disclosures. Plaintiff made that statement on the record [Doc. 70] and over email to counsel [1-6].

On April 1, plaintiff opposed defendants' motion to quash notices of depositions [Doc. 70], showing with specificity that Defendants (i) did not and could not meet their burden under Local Rule 37 because counsel never tried to resolve the issue informally, nor did they want to; (ii) offered speculative and factually unsupported explanations why they could not "comply on such short notice"; and (iii) filed an untimely notice to quash. Defense counsel did not address any of plaintiff's arguments.

On April 2, Court warned the defense counsel that he must comply with the Local Rules. "Finally, the court reminds defense counsel, in light of plaintiff's representation of counsel's failure

to confer, or to respond to plaintiff's communications, that counsel must comply with the Local Rules." [Doc. 72].

On April 6, Defendants filed a three-sentence-long motion for extension [Doc. 73].

On April 7, defense counsel filed a vexatious and frivolous motion for protective order [Doc. 75] solely to harass plaintiff while offering evidence to the Court that plaintiff fails to meet his promises. Counsel filed that motion at 11:35 p.m., reasonably expecting that plaintiff would be writing a response to his motion for extension (true), would immediately notice counsel's filing (true) and react to it emotionally (how could you not, where someone more powerful makes statements you know to be wrong?). This was counsel's sole purpose in filing that motion because it otherwise lacks merit. Plaintiff will address that motion separately.

Counsel later amended his motion for extension [Doc. 74], offering the Court a representation of an email that suggests plaintiff is insincere with counsel. Plaintiff explains here (i) how the Court can determine that counsel's statement is false; (ii) how he altered an email to advance an untrue theory in Court; and (iii) why he did so.

On April 18, plaintiff opposes defendants' motion for extension, and moves for sanctions.

ARGUMENT

The Supreme Court has broadly defined the "inherent powers of the court," that consist of "certain implied powers [necessarily given to the] Courts of justice from the nature of their institution . . . which cannot be dispensed with in a Court, because they are necessary to the exercise of all others." This inherent power is *not* limited by overlapping statutes or rules. "[T]he inherent power of a court can be invoked even if procedural rules exist which sanction the same conduct."

"Whereas rules based sanctions "reach[] only certain individuals or conduct, the inherent power extends to a full range of litigation abuses" and, "at the very least. . . must continue to exist to fill in the interstices." *Chambers v. NASCO, Inc.*, 501 U.S. at 32, 43, 46, 49 (1991).

"[A]ny federal court . . . may exercise its inherent power to sanction a party or an attorney who has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Ransmeier v. Mariani*, 718 F.3d 64, 68 (2d Cir. 2013), quoting *Chambers v. NASCO, Inc.* at 45-46.

In this Circuit, sanctions under the Court's inherent power require a finding of bad faith. *Metropolitan Opera Ass'n, Inc. v. Local 100, Hotel Employees and Restaurant Employees Intern. Union*, 212 F.R.D. 178 (S.D.N.Y. 2003). Courts may impose sanctions pursuant to their inherent authority "only upon a particularized showing of bad faith, which requires clear evidence that the challenged actions are entirely without color and are taken for reasons of harassment or delay or for other improper purposes." *Vaigasi v. Solow Mgmt. Corp.,* 11 Civ. 5088 (RMB)(HBP) (S.D.N.Y. Feb. 16, 2016) (internal alterations omitted) (quoting *Charles v. City of New York*, No. 11 Civ. 2783 (AT) (RLE), 2015 WL 756886, at *3 (S.D.N.Y. Feb. 20, 2015)).

In order to impose sanctions pursuant to its inherent power, court must find that (1) the challenged claim was without a colorable basis or (2) the claim was brought in bad faith, i.e., motivated by improper purposes such as harassment or delay. *Chen v. MG Wholesale Distribution Inc.*, 16-CV-4439 (PKC) (RLM) (E.D.N.Y. May 4, 2018), citing *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 336 (2d Cir. 1999).

Inherent power sanctions are generally justified where the offender willfully disobeys a court order. *Trade Well Int'l v. United Cent. Bank*, 778 F.3d 627 (7th Cir. 2015) (stating that

13

"sanctions under the court's inherent power should not be imposed unless there is bad-faith conduct or willful disobedience of an order"); *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1035 (9th Cir. 2012) ("[A] district court has the inherent power to sanction for: (1) willful violation of a court order; or (2) bad faith. A determination that a party was willfully disobedient is different from a finding that a party acted in bad faith. Either supports the imposition of sanctions."). *Ransmeier v. Mariani*, 718 F.3d 68 (2d Cir. 2013) ("Our authority to impose sanctions is grounded, first and foremost, in our inherent power to control the proceedings that take place before this [c]ourt."); *Shepherd v. Am. Broad. Cos.*, 62 F.3d 1469, 1475 (D.C. Cir. 1995) (stating that a court may sanction both lawyers and parties pursuant to its inherent powers).

    1.  <u>Defendants Approached This Case in Bad Faith at All Times</u>

"Good faith" is a state of mind consisting in (1) honesty in belief or purpose, (2) faithfulness to one's duty or obligation, (3) observance of reasonable commercial standards of fair dealing in a given trade or business, or (4) absence of intent to defraud or to seek unconscionable advantage. Black's Law Dictionary (11th ed. 2019). "Bad faith" has been recognized in judicial decisions as: evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance." *Restatement (Second) of Contracts* § 205 cmt. d (1979).

Just as counsel failed to even try to resolve any discovery dispute [Doc. 67, 70, 72] in good faith, he never intended to take plaintiff seriously. When he first learned plaintiff filed this case, he

automatically assumed as a fact that plaintiff is a dissatisfied student who failed in school, and desperately tries to be reinstated. The moment counsel realized this is not true, he ceased any phone communication with plaintiff. But willful blindness is no excuse.

Defendants' conduct throughout all of the proceedings squarely demonstrate their bad-faith approach. Defense counsel continuously offers legal advice to plaintiff, which he must *not* do. Plaintiff only recently realized this. Defendants approach lacks consistency: they ostensibly agree to cooperate with the plaintiff [Doc. 49, p. 8] and certified to the Court that they "would promote the just, speedy and inexpensive determination of this action" [*Id.*], but their actions show the opposite.

Counsel authoritative wrote to plaintiff: "you are free to withdraw this case at any time; if you do not, it will be decided on the merits." [3] But, as it will become obvious, counsel has no interest to have this case decided on the merits.

If Defendants believed this action is not grounded in law, they would have filed a motion to dismiss. Defendants never noted they intend to move to dismiss, on the record or informally. This Court's Order requires that all motions to dismiss based on the pleadings shall be filed within 90 days after the filing of the complaint, or by April 28, 2020. This is ten days from today. So, defendants will not move to dismiss.

If Defendants believed this action is not grounded in fact, or that plaintiff's complaint is frivolous, they would have engaged in some discovery, and offer the Court a convincing argument that plaintiff simply cannot be correct. They did not. If Defendants' case was rock-solid, why did counsel alter an email and presented it to the Court, violating all rules of professional responsibility?

If Defendants believed no disagreement exists on material facts, they would have filed a motion for summary judgment. They did not, because counsel did not study the facts – or he would have answered the complaint on time.

Defendants act as if they understood plaintiff's complaint: they did not file a motion for more definite statement, asked for no clarification, and requested no amendment – formally or informally.

Defendants rejected plaintiff's settlement offer, ignored requests for settlement suggestion from the defendants, and made no efforts to resolve this dispute otherwise. Defense counsel disregarded an informal settlement suggestion from a Yale professor that plaintiff worked with since 2016, and who counsel defended for 4 years in *Bagley v. Yale Univ. et al*. But defense counsel still wants the case "to be decided on the merits".

Just one week later, counsel asks the Court for permission *not* to speak in-person or over phone with plaintiff – even though he *never* met the plaintiff, and hasn't spoken with plaintiff since March 5. How does counsel expect a Rule 26(f) Conference to happen? Does counsel plan to conduct depositions telepathically, or *voir dire* the prospective jurors via email?

Defendants simply ignore the reality that Yale University could be at fault. Counsel vigorously protect any scrutiny of inter-university world because he knows it is *not* what defendants present outside. Defendants refuse to acknowledge the fact that plaintiff is still here, undeterred by counsel's creative tactics engineered solely to have plaintiff abandon the case. When it became apparent that Defendants' hopes are doomed, counsel started eluded plaintiff, intimidated him with frivolous motions spiced with personal invectives, and offered misleading legal advice – a practice plaintiff now understands a lawyer must *not* engage in.

16

Now, defense counsel assumes the posture of an ostrich and firmly placing his head in the sand. The same pattern of behavior has brought plaintiff before this Court – Yale College administrators had no interest in non-adversarial solution of a dispute, because they fail to acknowledge there *is* a dispute.

Defense counsel coached plaintiff that Defendants, not plaintiff, have "objective facts":

> "I am not suggesting that you are lying when you say these things occurred; it may be that you honestly believe what you say, but the objective facts are otherwise. There are numerous instances in your prior emails with Yale instructors and administrators, as well as in your court filings, where you have provided contradictory information, and you have given interviews to the media containing statements that are not accurate."
>
> [2]

If counsel agrees with his statement, why does he so vigorously prevent discovery from taking place? No one can dispute that "the discovery system is designed to facilitate truth-finding". Discovery is mutual, and counsel could have verified facts he made to the Court before he certified he engaged in reasonable inquiry. He could have asked plaintiff for clarification, or even meet plaintiff in real life. He did not. Because counsel has no interest in the full picture, if only he can design a fact pattern that yields the desired conclusion. To that end, counsel procured emails from plaintiff's inbox without initial disclosures and "massaged" facts to end this case immediately, no matter the merits. He could have asked plaintiff for clarification, or even meet plaintiff in real life. He did not. However, plaintiff recognized the judiciary process has rules and procedures which have a purpose – and observed them throughout this action. In the interest of transparency, plaintiff is prepared to clarify any confusion the Honorable Court might have noted from the record.

17

For counsel, this case may be about winning at all costs. But "a law suit is not a children's game but a serious effort on the part of adult human beings to administer justice". *United States v. A.H. Fisher Lumber Co.*, 162 F.2d 872, 873 (4th Cir. 1947). If he had a rock-solid case, why would he resort to intimidation and resisted discovery so vigorously? Why would he accuse plaintiff of misleading his doctor?

Plaintiff will proceed through discovery into trial without delay, to the fullest extent of the law. Plaintiff respectfully requests that the Court impose sanctions on defense counsel that it sees fit to ensure Defendants' full compliance with and respect to all procedural rules, not with their letter but also with their purpose.

2. <u>Defendants Never Intend to Properly Answer Plaintiff's Complaint</u>

Defendants had eleven (11) weeks to answer plaintiff's complaint. They did not.

Defense counsel never met plaintiff, and resists plaintiff's attempts to meet in person – he even threatened plaintiff with police for reasons that are not immediately comprehensible [2]. Plaintiff suggested parties meet via videoconference for depositions at least three times; counsel ignored all proposals to meet virtually. Not because he missed them – he remembers each carefully – but because he intentionally avoided making any written statement whatsoever. But sometimes, *no* evidence is the best evidence.

Plaintiff volunteered to meet to Guilford, where counsel practices law, but to no avail. Plaintiff suggested specific dates to meet in February, and in April [1-6]. Now counsel asks the Court for relief from requirements of Local Rules – which he never followed – and *not to* contact

plaintiff except via email [Doc. 75]. Meanwhile, he wishes to have the case "decided on the merits" [3]. How does counsel expect to meet and confer; conduct a trial via email?

Counsel refused to engage in formal or informal discovery. He moved to quash all depositions, offering in support vague statements that indicate no effort. "It is believed that some of the deponents are out of state." [Doc. 48, p. 5]. Now, plaintiff provided counsel with times when most individuals to be deposed are surely available.

Counsel appears concerned whether plaintiff is truthful, and whether he understands what perjury is. Counsel certified he made a reasonably inquiry before signing off his filings. Still, he asserts "there is no way for anyone to determine which, if any, of [plaintiff's] statements [sic] mirrors reality." Counsel fails to cite plaintiff's statements (he could not) – but he offers this argument to the Court:

> In prior communications, the plaintiff has variously represented that he spent the winter break in Poland, France or China. Again, there is no way for anyone to determine which, if any, of these statements mirrors reality.
>
> [Doc. 75, p. 4]

But counsel *never* asked plaintiff where he was over winter break. He has not spoken with plaintiff since March 5. Still, he declares he "has spoken to the plaintiff via telephone on numerous occasions since the beginning of this litigation" [Doc. 75, p. 1] – when he asks *not* to speak to plaintiff anymore. If counsel doubted that plaintiff is truthful, he could have served a request for admission, an interrogatory, or demanded another proof – a testimony of someone who witnesses plaintiff in that country, a stamp in plaintiff's passport, or plaintiff's visa. He could have asked for copies of plaintiff's flight reservations or hotel bookings. Counsel could have met plaintiff and

ascertain the truth from plaintiff's tone and demeanor. He did none. Nor did he want to, because counsel has no interest in fact-finding[5].

In furtherance of his attempts at character assassination, Counsel made numerous misleading or false statements about plaintiff to the Court. For example, counsel claimed "plaintiff continued his refusal to vacate, forcing the Superintendent to call the Yale Police Department and summon officers to remove the plaintiff." [Doc. 67, p. 2]. But no superintendent ever called Yale Police. On April 4, plaintiff called the same superintendent, a very kind person who plays no role whatsoever in this case, and verified that counsel's statement is not true. Counsel offers no factual support that plaintiff "continued his refusal to vacate [a room]". Nor could he. Can counsel name the officers that witnessed that "continued refusal"? After all, counsel certified to the Court that his factual contentions have evidentiary to the best of his knowledge, information, and belief, formed after an inquiry reasonable under the circumstances.

Yet still, counsel vaguely declares: "There can be no doubt that misinterpretations arise more readily from oral communications than from written ones." [Doc. 75, p. 6]. In reality, he resists contact because he could no longer obfuscate the truth when challenged. Cross-examination may be the ultimate engine to discover the truth, but here an in-person meeting would suffice. Plaintiff once asked counsel to look him into the eyes when asserting such facts [4]. Counsel refused.

[5] In the interest of transparency, plaintiff has uploaded responsive documents at the following link, which is protected with a password. *we.tl/t-nZ1h5CNLgN*. Counsel can call, text, or email plaintiff at any time if he wishes to uncover some truth.

20

Meanwhile, Counsel certified none of his filings were intended "for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation". Fed. R. Civ P. 11(b)(1).

By filing a motion, a party certifies that asserted "factual contentions have evidentiary support … to the best of his knowledge, information, and belief, formed after an inquiry reasonable under the circumstances". Fed. R. Civ. P. 11(b)(3). To determine whether reasonable inquiry took place, courts consider (i) time available to signing attorney for investigation; (ii) extent of attorney's reliance upon his client for factual support of documents; (iii) feasibility of prefiling investigation; (iv) whether signing attorney accepted case from another member of the bar; (v) complexity of factual and legal issues; and (vii) extent to which development of factual circumstances underlying claim requires discovery. *Smith v. Our Lady of the Lake Hosp., Inc.*, C.A.5 (La.) 1992, 960 F.2d 439. *Zion v. Nassan*, 727 F. Supp. 2d 388 (W.D. Pa. 2010). Here, no factor weighs in Defendants' favor. Counsel is a distinguished education law attorney, and a go-to trial counsel for Defendants since the Soviet Union collapsed. He represented Yale at least 55 times in federal courts alone, and over 120 in Connecticut state courts. He graduated *cum laude* from Yale College himself; reportedly, his children attend Yale. His law firm partner's spouse has worked at Yale for twenty years. Counsel's knowledge of education law is exceptional, as is his knowledge of Defendants' internal organization and protocols. (Or lack thereof.) Yet, counsel certified his arguments are nonfrivolous. *An attorney … certifies … after a reasonable inquiry [that his] claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law.* Fed. R. Civ. P. 11(b)(2).

21

In *Citicorp,* court sanctioned an attorney who failed to research law and determine whether he had sufficient evidence to make *prima facie* showing of age discrimination, which warranted Rule 11 sanctions. *Citicorp/Diner's Club, Inc., 139 F.R.D. 357 (N.D. Ill. 1991)*. Here, defense counsel had 80 days to file an answer, which should have given him ample time to research law and facts. This action is not a complex securities litigation or a contentious white-collar prosecution – but an action of one particular student against Yale University for clearly defined conduct. Counsel did not accept the case from another attorney. He tried virtually identical cases for Yale University since 1991. Yale College first allowed women to enroll as students in 1969.

Defendants never intended to answer plaintiff's complaint because they ignore the possibility that anyone else but plaintiff can be at fault. For that reason, Defendants' motion must be denied.

3. <u>Defendants Already Procured a Month-Long Extension without the Court or Plaintiff Noticing</u>

Defendants now ask for an extension but counsel already procured an extension on February 4, without the Court or plaintiff noticing. Counsel authoritatively recommended that plaintiff waives service of summons, after plaintiff already served the process, because plaintiff's way "was not permitted". Counsel knew his representation is false. The only difference was the timeline – now Defendants had 60 days to answer plaintiff's complaint, not 21 days. Still, this additional five weeks' time was insufficient for Defendants to "research the facts and the law".

On February 3, Defense counsel contacted plaintiff via email [19] and declared that plaintiff's service of process "is not permitted" because plaintiff "delivered the summons and complaint to Yale [him]self, rather than engaging a process server". He recommended that

plaintiff sign a form that he attached to waive service to "remedy that defect without incurring any fees". He emphasized that plaintiff would not need to hire a process server, or "pay any other fee if you follow that procedure". He also politely suggested plaintiff can call him to have questions answered about this issue. This was the first message between the parties.

Counsel knew his representation was false. No Federal or Local Rule requires a process server to serve process, either on an individual or a corporation. In no case has a party successfully challenged the validity of process because the summons was hand-delivered to a corporation, and not served by a process server. Under Fed. R. Civ. P. 4(h), a complaint must be served on a domestic corporation be served by "delivering a copy of the summons and of the complaint", which plaintiff did – when he hand-delivered the summons to Office of General Counsel, which accepts the service of process for Yale University and all of its officers. Even Connecticut *state* law also contains no provision mandating that a process server. *Connecticut General Statutes Title 52. § 52-57*. Still, counsel made that misleading statement to plaintiff, thus procuring an extension.

Counsel also knew that plaintiff is unrepresented, and that he must not offer legal advice to plaintiff[6]. Plaintiff only recently understood that it is counsel's conduct that is deceptive, not the legal profession as a whole. After all, a lawyer "shall not state or imply that the lawyer is disinterested … [i]n dealing on behalf of a client with a person who is not represented by counsel". *ABA Model Rule 4.3*. In these proceedings, the interests of parties are clearly adverse. "The Rule distinguishes between situations involving unrepresented persons whose interests may be adverse to those of the lawyer's client and those in which the person's interests are not in conflict with the

---

[6] This idea is frequently discussed in the legal profession, outside the treaties and judicial decisions. "[to] the extent that you're giving legal advice and saying, "You should strike this because you're not allowed to do it," that's a violation of Rule 4.3". https://www.abajournal.com/news/article/podcast_monthly_episode_35

client's. In the former situation, the possibility that the lawyer will compromise the unrepresented person's interests is so great that the Rule prohibits the giving of any advice, apart from the advice to obtain counsel." *Commentary to Rule 4.3., Rules of Professional Conduct, Connecticut Bar Association*.

Counsel at all times intended to delay plaintiff's action in hope plaintiff would eventually abandon this suit, even at a cost of misrepresenting facts to gain an unfair advantage. He continues to employ this strategy to this day. Defendants' conduct clearly and convincingly demonstrates they never intended to take plaintiff's claims seriously, a *prima facie* showing of bad faith.

4.  <u>Defendants Failed to File a Timely Motion for Extension, and Offer No Explanation to the Court</u>

Defendants fail to explain why they did not request the extension on a timely basis, and why they violated the Local Rules yet again, four days after the Honorable Court warned defense counsel he must comply with the Rules [Doc. 72].

If defense counsel really needed an extension, he would have (i) agree informally with plaintiff for an extension; (ii) filed a timely motion with the Court; (iii) provide specific facts justifying his need for an extension, and what efforts he made to date; or (iv) file the answer as he awaited plaintiff's opposition. He did none, nor did he want to.

5.  <u>Defendants Resist A Rule 26(f) Conference, or Any Meeting at All</u>

Defense counsel expresses his interest in "productive resolution of the case", but a productive resolution is clearly unlikely if parties do not talk. Rule 26(f) conferences are helpful only when the attorneys involved are fully prepared – *and* when they talk.

Parties originally had an oral agreement to meet in person for meet-and-confer. Counsel later reneged on this contract in plaintiff's most vulnerable moment. Counsel correctly asserted that "the rule contemplates that we make an effort to reach agreement" [Doc. 49-2]; however, professional conduct implies that party *do* make an effort to reach agreement, not merely say they do.

Rule 26(f) conference is not a mere formality – requires parties to consider the nature and basis of their claims and defenses and the possibilities for promptly settling or resolving the case. Local Rule 26(f)(1) contemplates that meet-and-confer "may be conducted by telephone or electronic audio or video conferencing service". Local Rule 37(a) requires that all discovery disputes be first discussed between counsel *in person or by telephone* before a party makes a motion. The 26(f) Conference is the master conference to organize the discovery process, and minimize the likelihood of disputes, and the need for judicial intervention. Logically, a master conference requires *at least* the same level of effort as a conferral to resolve a one-time discovery dispute.

Counsel doesn't dispute that parties have not met or conferred. The Court should issue an amended scheduling order to reflect the discovery plan meet-and-confer. Plaintiff will make a separate filing in that regard; however, plaintiff expects that parties will be unable to reach an agreement. Plaintiff cannot conceive of *a single action* he might undertake to force defense counsel to respect the rules of procedure.

Counsel claims plaintiff makes "patently false" statements about parties' cooperating because counsel spoke with plaintiff over "telephone on numerous occasions since the beginning of this litigation", and that parties "exchanged countless emails". Indeed, defense counsel and

plaintiff *did* exchange countless emails. But one constructive email trumps a hundred purposeless emails. One hundred meaningless emails only waste parties' and the court's time.

Counsel demonstrated no interest in resolving this action productively, and further communication is likely to be futile.

6.   Counsel Presents an Altered Email to the Court Solely to Prove Plaintiff Is Not Sincere with Counsel

Defense counsel tells the Court, in his amended motion for extension [Doc. 74], that plaintiff is insincere with counsel because he misstated how much time counsel afforded plaintiff before filing a motion for extension – not 45 minutes but 2 hours 43 minutes. He repeats this allegation in his motion for protective order [Doc. 75, p. 5]. If this wasn't absurd enough, counsel knowingly altered the email he offers to the Court [Doc. 74-2] to persuade Your Honor not to believe plaintiff. This Court need not hire an outside expert, or a computer specialist, to conclusively determine who is correct because the truth is remarkably simple.

On 4:20pm ET, defense counsel's paralegal sent plaintiff an email, asking whether plaintiff objects a three weeks' extension Defendants seek in this case. A plain looking email is attached [21-22]. At 5:03pm ET, defense counsel filed a motion for extension [23]. This time is logged on CM/ECF, and does not depend on time zones or parties' wishes.  Defense counsel now alleges plaintiff misstated that date, and offers a printed email as evidence to the Court [Doc. 74-2]. He is intentionally misleading the Court.

Defense counsel offers the Court a representation of an email, ostensibly demonstrating that counsel's paralegal sent it at "2:20 p.m., two hours and 43 minutes before defense counsel filed its motion at 5:03 p.m., and not 45 minutes as reflected in plaintiff's email". Either plaintiff

or counsel is correct. Just as one person cannot be in New Haven and Hartford in the same time, an email cannot be sent once both at 2:20 p.m. *and* at 4:20 p.m. An email sent *once* is only sent once.

In reality, counsel altered the email to have it say what it not true. This Court need not inquire *how* counsel edited the email – which software he used, or whether others' assisted counsel – because each email service provider stores on its server a *unique* time-stamped copy of every email sent, showing when the sender sent it, and when the recipient received it.

An email consists of computer instructions that encode the actual message – what we commonly refer to as an email – *and* additional information into one file to ensure that a message looks identical on different computers. Such "full" version of the email counsel offers to the Court is attached [25-30]. Plaintiff underlined the relevant lines for the Court.

Counsel's paralegal pressed the "send" button at 4:20:23 p.m. EDT (translating from 20:20:23 +0000). Message was delivered to plaintiff's email inbox at 13:20:59 -0700 (PDT), or 1:20:59 pm Pacific Time. Eastern time is three hours past Pacific Time, so the message was delivered at 4:20:59 pm EDT. (The "full" email uses Pacific Time because Google's headquarters is in Mountain View, California. Plaintiff uses Gmail as his email service provider.)

Counsel might claim he made an innocuous mistake. But he certified to the Court that his filing has evidentiary support, to the best of counsel's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances. Fed. R. Civ. P. 11(b)(3). If counsel wishes to advance that argument, plaintiff has described step-by-step how counsel created that misleading email, and independently time-stamped this explanation. Plaintiff can also alter emails he offers to the Court, and claim the message here was sent at 3:14pm [31], or at 8:10am [33], to

demonstrate that plaintiff was given enough time to respond. The "full" email representation filed with the Court can also be altered, of course. Plaintiff does not result to such falsehoods because he understands that his reputation is like a toothpaste: once empty, it can *never* be restored.

Counsel's conduct is noteworthy *not* because 2 h 43 mins are anyhow different from 45 minutes, but because it (i) demonstrates to what extent counsel wishes to "win", "whatever it takes"; and (ii) deflects Court's attention from how this dispute started – that Defendants were never interested whether plaintiff agrees or opposes the motion for extension. Counsel merely wished to create an impression of compliance with Local Rule 7(b)(2), with no intention to ever follow it. "All motions for extensions of time shall include a statement of the movant that… (2) despite diligent effort, including making the inquiry in sufficient time to afford non-movant a reasonable opportunity to respond, the movant cannot ascertain the position(s) of the non-movant(s)."  Local Rule 7(b)(2) exists because an information whether or not the non-moving party agrees simplifies Court's decision-making process. This Court need not consider parties' arguments for and against extension if parties already reached an agreement. But defense counsel never intended to follow the spirit of Rule 7 – he wished to create a mere impression of satisfying it while flouting its purpose.

Counsel wished to have this case "decided on the merits". In reality, he resorts to deceptive tactics to create a perception that plaintiff is not credible, hoping to induce plaintiff not to believe what he knows to be, and what is, true.

Counsel knows plaintiff is a foreign student, whose first language is not English, who has no income, and who cannot be lawfully employed. Counsel knew at all times he has *every* advantage over plaintiff – litigation experience, understanding of law and procedure – but he still resorted to

misleading tactics that should have *no* place in a court of law. If counsel had a rock-solid case, why would he go to such lengths to make his case?

Counsel's conduct is neither a misunderstanding nor a one-time occurrence. You *cannot* accidentally edit a pdf file, change time zone on your computer, or crop an older message to have them say something else than what's true. Counsel simply advances a theory that plaintiff should not be believed.

Presenting misleading emails to damage your opponent's credibility serves *no* purpose – it wastes this Court's time, damages the integrity of the legal profession, and secures an *unjust* resolution of these proceedings.

The Connecticut Rules of Professional Conduct have the force of law on attorneys. Under Rule 3.3, "*a lawyer shall not knowingly make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact*". Defense counsel knew the statement he makes is wrong. Plaintiff asked if counsel wishes to withdraw his motion; he declined [suggestion-to-withdraw.pdf]. In this instance alone, counsel clearly violated Rule 3.3.

Defense counsel has been admitted to practice in Connecticut since September 1977. He indicated "Ethics & Professional Responsibility" as his area of practice on CT Bar website. His profile was last updated on March 3, 2020. [35]

An attorney is an officer of the court and owes the court fiduciary duties and loyalty. In extreme cases, when an officer of the court fails to correct a misrepresentation or retract false evidence submitted to the court, it may also constitute fraud on the court. *In re McCarthy*, 623 N.E.2d 473, 477 (Mass. 1993).

The Supreme Court has held that Fed. R. Civ. P. 11 imposes on any party who signs a pleading, motion, or other paper—whether the party's signature is required by the Rule or is provided voluntarily—an affirmative duty to conduct a reasonable inquiry into the facts and the law before filing, and that the applicable standard is one of reasonableness under the circumstances. *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 551 (1991).

Rule 26(g) of the Federal Rules of Civil Procedure requires that an attorney of record sign discovery-related filings, and prescribes that the signature certifies that "to the best of the person's knowledge, information, and belief formed after a reasonable inquiry" the discovery request, response, or objection is "consistent with these rules and warranted by existing law. "Rule 26(g) imposes an affirmative duty to engage in pretrial discovery in a responsible manner that is consistent with the spirit and purposes of Rules 26 through 37. In addition, <u>Rule 26(g) is designed to curb discovery abuse by explicitly encouraging the imposition of sanctions.</u> This subdivision provides a deterrent to both excessive discovery and evasion by imposing a certification requirement that obliges each attorney to stop and think about the legitimacy of a discovery request, a response thereto, or an objection. … If primary responsibility for conducting discovery is to continue to rest with the litigants, they must be obliged to act responsibly and avoid abuse. " The Advisory Committee Notes to the 1983 Amendment to Rule 26(g). [emphasis added]

Plaintiff is disheartened because he believed – so naively, as it turns out – that *all* lawyers follow ethical rules. Plaintiff understands that Yale University has been this counsel's key client for thirty years – but attorney's obligation to zealously defend a loyal client is *not* a license to mislead, employ "whatever it takes" approach against the opponent, and obstruct fair proceedings before this Court. Plaintiff will address other instances of counsel's dubious conduct separately.

7. <u>Defense Counsel Violated *All* Local Rules Governing Motions for Extension After Court Warned Counsel That He *Also* Must Follow Local Rules</u>

Court has cautioned defense counsel that he must follow Local Rules – but counsel violated *all* Local Rules in his immediate filing after Court's admonition. Such is his desire to quash – not the notice of deposition, but plaintiff.

District of Connecticut Local Rule 4(b) governs motions for extension of time in this Court. Rule 4(b) has three subpoints. Defendants satisfied none.

Under Rule 4(b)(1), Defendants, when moving for an extension, must (i) satisfy the good cause standard; (ii) convince the Court they acted diligently; and (iii) show why, despite that diligence, they could not satisfy the original deadline. "All motions for extensions of time must be decided by a Judge and will not be granted except for good cause. The good cause standard requires a particularized showing that the time limitation in question cannot reasonably be met despite the diligence of the party seeking the extension."

Defendants fail to meet either element of this standard; they fail to offer even a boilerplate argument to convince the Court otherwise. Nor could they. Defendants certainly could prepare an answer in eleven weeks – but they never intended to.

Local Rule 4(b)(2) requires Defendants to inquire whether plaintiff agrees or object to a motion or, if Defendants cannot ascertain plaintiff's position despite diligent effort and sufficient time, they make such statement. "All motions for extensions of time shall include a statement of the movant that (1) the movant has inquired of all non-moving parties and there is agreement or objection to the motion, or that (2) despite diligent effort, including making the inquiry in

sufficient time to afford non-movant a reasonable opportunity to respond, the movant cannot ascertain the position(s) of the non-movant(s)."

Defendants merely sent a three-sentence boilerplate email forty-five minutes before they filed their motion, representing that plaintiff has not responded. Defense counsel made no effort, or diligent effort, to inform himself whether or not plaintiff objects to this extension.

Counsel could have called plaintiff; he has plaintiff's two phone numbers, link to plaintiff's Zoom personal meeting room, and plaintiff's fax number. He did not. Counsel could have explained over text message that he wishes to move for extension, and why. He did not. Counsel has not talked to plaintiff since March 5; he has not answered a single telephone call since. Now he asks the Court to "relieve him from a requirement" to communicate with plaintiff via telephone [Doc. 75]. Counsel has no intention to follow Local Rules; he uses them against plaintiff, as he pleases. But a license to practice law is not a license to deceive.

Local Rule 4(b)(3) requires all motions for extensions to be filed at least three days before the deadline, unless compelling circumstances warrant an exception. *"All motions for extension of time shall be filed at least three (3) days before the deadline sought to be extended, except in cases in which compelling circumstances warranting an extension arise during the three days before the deadline."* Defendants filed their motion on the same day their response was due. They offer no compelling circumstances that may justify an exception. They offer no argument why the deadline should be extended, given that they failed to file a timely motion for extension. *Any motion for extension of time filed fewer than three days before the deadline sought to be extended shall, in addition to satisfying all other requirements of this Rule, set forth reasons why the motion was not filed at least three days before the deadline in question.* Defendants fail to follow this requirement either. Nor could they. Meanwhile,

32

Counsel advertises his practice saying he is "the reporter of the Local Rules [chosen] by the Judges of the United States District Court for the District of Connecticut". [36]

Defendants engage in rule-shopping, a practice akin to venue shopping, where counsel follows the rules that he chooses in a way he finds convenient to his present purpose, with utter disregard to their purpose or underlying level-the-playing-field spirit. "Most courts, if not all, are sticklers for following the rules, and it is vital for an attorney litigating cases in federal court to not only master the Federal Rules of Civil Procedure but also the court's local rules. Lack of familiarity with specific rules will not only waste valuable resources and time but will also disrupt the outcome of a case." *Mays v. Wal-Mart Stores, Inc.,* 330 F.R.D. 562 (C.D. Cal. 2019), reversed on appeal *Mays v. Wal-Mart Stores, Inc.*, No. 19-55318 (9th Cir. Mar. 17, 2020). [emphasis added]

For this reason alone, this Court should impose sanctions on defense counsel. Nothing short of sanctions will have a resounding effect on Defendants – Court's warning and plaintiff's appeals had absolutely no effect.

8.   Defendants Cannot Establish Excusable Neglect Under Fed. R. Civ. P. 6(b)(1)(B)

"When an act may or must be done within a specified time, the court may, for good cause, extend the time: ... (B) on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B).

For the reasons already stated, Defendants' delay was neither inadvertent nor excusable. Even if counsel argues otherwise, courts established a high bar for excusable neglect. *Failure to read a local rule* did not constitute "excusable neglect" sufficient to allow for extension of time in which to respond to motion to dismiss for lack of personal jurisdiction and failure to state claims. Failure

of plaintiff's attorney to respond to summary judgment motion in employment discrimination action could not be excused by his *other legal obligations or broken arm*, which allegedly impaired his ability to type pleadings, and thus plaintiff was not entitled to leave to file summary judgment response instanter. That an attorney had *other matters in his office* which required his attention did not constitute "excusable neglect" so as to permit extension of time to file a record on appeal on motion filed after prescribed time had expired. *Boon Partners v. Advanced Financial Concepts, Inc.*, E.D.N.C.1996, 917 F.Supp. 392. *Keeton v. Morningstar, Inc.*, C.A.7 (Ill.) 2012, 667 F.3d 877. *Failure of Citizens' Protective League v. Clark*, C.A.D.C.1949, 178 F.2d 703, 85 U.S.App.D.C. 282. [emphasis added]

9.   Counsel Engages in Dilatory and Obstructionist Tactics That Serve No Purpose But to Prevent a Speedy, Just, and Inexpensive Resolution of This Action

Counsel's deceptive tactics are depressingly creative. In addition to (a) making false representations to unknowing self-represented plaintiff to gain an unfair advantage; and (b) filing personally spiced motions, counsel changed the margins in his motions for protective order [Doc. 75], in departure from Local Rules, ostensibly only to detract plaintiff from meritorious arguments and bring that immaterial formatting violation to Court's attention. In no other filing presented to this Court has counsel used such margins.

Defense counsel also alleges plaintiff misled the Court about his medical treatment. [Doc. 75] This argument is highly contrived when compared with original statements – but what matters here is the level of argumentation Defendants engage in to have the case "decided on the merits".

Plaintiff will address counsel's other "creative tactics" at oral argument.

34

10. Defendants' Boilerplate Request Amounts to No Request at All

Defendants' motion is model boilerplate that "reduces the clarity, value, and usefulness of the interrogatories, requests, responses, and objections it accompanies"[7]. *Obiajulu v. City of Rochester, Dep't of Law*, 166 F.R.D. 293, 295 (W.D. N.Y. 1996) ("Such pat, generic, non-specific objections, intoning the same boilerplate language, are inconsistent with both the letter and spirit of the Federal Rules of Civil Procedure."); *St. Paul Reinsurance Co., LTD. v. Commercial Fin. Corp.*, 198 F.R.D. 508, 511-513 (N.D. Iowa 2000) (extended criticism of boilerplate objections); *Walker v. Lakewood Condo. Owners Ass'n*, 186 F.R.D. 584, 587 (C.D. Cal. 1999) ("Boilerplate, generalized objections are inadequate and tantamount to not making any objection at all.")

Boilerplate filings, absent a cordial relationship between the parties, they a discourteous least-effort practice to ostensibly meet a Court-mandated deadline – by spending one minute after one month of not doing anything productive.

Defense counsel and his firm has employed boilerplate motions and discovery objections for years, both in federal courts [37-40] and in state courts [41-109]. Plaintiff is impressed with counsel's ability to produce thousands of words that say *exactly* nothing, while violating most basic rules of discovery. In one particular case, plaintiff sought a copy of bylaws of Yale New Haven-Hospital. After one month' time, counsel objected because request was "overly burdensome". Plaintiff found the document sought in under one minute with a simple Google search.

"A lawyer who … makes boilerplate objections to discovery requests without particularizing their basis, or who is evasive or incomplete in responding to discovery, …, or who

---

[7] Gensler, Steven S. and Rosenthal, Lee H. (2017) "Breaking the Boilerplate Habit in Civil Discovery," Akron Law Review: Vol. 51: Iss. 3, Article 3. Available at: http://ideaexchange.uakron.edu/akronlawreview/vol51/iss3/3

delays the completion of discovery to prolong the litigation in order to achieve a tactical advantage, or who engages in any of the myriad forms of discovery abuse that are so commonplace is . . . hindering the adjudication process, and . . . violating his or her duty of loyalty to the "procedures and institutions" the adversary system is intended to serve." *Mancia v. Mayflower Textile Servs. Co.*, 253 F.R.D. 354, 362 (D. Md. 2008) (citation omitted).

As the court observed in *Liguria Foods, Inc. v. Griffith Laboratories, Inc.*, No. C 14-3041-MWB, 2017 U.S. Dist. LEXIS 35370, at *32 (N.D. Iowa Mar. 13, 2017), "'[t]he key requirement in both Rules 33 and 34 is that objections require 'specificity.'" So-called "'generalized objections are inadequate and tantamount to not making any objection at all.'" (addressing boilerplate responses in discovery).

11. Productive Continuation of This Action Is Impossible Without Court's Intervention

Plaintiff is concerned whether Defendants genuinely implemented a litigation hold; maintain any relevant records – for the purposes of this litigation, or even in the ordinary course of business; can identify individuals responsible for issuing a written document hold; or even whether Defendants ordinarily verify compliance with litigation obligations. Defendants' document retention policy [110-113] lacks any specificity and suggests that university attorneys decide, upon notice of litigation, whether the records would be preserved – a decision most litigants would never uncover because of attorney-client privilege defense. This may inevitably necessitate a forensic examination of Defendants' records.

Defense counsel cannot approach this litigation in a cooperative and professional manner.

Parties have not met-and-conferred. Parties can't agree on dates. Counsel's requests, if they appear, are open-ended ("can you agree that we need not engage in depositions at this time?"); counsel's answers to plaintiff's specific requests are devoid of meaning (example).

Counsel depicts himself as conscientious not to trouble the Honorable Court, perfectly understanding this communication will likely be released sooner or later. ("I was hoping not to have to trouble Judge Hall further with this matter at this time, given the national and international emergency, which has greatly burdened the judiciary.") Still, he filed a frivolous motion for protective order, which Plaintiff will address separately.

Defense counsel is known for blind stonewalling discovery tactics from other cases; counsel's objections frequently fail to specify the grounds for non-disclosure, provide little factual justification for why responsive documents have been withheld, and more[8]. Here, counsel

> Your request that a witness appear in response to a subpoena on April 17 is inconsistent with Judge Hall's order that depositions are not to be scheduled until after the Governor's emergency order has been lifted.
>
> The documents you seek cannot be assembled in the time you have provided.
>
> The information you seek will be voluminous, but are irrelevant to this case, and consist of documents that contain confidential information of other students, which you are not allowed to see.

Plaintiff will have no recourse but to move to compel and for sanctions when counsel provides boilerplate answers and general objections. However, instead of playing that stonewalling game at level one, plaintiff wishes to preclude such questionable practices at this time.

---

[8] Marty Solomon, *Are the Bad Old Days of Blind Stonewalling in Discovery Finally Coming to a Close?, Jul. 26, 2017,* https://casetext.com/analysis/are-the-bad-old-days-of-blind-stonewalling-in-discovery-finally-coming-to-a-close (discussing expensive and unproductive discovery battles that result from boilerplate objections)

Plaintiff will attempt to communicate with defense counsel before the scheduled conference, yet any communication is unlikely to be productive.

CONCERNS ABOUT DEFENDANTS' FUTURE CONDUCT

In light of defense counsel's conduct, Plaintiff is highly skeptical whether Defendants will ever engage in meaningful discovery. Plaintiff is suspicious whether Yale met its discovery obligations: whether Yale issued a written litigation hold notice, identified key custodians and data stewards, ensured that custodians comply with litigation hold, or whether counsel *even considered* these obligations apply to plaintiff's case, just as they do in every other litigation. Yale's document retention policy is impressively vague, and can be summarized in six words: if litigation happens, call general counsel. Plaintiff's extensive experience from Yale suggest none of these polices is enforced or monitored, a fact invisible to any outside counsel – the Court in particular.

If counsel does not understand plaintiff's claims, he may claim discovery obligations are ill-defined. But he intentionally deprived himself of that understanding when he refused to meet or speak with plaintiff. "It is also said that persons who know enough to blind themselves to direct proof of critical facts in effect have actual knowledge of those facts." *United States v. Jewell*, 532 F. 2d 697, 700 (CA9 1976) (en banc). "[C]ourts applying the doctrine of willful blindness hold that defendants cannot escape the reach of these statutes by deliberately shielding themselves from clear evidence of critical facts that are strongly suggested by the circumstances. The traditional rationale for this doctrine is that defendants who behave in this manner are just as culpable as those who have actual knowledge." *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754 (2011), citing *Edwards, The Criminal Degrees of Knowledge*, 17 Mod. L. Rev. 294, 302 (1954) (observing

on the basis of English authorities that "up to the present day, no real doubt has been cast on the proposition that [willful blindness] is as culpable as actual knowledge").

Meanwhile, Yale's highly informal organizational structure, ostensibly designed and maintained to minimize the risk of litigation and maximize the difficulty of external investigation, enables counsel to advance meritless arguments that Defendants are unable to produce responsive documents in a given time.

To prevent further gamesmanship, parties should immediately meet-and-confer, exchange initial disclosures under *Fed. R. Civ. P. 26(a)(1)(A)*, and develop a discovery plan, agree on specific mechanisms to resolve discovery disputes without judicial intervention. Parties should also discuss how to engage in cloned discovery, which will likely reveal how and where Defendants store relevant data (if they do). However, a written plan without judicial supervision and credible threat of sanctions is likely to be yet another piece of paper that counsel applies liberally to suit his client's present needs.

Plaintiff is concerned because counsel's conduct is directed against plaintiff's Fourteenth Amendment right to seek redress in this very court, and appears to be directed at the court itself. As Yale University struggles to send students back their property in a month, saying they are "working on arrangements for students to retrieve other items." [114-118], plaintiff only recently realized that Defendants lost his exam without grading it [119-123]. Plaintiff's grades are not a key issue in this case, let alone this particular motion – but counsel offered a strikingly different fact pattern regarding that very "F" grade [Doc. 37-5]. As a result, the Court could not find likelihood of success on the merits as of March 28, 2020 [Doc. 64].

Defense counsel refused any discovery, formal or informal, on objectionable grounds stated without specificity. "As to the depositions, we will not be producing any witnesses at this time." [3]. Unless otherwise ordered, discovery in this Court shall be completed within 6 months after the filing of the complaint. Almost three months have passed – but Defendants engage in no discovery.

Plaintiff declines to engage in discovery journeys counsel indulged in *Bagley* (parties could not agree on most case deadlines at Rule 26(f) conference or a scope of confidentiality after a month of good faith attempts[9]; counsel sought a confidentiality order whereby *each* document to must be individually assessed prior to release; Yale failed to distribute litigation hold, a realization parties reached *three years* after the action was commenced; counsel extensively used boilerplate assertions of attorney-client privilege and work-product doctrine to stonewall discovery). Counsel later wrote: "the plaintiff fails to provide a single example of a document that the defendants have not produced." (how could plaintiff name a document he doesn't know exists because he was not allowed to locate it?). Meanwhile, counsel invoked the master rule he treated so liberally here: "It must be remembered that the very first Rule of the Federal Rules of Civil Procedure admonishes that the rules "should be construed and administered to secure the just, speedy, and <u>inexpensive</u> determination of every action and proceeding." Fed. R. Civ. P. 1 (emphasis supplied)." [*Bagley*, Doc. 35, p. 4] *Bagley v. Yale Univ. et al.*, No. 3:13-cv-01890-CSH (D. Conn. 2014)[10].

Plaintiff is troubled that counsel treats rules of professional conduct very liberally, too. Plaintiff's mistrust of counsel stems from this well-established pattern of obstruction and obfuscation engineered to remain invisible for the Court.

---

[9] Meanwhile, counsel
[10] In *Bagley*, defense counsel represented Professor Edward Snyder

As counsel has refused to speak to plaintiff or engage in discovery, plaintiff has located most relevant policies and procedures at Defendant Yale University, including (i) the document retention policy; (ii) a list of data custodians; (iii) litigation hold procedures, and others. All such documents will be provided to counsel before the scheduling conference. Discovery shall focus on identifying whether, if at all, these policies are reflected in reality.

Plaintiff doubts a collegial relationship with opposing counsel is conceivable or even possible – because counsel's career as Yale attorney has relied on *not* allowing discovery at all costs.

REQUEST FOR SANCTIONS

It shall be the duty of counsel and all parties to promote the just, speedy and inexpensive determination of every action. "Discovery is intended to operate with minimal judicial supervision unless a dispute arises and one of the parties files a motion requiring judicial intervention." *S.L. Sakansky & Assoc., Inc. v. Allied Am. Adjusting Co. of Florida, LLC*, No. 3:05-cv-708-J-32MCR, 2007 WL 2010860, at *1 (M.D. Fla. Jul. 6, 2007). Here, *only* disputes have arisen.

Counsel refuses to accept the fact that plaintiff disagrees with his theory of the case; he instead intimidates plaintiff to abandon the case; obtained plaintiff's confidential medical records without a court order or a subpoena, in clear violation of federal privacy laws[11] which counsel knew about and understood because he advanced an argument proving plaintiff's point in one of his many filings in *Bagley*. Plaintiff cannot conceive how a civil relationship between parties can exist here.

---

[11] Counsel procured plaintiff's medical records before the TRO conference on March 5 without a court order, or a subpoena. He intentionally did not request plaintiff's permission. Plaintiff will address that instance accordingly in a separate filing.

Plaintiff cautioned counsel two weeks ago that he would move for sanctions if counsel continues to ignore him [4]. One particular email could not have been clearer: "We cannot resolve [this issue] unless you communicate with me." [1]. Instead, counsel filed yet another frivolous motion [Doc. 75]. Plaintiff now moves for sanctions, and will move to strike and for sanctions regarding the other motion.

Plaintiff respectfully requests the Court impose sanctions it sees fit, pursuant to the inherent powers of the Court, to deter defense counsel's carefully designed non-compliance with Federal and Local Rules, and restore respect to rules of professional conduct that *all* parties must follow.

Counsel has <u>no</u> liberty in selecting the rules he will follow, and which he will not. His conduct must be strongly disciplined because cherry-picking rules parties are bound by contradicts the very purpose of the law – to make otherwise unequal parties equal, and assess their case by argument and evidence. This Court must deter counsel and other attorneys from following that path.

CONCLUSION

"A complaint . . . is frivolous where it lacks and arguable basis either in law or fact." *Neitze v. Williams*, 490 U.S. 319, 325 (1989). Defendants' motion is neither based in law or in fact.

Plaintiff will address specific discovery concerns separately in writing before the conference presently scheduled for April 20, 2020 at 2:00pm ET.

Plaintiff respectfully requests the Court to impose sanctions it sees fit to deter dilatory tactics designed to solely harass the opponent. Plaintiff wishes to resolve this matter with minimum intervention of the Court; however, counsel is committed *not* to make this happen.

For the reasons stated, Defendants' motion for extension should be denied.

Dated: April 18, 2020 in Inyokern, California.

Respectfully submitted,
/s/ Jakub Madej

Jakub Madej
The Plaintiff

65 Dwight St
New Haven, CT 06511
j.madej@lawsheet.com
Telephone: (203) 928-8486
Facsimile: (646) 776-0066
Fax: (203) 902-0070

43