UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

_____

**JAKUB MADEJ**

      **Plaintiff,**

**v.**

**YALE UNIVERSITY, MARK SCHENKER**
**JESSIE ROYCE HILL, MARVIN CHUN,**
**PETER SALOVEY**

      **Defendants.**

_____

**CIVIL ACTION No.  3:20-cv-00133-JCH**


**JURY TRIAL DEMANDED**


**APRIL 20, 2020**


### PLAINTIFF'S RESPONSE IN OPPOSITION
### TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER

Plaintiff Jakub Madej responds in opposition to Defendants' motion for protective order as vexatious and derogatory, and for sanctions to deter unreasonable filings presented to this Court solely to cause unnecessary delay. Defendants should never be permitted to make similar requests to this Court again.

Defense counsel *never* met the plaintiff; he refused or ignored all proposals to confer. He has not answered a single phone call from plaintiff for seven consecutive weeks. Counsel was obliged to attempt to resolve discovery disputes (Doc. 67) informally via phone before filing a formal motion under both Local Rule 37 and Standing Order of the Court (Doc. 9). He did not. *See* Doc. 70. Counsel failed to follow both Local Rules and Federal Rules when he requested extension    he even altered an email to mislead the Court about plaintiff's sincerity (Doc. 74;

*contra* Doc. 80). Forty days of silence later, defense counsel asks to be "relieved" from the requirement of the Local Rules — which he never observed — and not to communicate with plaintiff but through email. This motion squarely demonstrates Defendants' commitment not to enable this litigation to proceed as it should — economically, speedily, and inexpensively.


## ARGUMENT

Defendants' argument is spurious — counsel assembles out-of-context quotes and misguided statements to disguise two facts: (i) Defendants' near-complete lack of engagement in this litigation; and (ii) defense counsel does not take plaintiff seriously.


1. <u>Counsel Wishes Never to Communicate with Plaintiff Because He (Ostensibly) Fails to Take Plaintiff's Claims Seriously</u>


Defense counsel offers to the Court an email (Doc. 75, p. 2), where he appears to be genuinely concerned about his health and family. Plaintiff is sympathetic to counsel's worries in light of the ongoing crisis. Here, however, counsel's argument is misplaced and misguided because this case could proceed nonetheless — if only counsel took plaintiff seriously.

Defense counsel did send the message he offers to the Court — except not "upon learning that the plaintiff intended to meet with defense counsel in person" but when he read plaintiff's response to Defendants' motion to quash (Doc. 70). Plaintiff filed his response at 9:36 pm on April 1; counsel responded at 9:13 am on April 2.

Counsel realized that plaintiff understands counsel's near-absolute disregard of Local Rules. Counsel never responded to plaintiff's response in substance but the Court later warned

counsel that he must comply with Local Rules (Doc. 72). Counsel nonetheless filed the following

motion for protective order. Plaintiff offered counsel an opportunity to withdraw his filing but

counsel declined (Exhibit 1).

Counsel first learned that plaintiff wants to meet in person to discuss the case management

plan not in April, but in February. Defendants' resisted a meet-and-confer despite an oral

agreement to convene in March. A standard practice in litigation, parties hold a 26(f) conference

not via email but in-person or telephonically. Plaintiff made it clear, albeit orally, that parties

should meet in person. After the pandemic occurred, counsel was fully aware at all times that

plaintiff proposed meeting virtually    at least three times. Plaintiff also organized a secure Zoom

meeting room for that purpose, sent counsel a link, and was willing to accommodate counsel's

schedule. Counsel ignored all such proposals.

Counsel also did not offer his entire email to the Court. The fragment he did attach is

humanizing    but the entire communication offers a fuller picture. The full excerpt of this

communication is on file [Doc. 80-2, p. 1-6]. In the fragment counsel did *not* attach, he: (i)

threatened plaintiff with police; (ii) declared that he would "accept any further telephone calls

from [plaintiff]    *one month* after the last call counsel accepted; and (iii) claimed he received no

phone calls from plaintiff. Counsel only made these statements to discourage plaintiff from having

"the case decided on the merits". Why else would he mention police?

> I have also notified the Guilford police of your activities, so
> that they will be prepared if there is any difficulty.

> Contrary to your statement, I received no calls from you
> yesterday on either the office or the cell phone.  I checked again just
> now and there are no messages from you on either phone.

Consequently, I will not accept any further telephone calls from you.

Plaintiff did call counsel that day three times    on 1:34pm; 2:05pm; and 4:01pm. Plaintiff could offer screenshots to the Court but they can be altered. Instead, an affidavit is attached to this motion.

Counsel tried to reconcile all facts he offered to the Court while not saying anything false, which he knows he must not do. But it cannot be that one person calls the other three times, and the other person receives zero    unless counsel has blocked plaintiff's number, turned off his phone, or otherwise contrived a situation where he indeed would not receive plaintiff's phone calls.

Simply blocking plaintiff's phone would render all statements counsel made true    that "there were no voicemail messages from the plaintiff on that day on either the office or cell phone"; that "defense counsel did not have any missed calls on his cell phone"; and that "defense counsel did not receive any calls, messages, or missed calls from the plaintiff during the week of March 30, 2020". But willful blindness is no excuse. If counsel were correct about plaintiff's insincerity, why parties have not spoken over telephone since March 5, despite plaintiff's obvious inclination to communicate with counsel?

To plaintiff, counsel made the following speculative statement: "I am not suggesting that you are lying when you say these things occurred; it may be that you honestly believe what you say, but the objective facts are otherwise."

Throughout that very conversation, plaintiff repeated that parties have not met or conferred, and made no progress in resolving this action.  Yet counsel argues he "has spoken to the plaintiff via telephone on numerous occasions since the beginning of this litigation".  Plaintiff

pointed out to counsel five days before: "Communication, by definition, is <u>two-sided</u>, Pat.".
[emphasis original]

Counsel correctly points out that he responded to plaintiff's emails. But *one* purposeful
email trumps a hundred messages intended to solve nothing. Counsel says he is "very busy with
many matters that are on a more urgent time schedule than this case". He was able, however, to
file a derogatory motion for protective order    designed solely to harass plaintiff    precisely at
11:35 p.m. on a day counsel knew plaintiff would (i) be working on a response to Defendants'
request for extension; (ii) notice the filing immediately; (iii) experience unease at counsel's
unsubstantiated allegations. Counsel was correct about all three statements.

The conclusion is simple    Defendants have no interest in discussing plaintiff's claims, and
approaching this litigation in an organized fashion, as parties must do under Fed. R. Civ. P. 26.

2. <u>Counsel Fails to Accept That the Fact Pattern He Constructed May Be False    Only on
the Record    While He Controls All Relevant Facts</u>

Counsel colorfully writes: "plaintiff's recent e-mail communications with defense counsel
also demonstrate that the plaintiff's interpretation of conversations and events, to put it most
charitably, is often at variance with the facts." Under *Fed. R. Civ. P. 11(b)*, Counsel represented to
the Court that his statements have evidentiary support formed after an inquiry reasonable under
the circumstances, to the best of his knowledge, information, and belief. But has defense counsel
made *any* inquiry into plaintiff's claims? Have Defendants even understood plaintiff's claims? The
record suggests a square "no". Defendants failed to file a timely answer to plaintiff's complaint
within seventy-five days, though counsel procured an extension from plaintiff by

misrepresentation. Defendants failed to (i) file a timely motion for extension; (ii) explain why the original time was insufficient to prepare an answer; and (iii) follow *any* Local Rule governing motions for extension of time. They did not attempt to establish excusable neglect under *Fed. R. Civ. P. 6(b)(1)*. Nor could they.

Plaintiff's theory of the case may be at variance with the facts    but with those facts that counsel offered to the Court. Counsel has tightly controlled relevant information that would support plaintiff's claims, as is his practice as defense counsel for Yale University since 1991.

*Bagley* squarely demonstrates how impenetrable is the wall counsel constructs and maintains in each case. In *Bagley*, plaintiff alleged an unlawful termination of employment as professor at Yale School of Management. After three years of aggressive discovery battles, Plaintiff's attorneys uncovered that, to quote Judge Height, Yale was "'leisurely' in the pace of its litigation holds". Counsel long maintained that hold notices are immune from discovery under attorney-client privilege, an assertion the Court described emphatically as "something of a stretch", granting a motion to compel Yale to produce notices. Motions to compel, memoranda in support, responses, and court orders on compelling discovery occupy 51 entries on the 205-entry docket. Parties stipulated a dismissal after 3.5 years of litigation    after limited discovery took place. *Bagley v. Yale University*, 318 F.R.D. 234 (D. Conn. Dec. 22, 2016).

Meanwhile, this Court's order on pretrial deadlines mandates that "discovery shall be completed within 6 months after the filing of the complaint", unless otherwise ordered.

Counsel alleged plaintiff is "at variance with the facts" not because plaintiff is at variance with the facts but because he knew plaintiff misunderstands the difference between his role as counsel from the Court's role in these proceedings. (Not anymore.) Counsel was saying, to

6

summarize a thousand words in ten: "*Jakub, even the Judge disagrees with you. Withdraw the case*".

This approach is not a one-time occurrence: defense counsel previously made false representations

to plaintiff [e.g. Doc. 80, p. 22-23; procuring a month-long extension by recommending a waiver

of service because plaintiff's service was "not permitted"] to gain an advantage, in violation of Rule

4.3 of Connecticut Bar Association's *Rules of Professional Conduct*. Plaintiff prefers this litigation

proceeds with facts, supplied by *both* sides and not cherry-picked by counsel.

3. Yale University Policies and Yale University Reality Are Uncorrelated, Which This Case Is About

Counsel makes yet another out-of-context assertions that lack evidentiary support [Doc.

75, p. 4-6]. Plaintiff agrees that Yale University's policies should not apply differently to him than

to any other student at Yale; regrettably, Yale University policies are at variance with Yale

University reality. Plaintiff also agrees that Federal and Local Rules of Civil Procedure should not

apply differently to him than to any other attorney. Counsel's consistent pattern of rule-shopping

[Doc. 80, p. 33] makes plaintiff question whether that assertion is mutual.

Counsel asserts that plaintiff misled the Court about his psychiatric treatment. (Why

would plaintiff do that?). Previously, plaintiff was forced to seek Court's help to obtain *one* visit to

receive one prescription that Yale Health has forgotten about. Plaintiff never asked for more than

one prescription, was ready to pay for a visit, and still sees no indication on MyChart[1] that his

status changed    but his emails were never answered. When plaintiff sought clarification, his

---

[1] MyChart is an online patient portal used at Yale Health that allows patients to manage their healthcare information.

psychiatrist at Yale Health, Dr. Paxton, never responded. This Court kindly agreed to hear plaintiff's motion 24 hours after filing.

The only explanation plaintiff ever received from Yale Health was in this Court, when counsel filed an affidavit from Dr. Paxton *three minutes* before the telephonic conference on March 5. In doing so, counsel obtained plaintiff's confidential medical records without a court order or a subpoena, in clear violation of both federal privacy laws *and* HIPAA policies at Yale University [Doc. 80, p. 41]. Detailed notes from sessions with a psychiatrist    which plaintiff himself never knew exist    are probably the most sensitive personal information anyone at Yale could ever see.

One day after counsel learned that plaintiff understands this was a serious violation, he moved to seal the conference transcript he previously ordered [Doc. 59]. In his motion, counsel stated: "Yale University strives to protect the confidentiality of all of its students, including the plaintiff".

When private information helps Yale administrators, it is readily available. When the opposing party requests even less personal information, Yale "respecting patients' and clinical research subjects' rights to maintain the privacy of their health information and ensuring appropriate security of all protected health information"[2]. Not only this plaintiff experienced Yale's double confidentiality standard. In *P.*[3], plaintiff alleges Yale New Haven-Hospital disclosed her confidential treatment information to Yale College, triggering an involuntary withdrawal for medical reasons. This case is pending in this Court before Judge Squatrito. *P. v. Yale University, et al*, No. 3:19-cv-00315-DJS (D. Conn.). Anecdotal examples are common among Yale undergraduate. Plaintiff's experience with security measures employed to protect student

---

[2] Quote from: https://hipaa.yale.edu/
[3] Plaintiff in that case is identified with initials only.

information also questions how Yale genuinely protects this information. Plaintiff will address

Defendants' conduct in a separate filing.

Counsel suggests that information plaintiff seeks is confidential because it is relating to

other students. He advanced that argument in other cases where he represented Yale    also in

*Bagley*, where he sought to have every individual document reviewed prior to disclosure. But

student records protected by FERPA are generally discoverable in litigation. 34 CFR § 99.31.

Confidentiality of information revealed in discovery is protected by this Court's Standing

Protective Order [Doc. 8]. Plaintiff also sent a signed confidentiality agreement to counsel two

days ago. If counsel objects to such disclosure, plaintiff will move to compel as he believes the

balancing test developed in *Rios* is in favor of plaintiff's request. *Rios v. Read*, 73 F.R.D. 589

(E.D.N.Y., 1977). Plaintiff's experience suggests that Defendants simply do not know where such

information is    or, in this instance, whether it exists at all. Yet, Counsel had little qualms about

protecting student privacy where he obtained plaintiff's medical records.

Nonetheless, Defendants maintain that Plaintiff misled the Court about his treatment.


4. <u>Counsel Paints Plaintiff as Not Believable, and Now Asks for the Final Step to Dispose of This Case</u>


Counsel alleges that plaintiff was insincere with him about how much time counsel

afforded him before filing a motion for extension.


> "That the plaintiff could make this two hour error, despite
> having received the paralegal's email less than 24 hours earlier and
> despite the fact that the first email was positioned immediately
> below the plaintiff's response demonstrates that the plaintiff has

> great difficulty reporting events accurately, even when he has a
> written document to rely on."

In reality, he presented an altered email to the Court solely to demonstrate plaintiff's lack of credibility. Counsel certified that his motion was not being presented for any improper purpose, and that factual contentions have evidentiary support to the best of counsel's knowledge and belief, formed after an inquiry reasonable under the circumstances. Plaintiff addressed this instance in a motion for sanctions he filed with the Court yesterday [Doc. 80, p. 26-30].

5. <u>Counsel Falsely Suggest Plaintiff Misunderstands the Law and Should Not Be Permitted to Have His Case "Decided on The Merits"</u>

Counsel asserts plaintiff misunderstands and misuses the law. Specifically, counsel points to plaintiff's subpoena that he informally objected to. (Plaintiff did not proceed with that subpoena.)

> This scheduling of a non-party deposition for April 17
> suggests a significant misinterpretation of this Court's order, which
> clearly contemplated that no witness would be questioned until after
> the Governor's emergency order had been rescinded.

A true copy of subpoena counsel refers to is attached. What counsel refers to as "a non-party deposition" is, in fact, a subpoena for production. Defense counsel is an experienced litigator and he clearly distinguishes different types of subpoenas. So does this plaintiff, no matter his *pro se* status, because he could find no other way to defend his rights but to appear in this very Court, and continually learn its rules.

Counsel maintains that, by order of the Court, no witness would be questioned until the Governor's order has been rescinded. But the Court order stated that in-person depositions would be scheduled after the order has been lifted, not that no witness could in any way be questioned [Doc. 72]. The Court's rationale was not to halt discovery but to protect the individuals involved in depositions from coronavirus, an obvious concern with which this plaintiff is sympathetic. To that end, plaintiff suggests a discovery schedule that minimizes in-person exposure while permits discovery to proceed. As parties have not met or conferred, plaintiff will make this specific request at a case management conference between the parties.

Counsel maintains that no witness would be questioned until the Governor's order has been rescinded. But *Fed. R. Civ. P. 45(c)(2)* enables parties to agree to produce items electronically. "Under the current rule, parties often agree that production, particularly of electronically stored information, be transmitted be electronic means. Such arrangements facilitate discovery, and nothing in these amendments limits the ability of parties to make such arrangements." *Fed. R. Civ. P. 45 Advisory Committee's Note to 2013 Amendment*. Plaintiff even preferred electronic production, as it helps to save resources to *all* parties. Hence the "REMOTELY OR VIRTUALLY" note on the subpoena form.

Counsel refers to no more than 15 emails in one particular student's inbox, which plaintiff sought through subpoena, as "a very broad collection of documents". Counsel has, most likely, never inspected these emails; plaintiff is skeptical whether they exist at all. Counsel might oppose a discovery request to produce such emails, if submitted as such, because it is "unduly burdensome" and that such documents "cannot be produced in the time provided". Such general objections have *no* place in civil discovery     a general indication plaintiff outlined yesterday

because they violate the letter and spirit of the Federal Rules of Civil Procedure. This approach is best expressed in Judge Mark Bennett's scathing critique of boilerplate in litigation. *Liguria Foods, Inc. v. Griffith Laboratories, Inc.*, 2017 WL 976626 (N.D. Iowa Mar. 13, 2017).

Yet still, counsel maintains plaintiff's subpoena is "a significant misinterpretation of this Court's order". Plaintiff would prefer to engage in cooperative discovery; however, in light of plaintiff's motion filed yesterday [Doc. 80] and counsel's discovery track record, plaintiff believes such cooperation is *not* possible.

## FINAL STATEMENT

Counsel provides these *exclusively* written statements, and many more that plaintiff will not address unless asked by the Court because they are so plainly incorrect, and concludes his request to *continue* communicating with plaintiff via email.

"There can be no doubt that misinterpretations arise more readily from oral communications than from written ones," counsel authoritatively declares. Simply put, defense counsel fails to take this plaintiff seriously.

On the other hand, Yale University taught plaintiff how important effective communication is. The idea that two parties with interests so opposing could possibly resolve a dispute by email was never discussed as inconceivable. In other words, the idea that parties could, let alone should, be compelled to communicate solely via email is a "product of delusion or fantasy". The relief Defendants seek is implausible on its face, and must be denied. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

Defendants' frivolous motion is intended solely to thwart discovery after counsel realized that plaintiff may be, at least in part, correct about his claims. Defendants provide implausible and speculative arguments to support their request; they claim that "plaintiff is prone to making inaccurate and contradictory statements on a repeated basis," or that "there can be no doubt that misinterpretations arise more readily from oral communications than from written ones". Plaintiff is genuinely impressed with defense counsel's ability to generate such statements. Nonetheless, Defendants must not file similar motions again. Yale Law School is the best law school in the country; plaintiff expects Yale University lawyers to do better. Plaintiff is committed to the same standards of litigation.

**CONCLUSION**

For the reasons stated above, Defendants' motion for protective order is baseless and must be denied. Defendants should not be permitted to offer further frivolous motions to this Court. Plaintiff respectfully requests that this Court considers Defendants' motion when it decides on plaintiff's motion for sanctions [Doc. 80].

Respectfully submitted,
/s/ Jakub Madej

Jakub Madej
The Plaintiff

65 Dwight St
New Haven, CT 06511
j.madej@lawsheet.com
Telephone: (203) 928-8486
Facsimile: (646) 776-0066
Fax: (203) 902-0070