## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

JAKUB MADEJ,
                Plaintiff,

   vs.

YALE UNIVERSITY *et al.*,
                Defendants.

CASE NO. 3:20-cv-00133-JCH

JURY TRIAL DEMANDED

AUGUST 23, 2020

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S
MOTION TO STRIKE IMPERTINENT MATTER FROM DEFENDANT YALE
UNIVERSITY'S OBJECTION (ECF #134) AND FOR ORDER TO SHOW CAUSE
UNDER FRCP 11(c)(3)**

Jakub J. Madej
LAWSHEET
415 Boston Post Rd Ste 3-1102
Milford, CT 06460
T: (203) 928-8486
F: (203) 902-0070
E: j.madej@lawsheet.com

*Counsel for Plaintiff*

# TABLE OF CONTENTS

I.   Preliminary Statement ............................................................................................. 3

II.  Legal Standard ...................................................................................................... 4

    A.   Motion to Strike ............................................................................................. 4

    B.   Sanctions in General ...................................................................................... 7

    C.   Sanctions Under Rule 11 ................................................................................ 8

    D.   28 U.S.C. § 1927 ......................................................................................... 10

III. Argument ............................................................................................................. 11

    A.   The Court Should Strike Scandalous Allegations Under Rule 12(f) .................... 11

    B.   Yale's Allegations Raise to The Sanctionable Level ......................................... 14

        a.   Counsel's Statements Are Objectively Unreasonable ............................. 16

        b.   Counsel's Statements Could Have Only Been Made in Bad Faith. ........... 18

        c.   Counsel Presented Inflammatory Allegations for an Improper Purpose ..... 18

    C.   Sanctions are Appropriate Under Rule 11 and 28 U.S.C. § 1927 to Deter Future Abusive

    Allegations ......................................................................................................... 20

IV.  Conclusion ........................................................................................................... 21

Plaintiff Jakub Madej ("Jakub", "Mr. Madej") submits this memorandum of law in support of his *Motion to Strike Impertinent Matter*, pursuant to Rules 11 and 12(f) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1927. Plaintiff asks to sanction Defendant Yale University ("Yale") and Yale's counsel, Patrick M. Noonan, for their wasteful, abusive filings that assert unverified, impertinent allegations of no relevance to this case but which unduly prejudice Mr. Madej, and urges the Court to issue an Order to Show Cause, pursuant to Fed. R. Civ. P. 11(c)(3). As demonstrated below, Defendants' conduct has been willful, intended to injure, and continues to waste judicial resources and Jakub's resources with its frivolous papers.

## I.   PRELIMINARY STATEMENT

Yale, desperate to stifle genuine-fact finding through regular discovery, chose to advance misrepresentations to create a false appearance that Jakub holds in contempt the laws of the United States – the same laws he brought him to this Court. Counsel writes that "plaintiff has made it clear that the *object of his anger* is [Defendant Mark] Schenker" (emphasis added), and claims that "plaintiff … attempted to purchase firearms at one retail establishment", then "went to a different gun retailer and attempted to purchase firearms", that previously Yale Police "had to physically escort him off [Yale's] premises", and conclude that Jakub's "actions present a security threat". Any inferences drawn from these characterizations can only be criminal in nature. Ironically, Yale does not seek any relief against these nefarious actions – but asks that it not be compelled to respond to *one request for admission* visually identifying the defendant. (In a gesture of goodwill, Jakub has withdrawn this request. The Court need not decide whether Yale's response to request # 19 was sufficient.). Mr. Madej will vigorously protect the integrity of these proceedings, and seeks to remedy any harm to his reputation that results from Yale's false allegations.

3

The University's *ad hominem* attacks are irrelevant to these proceedings, cannot have any possible bearing on the subject matter of the case, do not relate to any party's claim or defense, nor do they serve a legitimate litigation-related purpose. Or even a legitimate purpose. Not surprisingly, defendants offer no argument why they might. To the contrary, they are intended to cast a derogatory light on twenty-four-year old student who has done his best to navigate the deep and murky waters of this case. Allowing Yale to include these allegations in its paper, and to make further unfounded scandalous statements scattered around responses, replies, and motions, counters all fundamental principles of litigation. Even more worryingly, these harassing and unprofessional allegations come from a sophisticated counsel representing an illustrious institution of higher education. The Court should intervene with full force and ensure the University not advances irrelevant, criminal, and slanderous accusations against the unrelenting plaintiff.

## II.   LEGAL STANDARD

### A.   Motion to Strike

The court can strike a matter it finds redundant, immaterial, impertinent, or scandalous from "a pleading" on a motion or *sua sponte*. Fed. R. Civ. P. 12(f). "[A] court has "liberal discretion" to strike such filings as it deems appropriate under Rule 12(f)." Pigford v. Veneman, 225 F.R.D. 54, 58 (D.D.C. 2005) (striking scandalous notices that "serve[d] no legitimate litigation-related purpose"). Courts in this Circuit have stricken allegations that had no relevance to the case at bar but were prejudicial to the moving party. See Oram v. SoulCycle LLC, 979 F. Supp. 2d 498, 511 (S.D.N.Y. 2013) ("[A]llegations may be stricken if they have no real bearing on the case [and] will likely prejudice the movant[.]") (citing G-I Holdings, Inc. v. Baron Budd,

238 F. Supp. 2d 521 (S.D.N.Y. 2002)). "[M]otions to strike … may be granted where the allegations challenged have no real bearing on the subject matter or are likely to prejudice the movant." Impulsive Music v. Pomodoro Grill, Inc., 08-CV-6293, at *5-6 (W.D.N.Y. Nov. 19, 2008). "[A] court may strike matter from a complaint where its material is prejudicial." Id. Frequently courts will strike references that have "criminal overtones." Id., see Toto v. McMahan, Brafman, Morgan & Co., No. 93 CIV. 5894 (JFK), 1995 WL 46691, at *16 (S.D.N.Y. Feb. 7, 1995).

The movant must show that (1) the matter is unrelated to plaintiff's claims "as to be unworthy of any consideration"; and that (2) permitting the allegations to stand would result in prejudice to the movant. DDR Construction Services, Inc. v. Siemens Industry, Inc., 770 F. Supp. 2d 627, 664 (S.D.N.Y. 2011). Some courts require an additional showing that no evidence in support of the allegations would be admissible. Roe v. City of New York, 151 F. Supp. 2d 495, 510 (S.D.N.Y. 2001); Lipsky v. Commonwealth United Corp., 551 F.2d 887, 893 (2d Cir. 1976).

"[A] court should strike the disputed matter if it is "irrelevant 'under any state of facts which could be proved in support' of the claims being advanced.'" Etienne v. Wal-Mart Stores, Inc., 197 F.R.D. 217, 219 (D. Conn. 2000) (collecting cases). "[W]here the materiality of the alleged matter is highly unlikely or where its effect would be prejudicial, the Court may order it stricken." Velez v. Lisi, 164 F.R.D. 165, 166 (S.D.N.Y. 1995) (citing Lipsky v. Commonwealth United Corp., 551 F.2d 887, 893 (2d Cir. 1976)). Matter is immaterial if it has no essential or important relationship to the claim for relief, and consists of statements that do not pertain to, and are not necessary to resolve, the disputed issues. Lynch v. Southampton Animal Shelter Foundation Inc., 278 F.R.D. 55, 63 (E.D.N.Y. 2011).

Motions to strike are "a drastic remedy" but their disfavored character is relaxed in the context of scandalous allegations, i.e. those that "improperly cast a derogatory light on someone". 5C Wright & Miller, Fed. Prac. Proc. Civ. § 1382 (3d ed.) ("[S]candalous allegations . . . will often be stricken from the pleadings to purge the court's files and protect the subject of the allegations."). Material is "scandalous" under Rule 12(f) if it "reflects unnecessarily on [party's] moral character", "uses repulsive language that detracts from the dignity of the court", or "cast[s] a cruelly derogatory light on a party or other person." Tucker v. Am. Int'l Grp., Inc., 936 F. Supp. 2d 1, 16 (D. Conn. 2013). "Even where matter in a pleading is relevant to the controversy, it nonetheless may be stricken if it is scandalous or set out in 'needless detail'.". Cabble v. Rollieson, 2006 WL 464078, at *11 (S.D.N.Y. Feb. 27, 2006).

Courts in this Circuit have granted motions to strike when "the matter asserted clearly has no bearing on the issue in dispute" and were interposed for a plainly improper purpose. See, e.g., Correction Officers Benevolent Ass'n of Rockland County v. Kralik, 226 F.R.D. 175, 177 (S.D.N.Y. 2005) (striking allegations "clearly irrelevant to the case at hand"); Morse v. Weingarten, 777 F. Supp. 312, 319 (S.D.N.Y. 1991) (striking references that were "immaterial and impertinent to the case" because they served "no purpose except to inflame the reader"); Kent v. AVCO Corp., 815 F.Supp. 67, 71 (D. Conn. 1992) (striking immaterial allegations where the value of allowing the allegations "is outweighed by the prejudicial effect they would have").

Courts may invoke Rule 12(f) to strike the matter from papers other than the six pleadings enumerate in Rule 7(a). See, e.g., McCorstin v. U.S. Dep't of Labor, 630 F.2d 242, 243-44 (5th Cir. 1980) (finding no abuse of discretion in district court's striking of several non-pleading documents); Pigford v. Veneman, 215 F.R.D. 2, 4, n.1 (D.D.C. 2003) ("Although Rule 12(f) applies by its terms only to 'pleadings,' courts occasionally have applied the Rule to filings

other than those enumerated in Rule 7(a) of the Federal Rules of Civil Procedure."); <u>Judicial Watch, Inc. v. U.S. Dept. of Commerce</u>, 224 F.R.D. 261, 263 (D.D.C. 2004) (striking portions of affidavits and declarations); <u>Gauthier v. United States</u>, No. CIV.A. 4:10-40116, 2011 WL 3902770, at *11 (D. Mass. Sept. 2, 2011) (striking an affidavit based on hearsay that listed the names of 24 defendant's employees in Canada, when the underlying allegation of rape took place in the Bahamas); <u>North American Specialty Ins. Co. v. National Fire & Marine Ins. Co.</u>, 2013 WL 1332205, *5 (D. Nev. 2013) ("[A] district court has the inherent power to strike a party's submissions other than pleadings.") (referencing <u>Chambers v. NASCO, Inc.</u>, 501 U.S. 32, 43 (1991)).

### B.  <u>Sanctions in General</u>

"[A] court should discipline those who harass their opponents and waste judicial resources by abusing the legal process." <u>Schlaifer Nance & Co., Inc. v. Estate of Warhol</u>, 194 F.3d 323, 341 (2d Cir.1999). "[D]istrict courts generally have wide discretion in deciding when sanctions are appropriate." <u>Morley v. Ciba-Geigy Corp.</u>, 66 F.3d 21, 24 (2d Cir. 1995) (affirming Rule 11 sanctions when the complaint "clearly attempted" to intimidate the defendant into a large settlement). A district court's decision imposing sanctions will be upheld absent an abuse of discretion. <u>Storey v. Cello Holdings, L.L.C.</u>, 347 F.3d 370, 387 (2d Cir. 2003). This deferential standard is applicable because, "as in many other contexts, the district court is familiar with the issues and litigants' and is thus 'better situated than the court of appeals to marshal the pertinent facts and apply [a] fact-dependent legal standard.'" <u>Id.</u> (quoting <u>Cooter & Gill v. Hartmarx Corp.</u>, 496 U.S. 384, 402 (1990)).

Courts often may impose sanctions under more than one source of authority. <u>See, e.g.</u>, <u>Huebner v. Midland Credit Mgmt., Inc.</u>, 897 F.3d 42, 49 (2d Cir. 2018) (affirming sanctions

under § 1927 and the court's inherent authority for "fil[ing] several frivolous motions in bad faith" and misrepresenting evidence to the court). The Supreme Court made clear that the existence of a sanctioning scheme in statutes and rules does not displace the court's inherent power to impose sanctions for bad faith conduct. Chambers v. NASCO, Inc., 501 U.S. 32 (1991). Before the court imposes any sanctions under its inherent powers, counsel should receive notice describing the sanctionable conduct, as well as an opportunity to be heard. Ted Lapidus, S.A. v. Vann, 112 F.3d 91, 97 (2d Cir. 1997).

C. Sanctions Under Rule 11

Federal Rule of Civil Procedure 11(b) prohibits an attorney from presenting to the court "a pleading, written motion, or other paper" (1) "for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation"; (2) if the asserted claims, defenses, and other legal contentions are not "warranted by existing law"; or (3) if the factual contentions made do not "have evidentiary support". Fed. R. Civ. P. 11(b). See Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd., 682 F.3d 170, 177 (2d Cir. 2012) ("An attorney may be subject to sanctions under Rule 11 for presenting frivolous claims in a pleading."). To avoid the risk of sanctions under Rule 11, counsel is charged with an affirmative duty to "undertake a reasonable inquiry to ensure that papers filed are well grounded in fact, legally tenable, and not interposed for any improper purpose." Mahoney v. Yamaha Motor Corp. U.S.A., 290 F.R.D 363, 368 (E.D.N.Y 2013). Counsel's duty of investigation is personal and nondelegable. Bus. Guides, Inc. v. Chromatic Commc'ns Enterprises, Inc., 498 U.S. 533, 547 (1991). Rule 11 sanctions are appropriate "where the attorney has negligently or recklessly failed to perform his responsibilities as an officer of the court." Wilder v. GL Bus

8

Lines, 258 F.3d 126, 130 (2d Cir. 2001). With regard to factual contentions, sanctions may be imposed where "a particular allegation is utterly lacking in support." O'Brien v. Alexander, 101 F.3d 1479, 1489 (2d Cir. 1996).

The Second Circuit adopted a standard of "objective unreasonableness". Margo v. Weiss, 213 F.3d 55, 65 (2d Cir.2000); see Sussman v. Bank of Israel, 56 F.3d 450, 458 (2d Cir. 1995) (enumerating objective factors). The analysis is whether "a competent attorney could not form a reasonable belief that the signed paper was well grounded in fact". Healey v. Chelsea Res., Ltd., 947 F.2d 611, 622 (2d Cir. 1991). See U.S. v. International Broth. of Teamsters, 948 F.2d 1338, 1344 (2d Cir. 1991) ("In deciding whether the signer of a pleading, motion, or other paper has crossed the line between zealous advocacy and plain pettifoggery, the court applies an objective standard of reasonableness."). An attorney need not act in bad faith to be sanctioned under Rule 11. Id. See also Star Mark Mgmt., Inc., 682 F.3d at 178. ("[T]he standard … is not based on the subjective beliefs of the person making the statement."). An attorney's subjective good faith belief in the merits of the claim is not a defense to a Rule 11 motion if the claim is otherwise objectively unreasonable. See, e.g., Valenti v. SleepMed, Inc., No. 15-CV-1281, 2017 WL 2945721 at *13 (D. Conn. July 10, 2017). "[I]n imposing Rule 11 sanctions, this Circuit looks only to the attorney's representations when the initial paperwork was signed[.]" Mahoney, 290 F.R.D. at 368. Counsel's future actions with regards to the initial claim are irrelevant. Id.

If an attorney or party violates his duty under Rule 11, the court has the discretion to impose appropriate sanctions on its own initiative upon an order to show cause directed to the offending attorney, or on a party's motion filed 21 days after service on the offending counsel. Hadges v. Yonkers Racing Corp., 48 F.3d 1320, 1328 (2d Cir. 1995) (describing the procedure for *sua sponte* imposition of sanctions) (citing Fed. R. Civ. P. 11(c)(1)(B)). To impose Rule 11

sanctions *sua sponte*, some courts in the Second Circuit require an additional finding of "subjective bad faith", which has been described as "deliberate dishonesty" or a "willful intent to deceive". Centauri Shipping Ltd. v. Western Bulk Carriers KS, 528 F. Supp. 2d 197, 201 (S.D.N.Y. 2007). Subjective bad faith was found in a variety of cases, "ranging from those involving overtly dishonest or contemptuous behavior, down to those where the court simply regarded an argument as frivolous." In re Gushlak, No. 11-MC-218 (NGG), 2012 WL 2564523, at *2 (E.D.N.Y. July 2, 2012) (internal citations omitted) (collecting cases).

Violations of Rule 11 are punishable by monetary and non-monetary sanctions against both the lawyer filing the paper and the lawyer's client. Fed. R. Civ. P. 11(c). The court has available a variety of possible sanctions to impose for violations, including striking the offensive material. See Notes of Advisory Committee on Rules—1993 Amendment (listing examples). Courts consider whether the improper conduct was willful; whether it was part of a pattern of activity, or an isolated event; whether the lawyer has engaged in similar conduct in other litigation; and whether it was intended to injure. Id. Sanctions under Rule 11 should "deter repetition of the conduct or comparable conduct by others similarly situated". Fed. R. Civ. P. 11(c)(4).

D.  28 U.S.C. § 1927

Section 1927 imposes an obligation on attorneys throughout the entire litigation to avoid dilatory tactics. To that end, a federal court may sanction an attorney who "so multiplies the proceedings in any case unreasonably and vexatiously". 28 U.S.C. § 1927. Conduct is vexatious when it lacks "reasonable or probable cause or excuse", or is "harassing". Black's Law Dictionary (11th ed. 2019).

To impose sanctions under § 1927, the Court must find "conduct constituting or akin to bad faith." In re 60 E. 80th St. Equities, Inc., 218 F.3d 109, 115 (2d Cir. 2000). Bad faith may be inferred where counsel's actions are "completely without merit." Int'l Bhd. of Teamsters, 948 F.2d at 1345. An award under § 1927 is proper when the attorney's actions are so meritless that they must have been undertaken for some improper purpose such as delay. Id. When determining whether to issue sanctions under Section 1927, the court considers attorney's "course of conduct". Id., at 1346 ("§ 1927 invites attention to a course of conduct."); Mahoney, 290 F.R.D. at 367.

This district has imposed discipline under Section 1927 for "persistent personal attacks". Hewett v. Triple Point Tech., No. 3:13-cv-1382 (SRU), at *14 (D. Conn. Oct. 30, 2015) (Underhill S.). (imposing sanctions on a *pro se* plaintiff who filed "at least 55 documents" that included personal attacks on opposing counsel). A breach of professional ethics is sufficient to state a § 1927 violation. See, e.g., Six v. Generations Fed. Credit Union, 891 F.3d 508 (4th Cir. 2018) (affirming compensatory sanctions totaling $150,000 for violation of N.C. R. Prof'l Conduct 3.3).

## III.   ARGUMENT

### A.   The Court Should Strike Scandalous Allegations Under Rule 12(f)

There is absolutely no legitimate basis for the scandalous, impertinent, and libelous statements made by Yale and its counsel against Mr. Madej. Allegations on Pages 2 and 3 of Yale's objection are, on their face, immaterial to any claim alleged in the complaint. Yale made these statements in a reply brief that concerned the sufficiency of its requests for admission, where any considerations of plaintiff's private life are obviously irrelevant. As counsel for Yale knows, a brief is a vehicle for a party to make legal arguments to supports its position, not to characterize his opponent's moral character, comment on his private life, or review his personal

characteristics. Loose references to events outside this litigation or plaintiff's private life – whether true or not – are improper. Here, their only intended effect was to injure Mr. Madej, and force him to abandon this litigation altogether. These statements would be bad enough if made by an untrained and uneducated person "off the street". But Mr. Noonan is a well-educated and remarkably experienced trial attorney, admitted to the bar in 1977.

Defendant unjustly, recklessly and inappropriately impugns plaintiff's character by alleging he engaged in unlawful and demeaning activities (willfully violating immigration laws, misleading government officials, unlawfully entering the United States). But the University has yet to present a scintilla of evidence that any of its statements are true. Yale presents no information, place, location, or source as to how, when, or where it supposed learned these revelations. Yale does not cite the record, attach an affidavit, or present any evidence. Nor could it. Assuming *arguendo* that Yale could introduce such evidence, it would not be admissible on the ground of relevance – because this case is about Yale's tortious actions in its relations with plaintiff, not about plaintiff's private life.

Defendant's allegations easily satisfy the Toto "criminal overtone" standard in that they accuse plaintiff of engaging in criminal activity that has no possible relevance to this case. The Toto court struck allegations of criminal tax fraud from a civil RICO complaint as "immaterial, impertinent and scandalous" because they were not a racketeering activity supportive of a RICO claim. Here, *defendants allege* criminal activity against the opposing party where no claim or defense asserted in the case-in-chief is even remotely related to criminal conduct. Toto v. McMahan, Brafman, Morgan & Co., No. 93 CIV. 5894 (JFK), 1995 WL 46691, at *16 (S.D.N.Y. Feb. 7, 1995).

In Gauthier, a woman vacationing in the Bahamas alleged that construction workers staffed in her hotel sexually assaulted her. Naming the construction contractor company as the defendant, she listed the names of its 24 employees working a construction job in Ontario, Canada, and asserted in a sworn affidavit based on hearsay that one of these workers was involved in the assault that gave rise to her suit. The court struck that affidavit under Rule 12(f), finding the association of 24 employees in Canada with the alleged incident in the Bahamas unsupported, and the affidavit irrelevant to the then-stage of the proceedings, i.e. motion to dismiss, where the issues at dispute included only the statute of limitations and jurisdictional questions. The court noted that unsupported and irrelevant allegations of rape unduly impugned an individual's character, and did not hesitate to invoke Rule 12(f) to strike an affidavit out of a concern for "the privacy interests of those individuals named in the affidavit". Gauthier v. United States et al., 2011 WL 3902770, at *12 (D. Mass. Sept. 2, 2011). Here, Yale's allegations are also based – at best – on hearsay; they rise to the level of "unduly impugning" plaintiff's character; are irrelevant to this case at large, and to the current stage of the proceedings in general (motion to determine sufficiency of responses provided under Rule 36). Accordingly, the Court should order them stricken.

Even though defendants stylized their paper as an "objection", they should not escape scrutiny because Rule 12(f) explicitly refers only to six specifically named pleadings. First, as outlined above, courts frequently strike other papers upon an appropriate showing of cause. Second, the University's paper is a pleading in the ordinary legal sense of this word in that it is "[a] formal document in which a party to a legal proceeding … sets forth … allegations, claims[.]" Black's Law Dictionary (11th ed. 2019). Yale offers no legitimate argument related to the dispute at bar; instead, it only lays out allegations against Mr. Madej. Third, the court has an

inherent power to strike paper like Yale's; that is, papers that a party at litigation presents in bad faith for a plainly improper purpose but which escape other statutory provisions. Fourth, the court may also strike an offending paper under Rule 11. Notes of Advisory Committee on Rules—1993 Amendment ("[t]he court has available a variety of possible sanctions to impose for violations, such as striking the offending paper[.]").

Because Yale's allegations are irrelevant to this case, scandalous in that they offend plaintiff's moral character, and lack any factual basis, this Court should strike them from the record.

B.  Yale's Allegations Raise to The Sanctionable Level

Rule 11(b)(3) mandates that the factual contentions have evidentiary support. O'Brien v. Alexander, 101 F.3d 1479, 1490 (2d Cir. 1996). Here, Yale made at least nine allegations that are utterly lacking in support, injure the plaintiff, and divert the Court's attention from the genuine disputes. These statements include undue characterizations of plaintiff's character, stylized as objective facts:

(1)  "plaintiff has [] acted in an erratic fashion";

(2)  "plaintiff has made it clear that *the object of his anger* is Dean Schenker" (emphasis added);

(3)  "plaintiff … attempted to purchase firearms at one retail establishment" and "was denied because his immigration status does not permit such purchases";

(4)  "the plaintiff went to a different gun retailer and attempted to purchase firearms. He was again rejected because of his visa status"

(5)    "plaintiff … was apprehended by Border Patrol agents when he attempted to illegally walk across the border";

(6)    "he was asked by the building superintendent to vacate the premises" but "he refused";

(7)    "he resisted [Yale Police Department's] direction that he leave";

(8)    "he refused to vacate the premises claiming that a professor in The Yale School of Management had authorized him to remain in the space reserved for the student organization";

(9)    "[u]nder the foregoing circumstances … Yale University should not be compelled to provide a response to Request for Admission #19".

First, there is absolutely no legitimate basis for the scandalous, impertinent, and libelous statements made by Yale against Jakub. First, Yale's statements are completely irrelevant to events alleged in plaintiff's complaint, which gave rise to this action. Temporarily, plaintiff's complaint cuts the story in February 2020, and later events are immaterial at this stage. The University's characterization of Jakub's action "within the last 60 days" is *not* the issue before this Court. It is difficult to imagine what legitimate litigation purpose Yale's allegations might have served, given that none has even a remote connection to this case.

Second, Yale's allegations are outrageously false. Yale does not cite any evidence for its highly specific and seemingly powerful statements: no affidavit, no declaration, no nothing, not even a clear source. The University offered no "evidentiary support" at all to in favor of these "facts". In fact, none of them are true. Yale did not explain what inquiry it made before filing, as it must under Rule 11. Had Yale made such an inquiry, it would have learned that its statements are false. See Declaration.

Third, Yale's comments needlessly and misleadingly characterize plaintiff's moral character and disposition to inflame the reader, the plaintiff, and the court. We need not look far for concrete examples. Counsel subtly indicates that defendant Schenker is the "object" of plaintiff's "anger". The word "anger" implies an intense feeling of hostility and antagonism towards someone, often indicating a desire or intent to punish or to get revenge. Yale further capitalizes on this emotion, and alleges that Mr. Madej attempted to purchase firearms in contravention of the law. If that was not enough, plaintiff "attempted to illegally walk across the border", "was sent back to Mexico", but "has since re-entered the United States". (As explained above – and as the Court is well-aware – illegal entry is a serious crime, and a second illegal entry is an even more serious crime.) "It is unknown how the plaintiff returned to the United States", but he "return[ed] to New Haven". "His actions present a security threat[.]". To describe Yale's story as having "criminal overtones" is to say nothing; Mr. Noonan alleges specific unlawful acts, and attaches a warning: "he return[ed]". And all to persuade this Court that "Yale University should not be compelled to provide a response to Request for Admission #19"? Yale's comments have a prejudicial effect of sabotaging plaintiff's private life, his ability to earn a living, and impose a sense of danger. As demonstrated below, they are objectively unreasonable, and made in bad faith.

### a. Counsel's Statements Are Objectively Unreasonable

An attorney violates Rule 11 when he signs a pleading that contains a claim that is objectively unreasonable, even when the attorney does not act in bad faith. MacDraw Inc. v. Cit Group Equipment Financing, 73 F.3d 1253, 1257-58 (2d Cir. 1996). If no competent attorney could form a reasonable belief that the claim was well grounded in fact, the claim is not objectively reasonable. Healey v. Chelsea Res., Ltd., 947 F.2d at 622.

First, it is objectively unreasonable for an attorney to accuse the opposing counsel, or the opposing party, of criminal conduct that has no relevance, and cannot have any relevance to the case where these allegations are being presented. The University tried nothing at all to convince the court how its litany of allegations justifies Yale's request: that it not be compelled to admit one request under Rule 36.

Second, it is objectively unreasonable for an attorney to accuse the opposing counsel or the opposing party of criminal conduct, where such allegations are false, and the accusing party knows of their falsity. Here, Yale presented no evidence, and demonstrated no good cause for putting its words on paper. The only evidence before the Court is plaintiff's affidavit, which refutes Yale's assertions. The University should be ordered to reveal what investigation it made into these specious claims, and what evidentiary support exists for them.

Third, it is objectively unreasonable for an attorney to argue that a boilerplate objection claiming irrelevance to one request for admission should be sustained *because* the party propounding the request has, as the attorney alleges, "traveled to Mexico", "went to a different gun retailer and attempted to purchase firearms", "was apprehended by Border Patrol agents when he attempted to illegally walk across the border", or engaged in any other activity defendants cite – no matter whether these allegations are true or not. One has nothing to do with the other. No competent attorney could find a logical connection between this line of argument, and its purported conclusion.

Fourth, it is objectively unreasonable for an attorney to accuse the opposing counsel or the opposing party of criminal conduct that is not, and cannot be related to the present litigation – in a reply brief that concerned Rule 36 requests and whether defendant's responses were sufficient – no matter whether these allegations are true or not. A paper filed with the court that,

by its position, concerns a discovery dispute is *not* a vehicle for a smear campaign against the opposing party.

### b.   Counsel's Statements Could Have Only Been Made in Bad Faith.

The University's statements, and the argument they purport to make, are not colorable because they are utterly devoid of a legal or factual basis, as demonstrated above. Because they could never be successful, they could only be made in bad faith.

Parties' motivations in this case further elucidate the incentives for defendants' bad faith conduct. Plaintiff is a nearly-bankrupt twenty-four-year-old foreign student. Defendant is the wealthiest university in the world, with $30.2 billion in assets on its books, and an annual budget of $3.8 billion. Mr. Madej turned to this Court to seek redress, a resolution on the merits, and undertook to learn its rules and law to prove what he knows to be true. The University then accuses him, in open court, of violating that very law in material ways, for no reason, without proffering any evidence. Why would any party interested in a resolution on the merits act in this illogical and villainous fashion? Yale has no incentive to conduct any fact-finding. For a big business that Yale is, litigation is a financial and reputational liability: no matter the facts, the University can only lose. For that "sound" business motivation, Yale engages in the present smear campaign to, as it mistakenly believes, force Mr. Madej to abandon this litigation, and release his claims forever. Because these incentives are foreign to our system of civil litigation, and cannot have any good faith purpose, they were motivated by bad faith.

### c.   Counsel Presented Inflammatory Allegations for an Improper Purpose

No pleading, written motion or other paper may be interposed for an improper purpose, such as to harass or to cause unnecessary delay or a needless increase in the cost of litigation.

Fed. R. Civ. P. 11(b)(1). Factual contentions are not to be presented for any improper purpose, such as to harass. Id. Whether a presenter acts with an improper purpose is judged under an objective standard. Oliveri v. Thompson, 803 F.2d 1265, 1275 (2d Cir. 1986). Here, Mr. Noonan has run afoul of that standard.

Courts found sanctionable behavior when a party filed papers containing "scandalous, libelous, and impertinent matters" for the purpose of harassing a party or counsel. Katz v. Looney, 733 F. Supp. 1284, 1287–1288 (W.D. Ark. 1990) (law student's pro se complaint against law school dean and others alleging, inter alia, that the dean "is totally inept, totally incompetent, and is not even familiar with the Federal Rules of Civil Procedure even though he is supposedly licensed to practice law … and is supposedly the Dean of the law school").

Courts have inferred improper purpose where "multiplicative filings" were coupled with "objectively unreasonable statements." Storey, 347 F.3d at 393; On Time Aviation, Inc. v. Bombardier Capital Inc., 570 F. Supp. 2d 328, 332 (D. Conn. 2008), aff'd, 354 F. App'x 448 (2d Cir. 2009).

There is absolutely no legitimate basis for the scandalous, impertinent and libelous statements made by defendants' counsel against Jakub. They are not a product of "the creativity that is the very lifeblood of the law"; the University does not cite any authority for its proposition at all. Eastway Construction Corp. v. City of New York, 762 F.2d 243, 254 (2d Cir. 1985) (noting that Rule 11 sanctions are not meant to "stifle the enthusiasm or chill the creativity that is the very lifeblood of the law"). Those statements are strictly personal attacks and don't even arguably address any legitimate issue before the court. Since there is no legitimate purpose for these statements, they must have been made by plaintiff in an attempt to harass, embarrass and

humiliate the persons about which they are made. There is no place for this kind of conduct in any court, and this Court should not allow it.

C. Sanctions are Appropriate Under Rule 11 and 28 U.S.C. § 1927 to Deter Future Abusive Allegations

The University's conduct to date squarely demonstrates that Yale has no intention of following the same principles that bind all other litigants. Absent an appropriate order, the University will have no incentive to abide by the fundamental rules of professional ethics, hoping its conduct remains unnoticed, or could be explained away as accidental mistakes of no significance – and thus Yale's pattern of offering misleading and false statements to the court will continue. Accordingly, the Court should impose sanctions on Yale and its counsel to deter them – and other counsel – from violating the duty of candor by making derogatory, misleading, and outright false statements of fact that solely prejudice the opponent and taint the future proceedings. The court has broad discretion to tailor an appropriate and reasonable sanctions under Rule 11, and it should exercise this discretion here.

Yale's bad faith conduct raises to the sanctionable level, and nothing but sanctions will deter the University and its counsel from respecting the fundamental rules of litigation. Fortunately, multiple sources of authority authorize the Court to impose sanctions. The Court should primarily seek to deter the abusive conduct that does not, and cannot have any legitimate litigation-related reason. Rule 11 is fully applicable here. Sanctions under 28 U.S.C. § 1927 are also justified because Yale's slanderous accusations discussed above were made in bad faith, and are part of a larger course of conduct rather than a one-time event.

## IV.   CONCLUSION

There is absolutely no legitimate basis for the scandalous, impertinent, and libelous statements made by Yale against Jakub.  The allegations on Pages 2 and 3 of the Objection are false, made in bad faith, and made without inquiry into the facts; neither are they relevant to any dispute that might arise between Jakub and the Defendants. The Objection does not even attempt to tie the allegations against Jakub to the disputed requests for admission, and any argument in this context based on Yale's allegations is doomed to be frivolous. These allegations are included gratuitously solely to harass Jakub in a forum where the accusations are not legally slanderous. This Court should strike them and issue an Order to Show Cause why sanctions under Rule 11 or 28 U.S.C. § 1927 should not be imposed. Plaintiff respectfully requests that monetary sanctions be awarded in his favor including at least reasonable costs and attorneys' fees associated with all filings necessitated by Defendants' above-described conduct. Plaintiff respectfully requests that additional sanctions under Rule 11 be imposed as the Court sees fit to deter future abusive filings.

Dated:   August 23, 2020

Respectfully submitted,

By: /s/ Jakub Madej
Jakub J. Madej
LAWSHEET
415 Boston Post Rd Ste 3-1102
Milford, CT 06460
T: (203) 928-8486
F: (203) 902-0070
E: j.madej@lawsheet.com