UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JAKUB MADEJ | : | |
| | : | CIVIL ACTION NO. |
| PLAINTIFF | : | 3:20-cv-00133-JCH |
| | : | |
| v. | : | |
| | : | |
| YALE UNIVERSITY, MARVIN CHUN, | : | |
| MARK SCHENKER, PETER SALOVEY AND | : | |
| JESSIE ROYCE HILL | : | |
| | : | |
| DEFENDANTS | : | |
| | : | NOVEMBER 23, 2020 |

## <u>MEMORANDUM OF LAW IN SUPPORT OF<br>DEFENDANTS' MOTION TO DISMISS</u>

The defendants have moved to dismiss the plaintiff's Second Amended Complaint in its entirety because it fails to state any claim upon which relief can be granted.  The plaintiff fails to state claims for fraudulent misrepresentation in Count I and fraud in Count II because he has not alleged facts sufficient to support any of the four elements of those claims.  The breach of contract claim in Count III should be dismissed because the plaintiff has failed to allege a specific contractual provision breached by the defendants.  He has also failed to allege any facts supporting the conclusory allegation that the defendants acted arbitrarily, capriciously, or in bad faith.  The negligence claim in Count IV should be dismissed because it impermissibly alleges an educational malpractice claim.  Count IV  should also be dismissed to the extent that it seeks to assert a claim for negligent infliction of emotional distress because the plaintiff has failed to allege facts to support a conclusion that the defendants' conduct created an unreasonable risk of causing the plaintiff emotional distress and that the emotional distress was severe enough that it might result in illness or bodily harm.  The plaintiff has failed to state a claim for tortious interference with

contract and business expectancies in Count V because he has not alleged facts sufficient to support a claim that the defendants engaged in improper conduct that interfered with the plaintiff's employment contract.  For these reasons, the defendants' motion to dismiss should be granted in its entirety.

I.  **Factual Background**

The plaintiff has made three admissions which dictate that this Court dismiss the action: (1) he received a grade of F in a course while he was on Academic Warning: (2) the F was appropriate because the plaintiff submitted the exam three and a half hours late, despite having been warned in advance that any student who submitted the exam late would receive a grade of F; and (3) he has no valid excuse for submitting the exam late.  Given the foregoing facts, the Yale College Programs of Study ("Programs of Study") mandated that the plaintiff be withdrawn for two semesters.  Accordingly, the plaintiff has failed to allege facts sufficient to state a claim upon relief can be granted, and his complaint must be dismissed.

The Programs of Study unambiguously provides: "A record that shows a grade of F for a student who is on Academic warning in that term will result in that student's dismissal for academic reasons."  (DX A, p. 3.)[1]  It is undisputed that the present plaintiff was on Academic Warning in the Fall, 2019 term.  Further, it is undisputed that, while on Academic Warning, he received a grade of F in the course Private Equity Investing, ECON 456.  Under the Programs of Study, a withdrawal was required, not discretionary.  Indeed, ruling on the plaintiff's motion for preliminary injunction, Judge Hall concluded: "By the terms of Yale's Course Catalogue, Madej's withdrawal from the University was mandatory."  (ECF No. 64, p. 25.)

---

[1] All defense exhibits ("DX") were submitted to the Court with the defendants' opposition to the plaintiff's motion for preliminary injunction.

The plaintiff matriculated at Yale University as an undergraduate student in the Fall term of 2016.  Beginning in the spring term of his junior year, the plaintiff has admitted that his attention to his academics significantly diminished due to his incorporation of a consulting business in February, 2019.  In order to concentrate on his business, the plaintiff decreased his course load to only two courses.  (Second Amended Compl., ¶ 21.)  The Programs of Study provides:

> Academic Warning is an indication that a student's scholastic record is unsatisfactory.  Students on Academic Warning who do not pass all of their courses in the term in which they are on Academic Warning will be dismissed for academic reasons.  No matter how many course credits a student has earned, <u>Academic Warning is automatic in the following cases</u>: (a) <u>failure in one term to earn more than two course credits</u>; (b) a record that shows two grades of F in one term; (c) in two successive terms, a record that shows a grade of F for any course.  The college deans attempt to give written notification of Academic Warning to students whose records show these deficiencies, but <u>such students should regard themselves as being on warning even in the absence of written notification.</u>

(Emphasis added.)  (DX A, p. 2.)  Since the plaintiff had only earned one course credit in the Spring, 2019 term, he was automatically on Academic Warning for the Fall, 2019 term.  (DX C, p. 2; DX A, p. 2; DX E.)

Prior to the beginning of the Fall, 2019 term, Benjamin Franklin College Dean Jessie Royce Hill, in an effort to assist the plaintiff in light of his being on Academic Warning, contacted the plaintiff to discuss his academic plan for that term.  (DX F.)  While the plaintiff agreed to meet with Dean Hill shortly after he arrived on campus on August 27, 2019, he chose not do so, despite Dean Hill's assistant attempting to schedule an appointment.  (DX F; PX 13, p. 2.)  On October 10, 2019, Dean Hill again contacted the plaintiff to schedule a meeting to discuss a plan for the remainder of the term.  Dean Hill explained: "As you're aware, you are on academic warning this

term so it's important to pass your classes and keep progressing."  (PX 13, p. 1.)[2]  While the plaintiff claims he was unaware that he had been placed on Academic Warning for the Fall, 2019 term, he acknowledged that it was his responsibility to be aware of that fact.  (PX 13, p. 1.)

Dean Hill had written a letter to the plaintiff dated May 31, 2019 informing him that he was on Academic Warning. Unfortunately, due to confusion between Dean Hill and her assistant as to which of them would be forwarding the letter to the plaintiff, the plaintiff did not receive that letter in May, 2019.  (DX E.)  Dean Hill provided the plaintiff a copy of the May 31, 2019 letter on October 10, 2019.  (PX 13, p. 2.)  In addition to informing the plaintiff that he had been placed on Academic Warning for the Fall, 2019 term, the letter warned: "Please note that **if you do not pass all of your courses during the Fall 2019 term, you will be withdrawn from Yale for academic reasons.**" (Emphasis in original.)  (DX E.)  The letter also referred the plaintiff to the section of the Programs of Study that discusses Academic Warning.  Id.  The plain language of the Programs of Study makes it clear that it was the plaintiff who had the duty to monitor his own academic progress; and he was therefore charged with keeping track of whether he was on Academic Warning or not.  Moreover, as of October 10, 2019, two weeks prior to midterm exams and eight weeks prior to the end of the term, the plaintiff had actual knowledge that a failing grade in any of his courses that semester would result in his involuntary withdrawal from Yale College for two semesters.

On November 22, 2019, Michael Schmertzler, the plaintiff's professor for the course Private Equity Investing, ECON 456, contacted the plaintiff to inform him that he was "at clear risk of failing this course."  (DX J, p. 1; Schmertzler Affidavit, ¶ 5-6.)  Professor Schmertzler

---

[2] All plaintiff exhibits (PX) were submitted to the Court with the plaintiff's Emergency Motion for Preliminary Injunction.

offered to help the plaintiff if he wanted help: "If I can be of help as you prepare for the final examination, which will be a take home case, please do reach out.  If you are to pass this course, you will have to write a solid final."  (DX J, p. 2; Schmertzler Affidavit, ¶ 8.)  The plaintiff never availed himself of the opportunity to get assistance from his professor.  (Schmertzler Affidavit, ¶ 8, 16.)

The plaintiff waited two weeks to respond to Professor Schmertzler's November 22, 2019 email. At that point he admitted that he had been focusing on his business instead of his coursework: "I spend 40+ hours a week managing my education consulting business, which I can't drop or deprioritize because of contracts and commitments I made to people I hire and clients that paid me (some up to $10k+).  A day has only 24 hours and I find myself unable to spend nearly as much time as I'd like to on a few things, including our seminar."  (DX J, p. 1; Schmertzler Affidavit, ¶ 9.)  The plaintiff made it clear in this email that he was well aware that if he received an F in ECON 456, he would be withdrawn from school: "Last semester, I dropped three classes (down to two courses only) to focus on the business -- but it turns out that taking only two courses in one semester puts you automatically on Academic Warning the following semester.  Read: 'If you fail (get an F) even one class, you're out.  I don't aspire to get an A or even a B, but I hope not to get an F.  So thanks for heads up about the final…'"  (DX J, p. 1; Schmertzler Affidavit, ¶ 11.)  Following this e-mail exchange, Professor Schmertzler talked to the plaintiff in person and advised him that he had a full lifetime to work, but he had only one chance to graduate from Yale. Professor Schmertzler urged the plaintiff to put aside his business and concentrate on his coursework so that he could graduate on time.  (Schmertzler Affidavit, ¶ 13.)

On December 12, the first day of the final exam period, Professor Schmertzler posted the final examination for access by the students in the class, at which time he set a very clear,

unambiguous deadline for submission of the take home final exam:

> I will accept PDFs or Word files of your assessments until 17:30 (New Haven time) on December 18, 2019. Files should be sent to me no later than 17:30 on December 18 at [e-mail address].  NO PAPERS SENT AFTER THAT TIME WILL BE ACCEPTED WITHOUT A DEAN'S WRITTEN EXCUSE.  SERIOUSLY.

(Emphasis in original.)  (Schmertzler Affidavit, ¶ 15.)  Despite having six days to prepare the final exam for submission and despite Professor Schmertzler's clear, firm deadline of December 18, 2019 at 5:30 p.m., the plaintiff did not submit his final exam until 8:55 p.m. on December 18, 2019, approximately three and a half hours late.  (DX L, p. 2; Schmertzler Affidavit, ¶ 17.)  When Professor Schmertzler asked for an explanation for the late submission, the plaintiff admitted that he had no valid excuse:

> I want to be honest:  I don't have a good excuse.  I can't motivate myself to do class-related stuff with everything I try to do in real life…. [A]fter three years at Yale I became more cynical about school – I still can't wrap my mind around that most Yale students spend days writing papers some graduate student flicks through for four minutes and writes one-sentence-long feedback.

(DX L, p. 1; Schmertzler Affidavit, ¶ 18.)   He acknowledged that Professor Schmertzler's deadlines for submitting the final examinations were "unambiguous and it was always my responsibility to meet them.  I didn't and I'm sorry."  (DX L, p. 1; Schmertzler Affidavit, ¶ 20.)

Due to his poor performance in the course prior to the final exam and his failure to submit the final exam by the clear deadline, the plaintiff received a grade of F in Professor Schmertzler's course, while on Academic Warning.  (Schmertzler Affidavit, ¶ 4, 21; DX C, p. 2.)  The Programs of Study unequivocally provide: "A record that shows a grade of F for a student who is on Academic Warning in that term will result in that student's dismissal for academic reasons."  (DX A, p. 3.)  Dean Hill informed the plaintiff of his withdrawal on January 3, 2020.  (DX M, p. 5.)  After speaking with Dean Hill, the plaintiff submitted a petition to the Committee on Honors and

Academic Standing ("CHAS") in which he sought an exception from the rules requiring withdrawal. (PX 24.) In his petition, the plaintiff admitted that he was aware of the regulations, which he admitted fully applied to him, that he knew that he would be dismissed if he did not pass ECON 456, and that he had no valid excuse for failing to submit the exam on time. Id.

CHAS met on January 13, 2020 to review the plaintiff's petition and voted to deny the petition. (PX 14, p. 1-3, 6-8.) It was noted that the plaintiff admitted in his petition that he had "made a series of easily avoidable mistakes" and that he submitted the final paper in ECON 456 several hours late, despite a clear deadline. (PX 14, p. 7.) Furthermore, under the Programs of Study, the plaintiff was to regard himself as being on Academic Warning even in the absence of written notification and that the plaintiff, by his own admission, had been aware of the Academic Warning as of early October, well before the end of the fall term. Id., p. 7-8. Under the terms of the academic withdrawal, the plaintiff is permitted to return to Yale College in the Spring, 2021 term. (PX 4, p. 2.)

## II.   <u>Legal Standard</u>

"[D]ismissal is appropriate [pursuant to Fed. R. Civ. P. 12(b)(6)] if the plaintiff can prove no set of facts that would entitle him to relief." <u>Cooper v. Parsky</u>, 140 F.3d 433, 440 (2d Cir. 1998). To avoid dismissal, "a plaintiff must do more than plead mere conclusory allegations or legal conclusions masquerading as factual conclusions. The point at which 'conclusory allegations' become valid pleadings lies where the plaintiff has asserted sufficient facts that, when construed liberally, allow the inference of a violation." (Internal quotations and citations omitted). <u>Plumey v. New York State</u>, 389 F. Supp. 2d 491, 495 (S.D.N.Y. 2005). <u>See</u> <u>also</u>, <u>Gregory v. Daley</u>, 243 F.3d 687, 692 (2d Cir. 2001). "To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that

is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), *quoting* Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A "'formulaic recitation of the elements of a cause of action will not do,'" "[n]or does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'"  Id., quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 557 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id.  "Plausibility…depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable."  L-7 Designs, Inc. v. Old Navy, LLC, 647 F.3d 419, 430 (2d Cir. 2011).  In deciding a Rule 12(b)(6) motion, courts "stop well short of saying that plaintiffs bear no burden at the pleading state;" they must allege all facts "*necessary* to a finding of liability."  (Emphasis in original.)  Amron v. Morgan Stanley Inv. Advisors, Inc., 464 F.3d 338, 343-44 (2d Cir. 2006).  In short, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has not shown "'that the pleader is entitled to relief.'"  Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009), *quoting* Fed. R. Civ. P. 8(a)(2).  See also, Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Centers Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc., 712 F.3d 705, 717-718 (2d Cir. 2013).

"[I]f extrinsic evidence is a part of the pleadings, it may be considered on a motion to dismiss.  Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint.  Therefore, the district court may consider exhibits as part of the pleadings if these documents either are (1) attached to the complaint; (2) incorporated into the complaint by reference; or (3) integral to the complaint."  (Internal quotations and citations omitted).  Adekoyu v. Herron, 2013 U.S. Dist. LEXIS 164575 (W.D.N.Y. November 19, 2013).

"In most instances where this exception is recognized, the incorporated material is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason -- usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim -- was not attached to the complaint.  The exception thus prevents plaintiffs from generating complaints invulnerable to Rule 12(b)(6) simply by clever drafting."  (Internal citations omitted.)  Global Network Communs., Inc. v. City of New York, 458 F.3d 150, 157 (2d Cir. 2006).  See also, Lynch v. City of New York, 952 F.3d 67, 79 (2d Cir. 2020) (internal quotations and citations omitted) ("It is well established that a pleading is deemed to include any written instrument that is attached to it as an exhibit, or is incorporated in it by reference.  And even if the plaintiff chooses not to attach an instrument to the complaint or [to] incorporate [it] by reference, if it is one upon which the plaintiff solely relies and which is integral to the complaint, the court may take the document into consideration in deciding the defendant's motion to dismiss.")  The present plaintiff's claims arise out of his contract with Yale University, which consists of Yale University's Programs of Study for the 2019/2020 school year.  Therefore, the Court should consider the plain language of the Programs of Study when ruling on this motion to dismiss.

III.   **Argument**

A.   **Count I Fails to State a Claim for Fraudulent Misrepresentation.**

"The essential elements of a cause of action for [fraudulent misrepresentation] are: (1) a false representation was made as a statement of fact; (2) the representation was untrue and known to be untrue by the party making it; (3) the false representation was made to induce the other party to act upon it; and (4) the other party did so act upon the false representation to his injury."  (Internal quotations omitted.)  Solano v. Calegari, 108 Conn.App. 731, 741 (2008), *cert. denied*,

289 Conn. 943 (2008).  Rule 9(b) of the Federal Rules of Civil Procedure requires a plaintiff to

"state with particularity the circumstances constituting fraud."  As to the pleading requirements

under Rule 9, the Second Circuit's test is quite clear:

> In this Circuit, therefore, a complaint based on fraudulent acts must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.  While [m]alice, intent, knowledge and other conditions of a person's mind may be alleged generally, as a safeguard to a defendant's reputation, plaintiffs must allege facts that give rise to a strong inference of fraudulent intent.  The 'strong inference of fraud' may be established by either alleging facts to show that a defendant had both the motive and opportunity to commit fraud, or facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness.

(Internal quotations and citations omitted.)  Walker v. Deutsche Bank Nat'l Trust Co., 2017 U.S.

Dist. LEXIS 43044 (D.Conn. March 24, 2017).  See also, Waite v. Schoenbach, 2010 U.S. Dist.

LEXIS 115470 *7 (S.D.N.Y. October 29, 2010) ("To withstand a motion to dismiss…a claim for

fraudulent [misrepresentation] must comply with the requirements of Rule 9(b)" and "a plaintiff

must, [among other things.] allege facts that give rise to a strong inference of fraudulent intent.").

Arista Techs., Inc. v. Arthur D. Little Enters., 125 F.Supp.2d 641, 646 (E.D.N.Y. December 28,

2000).

In support of his fraudulent misrepresentation claim, the plaintiff alleges that Dean

Schenker made the following false statements: (1) CHAS met on January 13, 2020 and voted

without dissent not to approve the plaintiff's petition;[3] (2) CHAS is made up of tenured and non-

tenured members of the Yale College Faculty, representatives of the Yale College Dean's Office,

---

[3] This statement was made in Dean Schenker's January 13, 2020 e-mail and January 15, 2020 and January 19, 2020 letters to the plaintiff.  See, PX 22; PX 23, p. 1; PX 14, p. 1.

and undergraduate students;[4] (3) each member of CHAS received before the meeting a copy of the plaintiff's petition (dated 8 January); a cover letter (8 January) from the residential college dean in the form on an e-mail; a letter from Dean Hill to Plaintiff (6 January) informing the plaintiff of his academic withdrawal; and the plaintiff's academic record;[5] and (4) the Committee members deliberated and voted on the plaintiff's petition.[6]   (Second Amended Compl., ⁋ 52-55.)   The plaintiff claims that Dean Schenker's false statements were "intended to prevent Madej from discovering that SCHENKER fraudulently acted on behalf of other individuals without their knowledge, rendering decisions of material consequences to students involved."   (Second Amended Compl., ⁋ 63.)   He further alleges that Dean Schenker reasonably expected that the plaintiff would be unable to question the veracity of his representations because the plaintiff would be legally obliged to depart the United States within two days after the statements were made. (Second Amended Compl., ⁋ 64.)   The plaintiff claims that Dean Schenker knew that his representations were false because he knew that (1) CHAS did not meet on January 13, or at any other time, with regard to the plaintiff's petition, (2) CHAS has been an alter ego of Dean Schenker since at least 2015; (3) CHAS did not have any real members, and no documents were provided to any purported "member," (4) no voting took place on the plaintiff's application and CHAS has not adopted any written policies establishing the way in its members render a final decision at any time; and (5) Dean Schenker has chaired CHAS continuously since 1998 and has been the only person acting on its behalf.   (Second Amended Compl., ⁋ 52-55, 60, 62.)   These allegations are

---

[4] This statement was made in Dean Schenker's January 15, 2020 and January 19, 2020 letters to the plaintiff.  See, PX 23, p. 2; PX 14, p. 2, 7.

[5] This statement was made in Dean Schenker's January 15, 2020 and January 19, 2020 letters to the plaintiff.  See, PX 23, p. 2; PX 14, p. 7.

[6] Dean Schenker's January 15, 2020 and January 19, 2020 letters to the plaintiff contain a description of the deliberation and vote by CHAS.  See, PX 23, p. 1-2; PX 14, p. 1-2.

patently false and entirely insufficient to support any of the elements of a fraudulent misrepresentation claim.

The plaintiff has failed to sufficiently allege the first two elements of his fraudulent misrepresentation claim because he only asserts conclusory allegations unsupported by facts. In order to demonstrate that Dean Schenker's statements about CHAS's consideration of the plaintiff's petition were false, the plaintiff claims that Dean Schenker knew that CHAS did not meet, review documents, or vote on his petition and that CHAS has been the alter ego of Dean Schenker since at least 2015. However, he has not alleged any facts supporting these allegations. In fact, the documents upon which the plaintiff relies demonstrate the inaccuracy of these allegations.[7] In his January 20, 2020 e-mail to the plaintiff, Dean Schenker indicated that CHAS has seven voting members and that a quorum of four is required to act on petitions. He further stated that the number of members who considered the plaintiff's petition exceeded the minimum needed for a quorum and that Dean Schenker did not vote on the plaintiff's petition. (PX 14, p. 5.) Notably, the Yale College website lists the members of CHAS, including Dean Schenker and eight other members, one of whom is ex officio. See, https://yalecollege.yale.edu/get-know-yale-college/office-dean/committees/committee-honors-and-academic-standing-chas; DX B. The information provided on the Yale College website corresponds with Dean Schenker's statements regarding the composition of CHAS. In order to believe that Dean Schenker is the only member

---

[7] Since the plaintiff relies on Dean Schenker's January 13, 2020 e-mail and January 15, 2020 and January 19, 2020 letters in asserting his fraudulent misrepresentation claim, the Court should consider those documents in their entireties when ruling on the defendants' motion to dismiss. See, Adekoyu v. Herron, 2013 U.S. Dist. LEXIS 164575 (W.D.N.Y. November 19, 2013); Global Network Communs., Inc. v. City of New York, 458 F.3d 150, 157 (2d Cir. 2006); Lynch v. City of New York, 952 F.3d 67, 79 (2d Cir. 2020). The Court should also consider the information posted on Yale College's website (DX B) and Dean Schenker's January 20, 2020 e-mail because the plaintiff relies upon those documents in his fraud claim. See, Second Amended Compl., ¶ 71, 76.

of CHAS, and therefore the only one who decided the plaintiff's petition, one would have to also believe that Yale University has misrepresented the members of CHAS on its website.

It is also significant that the plaintiff's actions in this litigation demonstrate that he is aware that Dean Schenker is not the only member of CHAS.  The plaintiff has issued notices of deposition for Dean Schenker and four additional CHAS members: Keshav Raghavan, Daria Vander Veer, Sarah Insley, and Dana Angluin   See, ECF Nos. 53; 67, Ex. A.  Each notice of deposition requests that the deponent provide an affidavit or declaration concerning CHAS, including its existence, composition, and procedures, and CHAS's review of the plaintiff's petition.  The noticing of depositions of five of the nine CHAS members demonstrates that, contrary to his allegations in the Second Amended Complaint, the plaintiff is fully aware that Dean Schenker is not the only member of CHAS and was not the only person who considered his petition.

Dean Schenker's January 15, 2020 and January 19, 2020 letters clearly demonstrate that CHAS met to review the plaintiff's petition, since it quotes portions of the petition, including:  (1) the plaintiff's argument heading of "Grade of 'F' in ECON 456 Wasn't Justified," (2) the plaintiff's statement that he "made a series of easily avoidable mistakes," and (3) the plaintiff's statement, "I don't think Academic Regulations apply differently to me than to any other student at Yale."  See, PX 14, p. 7-8.  Significantly, citing Plaintiff's Exhibit 14, the Court found that CHAS had reviewed the plaintiff's petition and academic record.  (ECF No. 64, p. 23, 32-33, 36.)  Quoting Dean Schenker's letter, the Court observed that the Committee provided a justification for denying the plaintiff's petition.  (ECF No. 64, p. 32.)  The plaintiff has not alleged any facts demonstrating that Dean Schenker knew that he was the only member of CHAS and that CHAS did not meet to review and vote on his petition; rather those allegations are based upon pure speculation, which is insufficient to defeat a motion to dismiss.  See, Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

The plaintiff also fails to allege facts supporting the third and fourth elements, i.e., that Dean Schenker made false representations to induce the plaintiff to act upon them and that the plaintiff did so act to his detriment.   The plaintiff claims that Dean Schenker made the representations to prevent the plaintiff from discovering that Dean Schenker fraudulently acted on behalf of other individuals without their knowledge and that Dean Schenker reasonably expected that the plaintiff would be unable to question the veracity of the representations because he would be legally obliged to depart the United States within two days.  (Second Amended Compl., ¶ 63-64.)  Dean Schenker's January 20, 2020 e-mail belies this allegation.  The plaintiff e-mailed Dean Schenker on January 17, 2020 and Dean Schenker answered the plaintiff's questions in his January 20, 2020 e-mail: "As to your question below: the Committee on Honors and Academic has seven voting members, and can act on petitions and other matters requiring a vote with a quorum of four members present. The number of members present and voting on your request exceeded that minimum number."  (PX 14, p. 5.)  Dean Schenker then invited the plaintiff to e-mail him with further questions: "I ask that you send me any questions or concerns in writing, and I will do my best to reply to you as soon as I am able, within the limits of what I have written above (that is, I will not be speaking for the members regarding your petition nor the Committee's vote)."  Id. Since Dean Schenker answered the plaintiff's questions regarding the composition of CHAS and then offered to address further questions, the plaintiff has failed to allege facts sufficient to demonstrate that Dean Schenker made false representations to induce the plaintiff not to question the review of his petition.

The plaintiff's filing of this lawsuit demonstrates that the plaintiff did not act upon the alleged false representations to his injury.  The plaintiff filed the original complaint in this action on January 30, just ten days after Dean Schenker's January 20, 2020 e-mail.  In that complaint, the

plaintiff questioned whether CHAS had in fact considered his petition.  (Compl., ⁋ 47-48, 52.) Since the plaintiff in fact questioned Dean Schenker's representations by filing this action, the plaintiff has failed to allege facts sufficient to meet the fourth element of his fraudulent misrepresentation claim.  In other words, the filing of the complaint in this case in and of itself demonstrates that the plaintiff cannot prevail as to the fourth essential element of a claim for fraudulent misrepresentation.

The plaintiff has failed to allege facts supporting any of the elements of the fraudulent misrepresentation claim in Count I.  Moreover, the documents relied upon by the plaintiff and the plaintiff's actions in pursuing this action clearly demonstrate that the plaintiff has failed to state a claim for fraudulent misrepresentation.  Therefore, Count I should be dismissed.

### B.        Count II Fails to State a Claim for Fraud.

In his Second Amended Complaint, the plaintiff includes an additional claim for fraud against Yale University and Dean Schenker.  "Whether the term 'fraud' or the term 'fraudulent misrepresentation' is used, the elements are the same."  Krol v. Halloran & Sage, LLP, 2013 Conn.Super. LEXIS 204 (January 13, 2013), citing Sturm v. Harb Development, LLC, 298 Conn. 124, 142 (2010).  See also, Arch Bay Holdings, LLC v. Tompkins, 2011 Conn.Super. LEXIS 2717 *14 (October 18, 2011); Patsis v. Denardo, 2006 Conn.Super. LEXIS 1314 *21 (May 5, 2006). "The elements comprising an action in fraud or fraudulent misrepresentation are that: (1) a false representation was made as a statement of fact; (2) it was untrue and known to be untrue by the party making it; (3) it was made to induce the other party to act upon it; and (4) the other party did so act upon that false representation to his injury."  (Internal quotations omitted.)  Statewide Griev. Comm. v. Egbarin, 61 Conn.App. 445, 454 (2001), cert. denied, 255 Conn. 949 (2001).  For the

same reasons the plaintiff fails to state a claim of fraudulent misrepresentation in Count I, he also fails to state a claim for fraud in Count II.

In Count II the plaintiff elaborates on his claims in Count I, i.e., that CHAS does not exist and that Dean Schenker himself considers and decides petitions to CHAS without anyone else participating in the decision.  The plaintiff alleges that Yale University represented that withdrawals from Yale College were considered and adjudicated by CHAS and that CHAS met about twice a month during the regular academic year.  The plaintiff further alleges that Yale University and Dean Schenker represented that CHAS is composed of representatives of the Yale College Dean's Office, tenured and non-tenured faculty members, and undergraduate students. (Second Amended Compl., ¶ 69-71.)  To the contrary, the plaintiff claims he believes, without any factual support, that CHAS "has never existed, has not considered any matters, and has been an alter ego of defendant SCHENKER" and that Dean Schenker "falsely characterized that decisions he was responsible for making were deliberated and rendered by  the Committee, an internal adjudicative body, to shield YALE and SCHENKER himself from potential liability and to give an appearance of legitimacy of decisions made without regards to the merits of each individual case."  (Second Amended Compl., ¶ 73, 75.)  The plaintiff claims that Dean Schenker took the following steps to disguise the nature of his fraudulent conduct: (1) failing to disclose the names of the alleged members of CHAS; (2) refusing to identify the members involving in rendering the decision; (3) providing inconsistent answers regarding CHAS' internal affairs than those supplied by Yale University; (4) refusing to meet in person with the plaintiff; and (5) falsely representing that he had no bearing on the CHAS members' votes.[8]  (Second Amended Compl., ¶ 76.)

---

[8] These statements were made in Dean Schenker's January 20, 2020 e-mail to the plaintiff.  See, PX 14, p. 5.

16

As explained above in Section III(A), the plaintiff has failed to assert allegations sufficient to satisfy any of the four elements of a fraud claim.  In fact, the documents upon which the plaintiff relies and the filing of this lawsuit doom his claim for fraud.  Therefore, Count II should be dismissed.

**C.    <u>Count III Fails to State a Claim for Breach of Contract.</u>**

The Supreme Court in <u>Gupta v. New Britain General Hospital</u>, 239 Conn. 574,  (1996), set forth two situations in which courts will entertain a cause of action for institutional breach of a contract for educational services: "The first would be exemplified by a showing that the educational program failed in some fundamental respect, as by not offering any of the courses necessary to obtain certification in a particular field.  The second would arise if the educational institution failed to fulfil a specific contractual promise distinct from any overall obligation to offer a reasonable program." <u>Id.</u> at 592. (Internal citations omitted.)  The present plaintiff has not alleged that Yale University's undergraduate educational program failed in some fundamental aspect. Rather, he attempts, but fails, to allege that the defendants breached a specific contractual promise. The plaintiff also fails to allege facts demonstrating that the defendants' acted arbitrarily, capriciously, or in bad faith or that they breached the covenant of good faith and fair dealing.  For these reasons, Count III should be dismissed.

1.    <u>The plaintiff fails to allege that the defendants breached a specific contractual promise.</u>

"To constitute a 'specific contractual promise,' the promise on which a plaintiff relied must have been precise and based on specific contractual terms or provisions."   <u>Kloth-Zanard v. Amridge Univ.</u>, 2012 U.S. Dist. LEXIS 87560 *15 (D.Conn. June 22, 2012) (Arterton, J.), citing <u>Faigel v. Fairfield Univ.</u>, 75 Conn.App. 37, 42 (2003).  The plaintiff wholly fails to allege a specific contractual term breached by Yale University, as required under <u>Gupta</u>.  In his April 27,

2020 Amended Complaint, the plaintiff referred to a statement allegedly made by Peter Salovey, the President of Yale University.  (Amended Compl., ¶ 57.)  Ruling on the plaintiff's motion for preliminary injunction, the Court concluded that this allegation was insufficient to support a breach of contract claim: "Madej has not identified a 'specific contractual promise' that entitles him to avoid academic withdrawal or to any more review than he received…. Salovey's statement does little more than outline guiding principles.  Like Fairfield's statement that the plaintiff in <u>Faigel</u> could obtain 'many credits' for other work, the statement that Yale has a 'steadfast commitment to [its] international students' and that such students are 'welcome and respected on [its] campus' is too imprecise to qualify for consideration as a specific contractual promise."  (ECF No. 64, p. 22.)

In his Second Amended Complaint, the plaintiff has removed the allegation concerning President Salovey's alleged statement and replaces it with an even more generalized allegation: "At all relevant times, Yale University did not implement any procedures or policies to provide procedural safeguards to students who have been in the process of being involuntarily withdrawn from Yale."  (Second Amended Compl., ¶ 83.)  He further alleges that "Yale University does not know who, when, and how he was involuntarily withdrawn from Yale College," and that Yale University chose not to collect such information "solely to prevent it from being discovered in litigation."  (Second Amended Compl., ¶ 84-85.)  Significantly, the plaintiff does not allege that Yale University was bound by any contractual provision with the plaintiff to provide procedural safeguards to students who have been involuntarily withdrawn from Yale University or to maintain information regarding such students.  As Judge Hall observed in denying the plaintiff's motion for preliminary injunction, the plaintiff is not entitled to the due process protections of the Fourteenth Amendment, which applies only to public institutions, because Yale University is a private

university.  (ECF No. 64, p. 17.)  Since the plaintiff's allegations are insufficient to state a breach of contract claim under Gupta, Count III should be dismissed.

Both federal and state case law support the foregoing conclusion.  In Faigel, the Connecticut Appellate Court concluded that an alleged promise that the plaintiff would be allowed "many credits" from her prior engineering studies did not qualify as a specific contractual promise to state a breach of contract claim under Gupta.  Faigel v. Fairfield Univ., 75 Conn.App. 37, 42 (2003).  Similarly, Judge Arterton concluded that a promise to assist students in ensuring that a certain part of their training was completed and a statement that a professor would help students in any way that he could to procure a clinical site placement did not amount to specific promises as to the nature or extent of the assistance that would be provided.  Kloth-Zanard v. Amridge Univ., 2012 U.S. Dist. LEXIS 87560 *15-16 (D.Conn. June 22, 2012) (Arterton, J.).  In McNeil v. Yale Univ., 2020 U.S. Dist. LEXIS 15337 *93-94 (D.Conn. January 30, 2020), the plaintiff relied on statements in Yale's Equal Opportunity Statement, Undergraduate Regulations, and Sexual Misconduct Policies to claim that the defendant had promised to have educational programs and student organizations that are free of discrimination on the basis of sex; to prohibit sexual misconduct; and to seek to eradicate sexual misconduct at the University.  Judge Bryant concluded that the general language contained in Yale's policies did not constitute specific contractual promises.  Id. at *95.  See also, Cullen v. Univ. of Bridgeport, 2003 Conn.Super. LEXIS 3430 (December 10, 2003) (granting motion to strike breach of contract claim because the plaintiff had not pointed to an identifiable written or oral promise that the defendant failed to honor that would support a breach of contract claim under the rule set forth in Gupta.)

The present plaintiff has similarly failed to identify any specific contractual promise that the defendants violated with respect to the petition challenging his withdrawal.  In this regard,

Judge Hall observed:

> Further, Madej has not identified any provisions of his contract with Yale, relating to review of an academic withdrawal, that Yale violated.  Rather, taking Yale's Course Catalogue to form part of its contract with Madej, it appears that Yale followed the contract to the letter.  The Course Catalogue made clear that Academic Warning status would be "automatic" if Madej failed to earn more than two credits, that he "should regard [himself] as being on warning even in the absence of written notice," and that, if he failed a class while on Academic Warning, he would be dismissed from Yale College.  Yale withdrew Madej from its programs of study only after Madej met these criteria for withdrawal.  Madej was also able to petition the CHAS for an exemption from automatic academic withdrawal, and the Committee reviewed his petition.  In short, there appears to be nothing about Madej's withdrawal, or the CHAS's review of that withdrawal, that violates a "specific contractual promise" Yale made.  For similar reasons, Madej has not shown that he is likely to succeed on a claim that Yale's lack of transparency violated any contractual promises Yale made.  In the Complaint, Madej alleges that Yale, inter alia, failed to explain "how Committee arrived at [the] decision" upholding the automatic academic withdrawal, Compl. ¶ 46, and failed to release "statistics or any empirical information about withdrawals," id. ¶ 59.  However, nothing in the record supports an argument that Yale promised to share such data, nor does Madej identify another source for a specific contractual promise of transparency.

(Internal citations omitted.)  (ECF No. 64, p. 22-23.)  Since the plaintiff has not pointed to any specific contractual promise breached by the defendant, he has failed to state a claim upon which relief can be granted in Count III.

        2.    <u>The plaintiff has failed to allege arbitrary, capricious, or bad faith conduct on the part of the defendants.</u>

Count III should also be dismissed because the plaintiff has failed to allege that the defendants acted arbitrarily, capriciously, or in bad faith.  "The plaintiff bears a heavy burden in proving that his dismissal resulted from arbitrary, capricious, or bad faith conduct on the part of the [defendant].  To prevail, he must show that the [defendant's] decision had no discernable rational basis."  (Internal citations omitted.)  <u>Gupta v. New Britain General Hospital</u>, 239 Conn. 574, 595 (1996).  Since the plaintiff's Second Amended Complaint establishes that the defendants

adhered to the Programs of Study when they placed him on Academic Warning and later withdrew him for failing a course while on Academic Warning, the plaintiff has failed to allege arbitrary, capricious, or bad faith conduct.

There are only two provisions of the Programs of Study applicable in this case:

- Academic Warning is an indication that a student's scholastic record is unsatisfactory.  Students on Academic Warning who do not pass all of their courses in the term in which they are on Academic Warning will be dismissed for academic reasons.  No matter how many course credits a student has earned, Academic Warning is automatic in the following cases: (a) failure in one term to earn more than two course credits; (b) a record that shows two grades of F in one term; (c) in two successive terms, a record that shows a grade of F for any course.  The college deans attempt to give written notification of Academic Warning to students whose records show these deficiencies, but such students should regard themselves as being on warning even in the absence of written notification.  A student permitted to continue in Yale College with fewer than the number of course credits ordinarily required for academic good standing may be placed on Academic Warning, and in such a case the student will be notified that he or she has been placed on warning.

- A record that shows a grade of F for a student who is on Academic Warning in that term will result in that student's dismissal for academic reasons. See "Academic Warning" above.

(Emphasis added.)  (DX A, p. 2-3.)  The plaintiff alleges in his Second Amended Complaint that he reduced his course load to two courses in the Spring, 2019 term so that he could focus on his business.  He further alleges that he was placed on Academic Warning because he completed only two credits in the Spring, 2019 term.[9]  (Second Amended Compl., ¶ 20-21.)  Under the Programs of Study, a student who fails to earn more than two course credits in one term is automatically placed on Academic warning.  Since the plaintiff failed to earn more than two credits in the Spring, 2019 term, his placement on Academic Warning was mandated by the Programs of Study.

The plaintiff also alleges in his Second Amended Complaint that he submitted his final exam in ECON 456 and thereafter received a failing grade in that course.  He has also alleged that

---

[9] In fact, the plaintiff earned only one credit in the Spring, 2019 term.  (Ex. C., p. 2.)

he received notice that he had been withdrawn from Yale College.  (Second Amended Compl., ¶¶ 33, 35, 37.)  The Programs of Study mandated the involuntary withdrawal: "A record that shows a grade of F for a student who is on Academic Warning in that term <u>will</u> result in that student's dismissal for academic reasons."  (Emphasis added.)  (DX A, p. 3.)  As the Court has already noted, there is no room for discretion in the application of this rule.  (ECF No. 64, p. 25.)  Acting in conformity with the unambiguous provisions of the Programs of Study cannot, as a matter of law, meet the "heavy burden" established in <u>Gupta</u> for proving that "his dismissal resulted from arbitrary, capricious, or bad faith conduct."

<u>Bass v. Miss Porter's School</u>, 738 F. Supp. 2d 307, 327 (D.Conn. 2010) (Arterton, J.), is directly on point.  In that case, the district court explained: "Because the Handbook provides that dismissal is warranted upon violation of any Major Rule, and because Plaintiff violated a Major Rule when she consumed alcohol, Porter's determination to dismiss Plaintiff does not lack a 'discernable rational basis.'"  These are the exact circumstances in the present case.  In fact, this Court made this same observation in ruling on the plaintiff's motion for preliminary injunction: "Madej does not contest the facts underlying his academic withdrawal.  He acknowledges that he earned only two course credits in Spring 2019 and then earned an F in a course the following semester.  Compl. ¶¶ 17-18; 31-32.  By the terms of Yale's Course Catalogue, Madej's withdrawal from the University was mandatory.  In other words, Yale has offered a 'rational basis' for Madej's withdrawal: he failed to abide by its academic policies."  (ECF No. 64, p. 25.)

The plaintiff has also failed to allege that the defendant acted arbitrarily, capriciously, or in bad faith in handling the petition challenging his withdrawal.  In fact, his Second Amended Complaint demonstrates that he was given an opportunity to challenge the withdrawal.  The plaintiff alleges that Dean Hill advised him to petition to CHAS and that he submitted a 6200 word

document to that committee.  (Second Amended Compl., ⁋ 40-41, 43.)  In a January 19, 2020 letter, Dean Schenker informed the plaintiff that CHAS had reviewed the plaintiff's petition with care and had voted to deny it.  (PX 22, p. 7.)  This Court reached the same conclusion: "In practice, Madej received information that enabled him to petition the Committee and seek review of his academic withdrawal.  As he acknowledges in the Complaint, Hill 'verbally advised [Madej] to petition the Committee on Honors and Academic Standing,' and 'offered to pass the petition to the Committee.'  Compl. ¶ 37.  Although Yale may post on its CHAS webpages less information than the Massachusetts Institute of Technology does concerning its comparable activities, see Compl. ¶ 57, Madej advances no arguments that Yale's choice to disseminate the information it does about the Committee and its review is arbitrary or a 'substantial departure from Academic Norms.' Gupta, 239 Conn. at 595."  (ECF No. 64, p. 27.)

Since the defendants' actions in placing the plaintiff on Academic Warning and later withdrawing him from Yale College were mandated by the Programs of Study and since the plaintiff was permitted to petition his withdrawal, the plaintiff has failed to allege arbitrary, capricious, or bad faith conduct on the part of the defendants.  Therefore, Count III should be dismissed.

    **D.**    <u>**Count III Fails to State a Claim for Breach of the Covenant of Good Faith and Fair Dealing**</u>.

A claim for breach of the covenant of good faith and fair dealing cannot be maintained in the absence of a valid breach of contract claim.  <u>See</u>, <u>McNeil v. Yale Univ.</u>, 2020 U.S. Dist. LEXIS 15337 *97 (D.Conn. January 30, 2020) (Bryant, J.) ("Because Plaintiffs' breach of contract claim fails, their breach of the implied covenant of good faith and fair dealing claim also fails.")  Since the present plaintiff has failed to state a breach of contract claim under <u>Gupta</u>, he has also failed to state a claim for breach of the covenant of good faith and fair dealing.  Even if the plaintiff had

sufficiently alleged a breach of contract claim, he has not alleged facts suggesting that the defendants acted in bad faith.  For both of these reasons, he has failed to state a claim for breach of the covenant of good faith and fair dealing and Count III should be dismissed.

"To establish that the covenant [of good faith and fair dealing] has been breached, a plaintiff must show that the acts by which a defendant allegedly impeded the plaintiff's right to receive reasonably expected contract benefits were taken in bad faith."  Landry v. Spitz, 102 Conn.App. 34, 47 (2007).  "Bad faith in general implies both actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive. . . . Bad faith means more than mere negligence; it involves a dishonest purpose. . . . [B]ad faith may be overt or may consist of inaction, and it may include evasion of the spirit of the bargain . . . ."  (Internal quotations omitted.)  Blumberg Associates Worldwide, Inc. v. Brown & Brown of Connecticut, Inc., 132 Conn.App. 85, 100 (2011), aff'd, Blumberg Assocs. Worldwide v. Brown & Brown of Conn., Inc., 311 Conn. 123 (2014).

As fully explained above, the plaintiff has failed to allege facts from which it can be concluded that the defendants acted in bad faith with respect to his Academic Warning status, his academic withdrawal, or his CHAS petition; thus, he has failed to state a claim for breach of the covenant of good faith and fair dealing in regard to those claims.  The plaintiff has also failed to allege a breach of the covenant of good faith and fair dealing with respect to providing notice of the Academic Warning.  The Programs of Study make it clear that the student is responsible for monitoring his or her own academic status: "The college deans attempt to give written notification of Academic Warning to students whose records show these deficiencies, but such students should regard themselves as being on warning even in the absence of written notification."  (Ex. A, p. 2.)

Moreover, the plaintiff's allegations demonstrate that he was in fact notified of the Academic Warning in October, 2019, two months prior to the end of the term.  (Second Amended Compl., ¶¶ 20, 22.)  It is also significant that the plaintiff was not withdrawn from Yale College due to the Academic Warning; rather, he was withdrawn because he failed a course while on Academic Warning.[10]  Therefore, he has not alleged that the failure to inform him of the Academic Warning impeded his ability to remain a student in good standing.  This Court made the same observation:

> Further, it is clear that it was not the Academic Warning status, alone, that led to Madej's dismissal.  Rather, it was his failure of his Economics seminar that triggered academic withdrawal. See Defs.' Ex. 1, Course Catalogue, Section I (Doc. No. 37-1) at 2 ("Students on Academic Warning who do not pass all of their courses in the term in which they are on Academic Warning will be dismissed for academic reasons."); Compl. ¶ 32; see also Pl.'s Ex. 25, Letter of Withdrawal (Doc. No. 23).  In other words, assuming arguendo Hill acted maliciously in failing to warn Madej that he was on Academic Warning, that action did not cause the ultimate harm—it did not "injure the right of the other to receive the benefits of the agreement." Habetz v. Condon, 224 Conn. at 238. Rather, the harm was caused when Madej failed ECON 456.

(ECF No. 64, p. 30.)

Since the plaintiff has failed to allege any facts which would support a conclusion that the defendants acted in bad faith in connection with the plaintiff's Academic Warning, withdrawal, and CHAS petition, Count III should be dismissed in its entirety.

   **E.       Count IV Fails to State a Claim for Negligence.**

"The essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury."  RK Constructors, Inc. v. Fusco Corp., 231 Conn. 381, 384 (1994).  Count IV fails to state a negligence claim because it impermissibly attempts to assert a claim for educational malpractice, a claim not recognized by the Connecticut courts.  In addition,

---

[10] It is significant that the plaintiff has not alleged that the failing grade in ECON 456 was in bad faith.  In fact, he specifically stated in his petition that he was not challenging the grade he received.  (PX 24, p. 10.)

the plaintiff has failed to allege facts establishing that the defendants owed the plaintiff a duty, that the defendants breached that duty, or that the breach caused the plaintiff's injury, i.e. his academic withdrawal.  Therefore, his negligence claim must be dismissed.

               1.      The Plaintiff Impermissibly Asserts an Educational Malpractice Claim.

     In Gupta v. New Britain General Hospital, 239 Conn. 574 (1996), the Supreme Court held that educational malpractice is not a viable claim.  In that case, the plaintiff was dismissed from the residency program because the hospital determined that he was not then, and would not likely become, a surgeon who could operate safely without supervision.  Id. at 586.  After concluding that the hospital's decision to dismiss the plaintiff for poor clinical performance constituted an academic decision, the Supreme Court addressed whether the plaintiff could prevail on his breach of contract claim alleging that the defendant failed to provide him with appropriate training.  Id. at 589.  The Supreme Court explained:

> "Where the essence of the complaint is that [an educational institution] breached its agreement by failing to provide an effective education, the court is . . . asked to evaluate the course of instruction [and] called upon to review the soundness of the method of teaching that has been adopted by [that] educational institution.  This is a project that the judiciary is ill equipped to undertake.  In reality, a claim such as that advanced by the plaintiff raises questions concerning the reasonableness of conduct by educational institutions in providing particular educational services to students -- questions that must be answered by reference to principles of duty, standards of care, and reasonable conduct associated with the law of torts.

(Internal quotations and citation omitted.)  Id. at 590.  Due to these concerns, courts "have almost universally held that claims of 'educational malpractice' are not cognizable."  Id. at 591.  Since the focus of the plaintiff's breach of contract claim was an allegedly inadequate residency program, the Supreme Court concluded that judicial noninterference was especially appropriate.  Id. at 592. See also, Doe v. Yale Univ., 252 Conn. 641, 659 (2000) ("If the duty alleged to have been breached

is the duty to educate effectively, the claim is not cognizable.")

Doe v. Quinnipiac Univ., 404 F.Supp.3d 643, (D.Conn. 2019) (Arterton, J.), is instructive. In that case, the plaintiff brought suit after Quinnipiac disciplined him following an investigation into allegations that he had abused his girlfriend. Addressing the plaintiff's claims for negligent infliction of emotional distress, the district court explained that Gupta precluded negligence-based educational malpractice claims. Judge Arterton further observed: "But in the tort context, *Gupta*'s holding that 'an educational institution does not have license to act arbitrarily, capriciously, or in bad faith' makes clear that claims based on ordinary negligence and relating to the provision of educational services may not be brought." Id. at 673. Since the district court concluded that Gupta "bars claims challenging a school's disciplinary processes and outcomes, based on mere negligence, as opposed to arbitrary, capricious, or bad faith conduct," the district court granted the defendants' motion for summary judgment on the negligent infliction of emotional distress claims. Id. at 674. See also, Bass v. Miss Porter's Sch., 738 F. Supp. 2d 307, 327 (D.Conn. 2010) (Arterton, J.) ("[T]he *Gupta* exceptions, which permit claims against educational institutions that 'act arbitrarily, capriciously, or in bad faith,' *Gupta, 239 Conn. at 595*, necessarily exclude negligence theories of liability.")

The present plaintiff alleges that the defendants acted negligently when they withdrew him pursuant to the Programs of Study and then refused to afford him an exception to the applicable policies requiring the withdrawal. As recognized by Judge Hall in the ruling on the plaintiff's preliminary injunction motion, "[a] negligence claim challenging the decision to withdraw Madej, in other words, is an impermissible educational malpractice claim." (ECF No. 64, p. 35.) Since a claim based upon the improper withdrawal of the plaintiff is an educational malpractice claim, Count IV does not state a cognizable and should therefore be dismissed.

2.      <u>The Plaintiff Fails to Allege that the Defendants Owed Him a Duty.</u>

Even if one could somehow reach the conclusion that the plaintiff's negligence claim does not constitute an impermissible educational malpractice claim, Count IV should still be dismissed for failure to state a claim.  To the extent that the plaintiff's negligence claim is premised on an allegation that Dean Hill owed the plaintiff a duty to inform him that he had been placed on Academic Warning in May, 2019, that claim must be dismissed because the Second Amended Complaint does not set forth any facts demonstrating that the defendants owed the plaintiff a duty, breached that duty, or that the breach caused the plaintiff's injury.  Indeed, as already noted above, the Programs of Study explicitly provides that Yale has no duty to inform the student that he or she is on Academic Warning.

The plaintiff alleges that he was placed on Academic Warning because he completed only two credits in the Spring, 2019 term, but Yale did not inform him of that fact until the middle of October, 2019.[11]   (Second Amended Compl., ⁋⁋ 20, 22.)  The plaintiff does not allege any facts suggesting that Dean Hill was obligated to inform him that he had been placed on Academic Warning.  This is unsurprising because the Programs of Study do not impose such a duty on the college deans: "The college deans <u>attempt to give written notification</u> of Academic Warning to students whose records show these deficiencies, but <u>such students should regard themselves as being on warning even in the absence of written notification</u>.[12]  (Emphasis added.)  (DX A, p. 2.) Even if the plaintiff was owed a duty in this regard, the allegations of the Second Amended

---

[11] In fact, the plaintiff earned only one credit in the Spring, 2019 term.  <u>See</u>, Ex. C, p. 2.

[12] This Court made this same observation in ruling on the plaintiff's preliminary injunction motion:  "[T]he Yale Course Catalogue does not state that Hill had a 'duty' to inform Madej; rather, the Catalogue provides that, 'the college deans attempt to give written notification of Academic Warning to students whose records show these deficiencies, but such students should regard themselves as being on warning even in the absence of written notification.' See Course Catalogue, Section I (Doc. No. 37-1) at 2 (emphasis added). Based on the Course Catalogue, it appears that Madej, not Hill, had a duty to track his academic progress."  (ECF No. 64, p. 35.)

28

Complaint demonstrate that the defendants fulfilled that obligation because the plaintiff alleges that Yale notified him of the Academic Warning in the middle of October, 2019. (Second Amended Compl., ⁋ 22.)  Since the plaintiff does not allege that the defendants owed him a duty to inform him of the Academic Warning, and he alleges that the defendants in fact informed him of the Academic Warning several weeks before the end of the semester, the negligence claim should be dismissed because the plaintiff has failed to allege that the defendants owed him a duty to inform him of the Academic Warning or that they breached that duty.

In addition, the allegations of the Second Amended Complaint do not assert that the failure to inform the plaintiff of his Academic Warning until October, 2019 caused his withdrawal.[13] Rather, the plaintiff alleges that he received a failing grade in one of his classes because the professor was unable to open the plaintiff's final exam submission.  He then claims that he received a dismissal letter on January 3, 2019, which was approximately two weeks after the conclusion of the final exam period. (Second Amended Compl., ⁋ 33, 35, 37.)  Thus, the allegations of the Second Amended Complaint assert that the plaintiff was withdrawn because he received a failing grade.  Since the plaintiff does not allege that any failure on the part of Dean Hill to inform him of his Academic Warning status caused the plaintiff's withdrawal, he has failed to allege the causal element of his negligence claim.[14]

To the extent that it constitutes a claim distinct from an educational malpractice claim, the

---

[13] This obviously could not be the case because the plaintiff was placed on Academic Warning after the conclusion of the Spring, 2019 term and was permitted to enroll in classes for the Fall, 2019 term.  The Academic Warning was in effect for the Fall, 2019 term.  The cause of the involuntary withdrawal was the plaintiff's receiving an F for failing to submit his exam on time.

[14] Judge Hall reached this same conclusion: "It was not the Academic Warning status, alone, that led to Madej's dismissal – rather, it was his failure of his Economics seminar…. Thus, the court cannot conclude that Madej is likely to succeed on a negligence claim, because the record does not suggest that he likely will be able to show that Hill's actions caused the harm of withdrawal." (ECF No. 64, p. 35-36.)

plaintiff has also failed to allege that the defendants owed him a duty or breached a duty with regard to his CHAS petition. In fact, the allegations of the Second Amended Complaint demonstrate that Dean Hill advised the plaintiff to petition the withdrawal to CHAS and that the plaintiff then submitted a 6,200 word document to CHAS. (Second Amended Compl., ¶ 40-41, 43.) In a January 19, 2020 letter, Dean Schenker informed the plaintiff that CHAS had reviewed the plaintiff's petition with care and had voted to deny it. (PX 22, p. 7.) The allegations of the Second Amended Complaint, as well as the documents relied upon by the plaintiff, establish that the plaintiff was informed that he could file a petition with CHAS, that he did so, and that the petition was appropriately reviewed by CHAS. The fact that CHAS then denied the plaintiff's petition in conformity with the standards published on Yale's website does not establish the breach of any duty owed to the plaintiff by any of the defendants. To the contrary, the plaintiff has failed to allege any facts to support the allegation that the defendant breached any duty owed to him in connection with the CHAS petition. While the plaintiff alleges that Dean Hill did not provide any information about CHAS, (Second Amended Compl., ¶ 40), he fails to allege any facts suggesting that the defendants were obligated to disclose any information to him.[15] He also fails to allege any facts establishing that the defendants were under an obligation to provide any additional process for taking an appeal beyond the CHAS petition. Since the plaintiff has failed to allege that the defendants owed or breached a duty to the plaintiff with regard to his CHAS petition, the negligence claim based on the CHAS petition should be dismissed.[16]

---

[15] In fact, the Yale College website includes information about CHAS. See, DX B.

[16] In the same vein, this Court observed: "On the record before it, the court cannot conclude that Madej has shown that he has a likelihood of success on a negligence claim based on either a duty to provide more process than he was given or a duty to be completely transparent about the withdrawal process or CHAS's procedures. First, Yale's website provides information about the CHAS, and, as discussed throughout this Ruling, it did provide review, see, e.g., Defs.' Ex. B (listing the types of members and purpose of CHAS); Pl.'s Ex. 1 (description of the Committee); Pl.'s Ex. 14. Second, even assuming arguendo that Yale wasn't transparent and didn't provide review, the plaintiff has not identified any source for a duty to provide those things to a student. There is no basis for his argument that any such

Since the plaintiff has failed to allege that the defendants owed him a duty, or breached that duty, with respect to informing him of the Academic Warning and his CHAS petition and has failed to allege facts to support the conclusion that the failure to warn him of the Academic Warning caused his academic withdrawal, Count IV fails to state a claim for negligence and should be dismissed.

**F.      Count IV Fails to State a Claim for Negligent Infliction of Emotional Distress.**

In the event that the Court determines that Gupta does not preclude a negligent infliction of emotional distress in this case, that claim should still be dismissed.  In order to state a claim for negligent infliction of emotional distress, the plaintiff must allege the following four elements: "(1) the defendant's conduct created an unreasonable risk of causing the plaintiff emotional distress; (2) the plaintiff's distress was foreseeable; (3) the emotional distress was severe enough that it might result in illness or bodily harm; and (4) the defendant's conduct was the cause of the plaintiff's distress."  Carrol v. Allstate Ins. Co., 262 Conn. 433, 444 (2003).  The plaintiff has failed to allege any fact to support a conclusion that the defendants' conduct created an unreasonable risk of causing him distress and that the emotional distress was severe enough that it might result in illness or bodily harm.

The court in Faraclas v. Botwick, 2005 Conn. Super. LEXIS 217 *14 (January 25, 2005), explained: "In the educational context, administrators make decisions that may distress students, but more is required to make such distress actionable in tort.  The administrator's decision must be so wrongful that emotional distress involving illness or bodily harm was foreseeable."  Similarly, Judge Bryant observed: "Under *Gupta*, '[t]he plaintiff bears a heavy burden in proving

---

duty exists, and thus, the plaintiff has not shown a likelihood of success on the merits of his negligence claim."  (ECF No. 64, p. 36.)

that [her] dismissal resulted from arbitrary, capricious, or bad faith conduct on the part of the [school].  To prevail, [s]he must show that the [school's] decision had no 'discernable rational basis.'"  <u>Bass v. Miss Porter's Sch.</u>, 738 F. Supp. 2d 307, 327 (D.Conn. 2010), citing <u>Gupta v. New Britain General Hospital</u>, 239 Conn. 574, 596 (1996).

The defendants' alleged conduct in this case is limited to placing the plaintiff on Academic Warning when he failed to earn more than two credits in a term and then withdrawing him from Yale College because he failed a course while on Academic Warning.  Both of these actions were required by the Programs of Study.  (DX A, p. 2-3.)  The plaintiff was given an opportunity to appeal the withdrawal and his appeal was denied.  While the plaintiff may have experienced distress when he was withdrawn for academic reasons, the defendants' conduct in abiding by the Programs of Study and providing the plaintiff with an avenue to appeal the dismissal does not constitute conduct that <u>unreasonably</u> created a risk of causing the plaintiff emotional distress severe enough that it might result in illness or bodily harm.  Significantly, the plaintiff has failed to allege any facts suggesting that the defendants should have known that proceeding in accordance with the rules set forth in the Programs of Study would create an unreasonable risk of causing severe emotional distress, which in turn was likely to result in illness or bodily harm.

Both the federal and state courts of Connecticut have uniformly concluded that the plaintiff must demonstrate that the defendants knew or should have known that their conduct would create an unreasonable risk of causing severe emotional distress that might result in illness or bodily harm in order to make out a negligent infliction of emotional distress claim.  <u>See</u>, <u>Downing v. W. Haven Bd. Of Educ.</u>, 162 F.Supp.2d 19, 35 (D.Conn. August 24, 2001) (Underhill, J.) (granting summary judgment on negligent infliction of emotional distress claim where no reasonable jury could find that the defendants knew or should have known that their conduct involved an unreasonable risk

of causing emotional distress that might result in illness or bodily harm).  In <u>Langer v. Conn. Ins.</u> <u>Assocs.</u>, LLC 2017 Conn.Super. LEXIS 3923 *9 (July 10, 2017), the court granted the defendant's motion to dismiss the negligent infliction of emotional distress claim because "[t]he plaintiffs did not allege facts showing that the defendants should have foreseen that their conduct would likely cause harm of a specific nature, i.e., emotional distress likely to lead to illness or bodily harm." <u>See</u> <u>also</u>, <u>Lara v. Legionnaires of Christ</u>, 2011 Conn.Super. LEXIS 2166 *15 (August 30, 2011) (striking negligent infliction of emotional distress claim because the plaintiff failed to allege that the defendant should have foreseen that its actions would cause the plaintiff emotional distress severe enough that it might result in illness or bodily harm.); <u>Scappaticci v. G.E. Capital Mortg.</u> <u>Servs.</u>, 2000 Conn.Super. LEXIS 3319 *9 (November 27, 2000) (same); <u>Morice v. Bogaert</u>, 1999 Conn.Super. LEXIS 34 (January 6, 1999) (same).

The Second Amended Complaint in the present case is devoid of any factual allegations suggesting that the defendants knew or should have known that proceeding in accordance with the Programs of Study, after having warned the plaintiff of the consequences if he received a failing grade while on Academic Warning, would create an <u>unreasonable</u> risk of causing the plaintiff emotional distress that might result in illness or bodily harm.  Ruling on the present plaintiff's motion for preliminary injunction, this Court concluded that the plaintiff had not "shown that he is likely to establish that Yale's conduct 'created an unreasonable risk of causing [him] emotional distress'" because "Yale withdrew Madej from its programs of study only after, having received notice and been encouraged to focus on his courses by his Dean and a faculty member, Madej failed a course and, in doing so, met the clear requirements for withdrawal."  (ECF No. 64, p. 37-38.)

Notably, Judge Arterton granted summary judgment in favor of the defendant educational

institution on the plaintiff's negligent infliction of emotional distress claim, explaining: "Because the Handbook provides that dismissal is warranted upon violation of any Major Rule, and because Plaintiff violated a Major Rule when she consumed alcohol, Porter's determination to dismiss Plaintiff does not lack a 'discernable rational basis.'" Bass v. Miss Porter's School, 738 F. Supp. 2d 307, 327 (D.Conn. 2010).  The present case is on all fours with the Bass ruling.  Yale's Programs of Study provide: "A record that shows a grade of F for a student who is on Academic Warning in that term will result in that student's dismissal for academic reasons."  (DX A, p. 3.)  While on Academic Warning, the present plaintiff received an F in ECON 456.  Thus, the Programs of Study unambiguously required that the plaintiff be withdrawn for academic reasons.  There is no opportunity for the exercise of discretion in this circumstance.  Judge Hall agreed with this argument in her ruling on the plaintiff's motion for preliminary injunction: "By the terms of Yale's Course Catalogue, Madej's withdrawal from the University was mandatory."  (ECF No. 64, p. 25.) This analysis compels the conclusion that the present Second Amended Complaint fails to state a claim upon which relief can be granted.

The plaintiff has also failed to allege facts sufficient to support a conclusion that the emotional distress was severe enough that it might result in illness or bodily harm.  The plaintiff's Second Amended Complaint makes it clear that he was treated for depression long before he was placed on academic withdrawal.  (Second Amended Compl., ¶ 16.)  Additionally, the plaintiff does not allege that his depressive symptoms increased as a result of the defendants' conduct, much less that they increased to such a degree that they might result in illness or bodily harm.  In Tyus v. Newton, 2015 U.S. Dist. LEXIS 42089 *36 (D.Conn. March 31, 2015), Judge Underhill dismissed the plaintiff's negligent infliction of emotional distress claim, reasoning:

> Tyus's allegations that the defendants' conduct caused him mental and
> emotional suffering and distress are not supported by facts that suggest the

> distress he suffered was severe enough to maintain an intentional infliction
> of emotional distress claim.  He has not alleged facts sufficient to infer that
> any emotional distress he suffered was "severe enough that it might result
> in illness or bodily harm."  [Carrol v. Allstate Ins. Co., 262 Conn. 433, 444,
> 815 A.2d 119 (2003)].  Thus, the plaintiff has not plausibly alleged a claim
> of intentional or negligent infliction of emotional distress.

Id. at 35-36.  See also, Traylor v. Parker, 2016 Conn.Super. LEXIS 2188 *25 (August 4, 2016)

(striking negligent infliction of emotional distress claim because the plaintiff failed to allege that

the plaintiff's emotional distress was severe enough that it might result in illness or bodily harm);

Knight Southeastern Council on Alcoholism & Drug Dependency, 2001 Conn.Super. LEXIS 2732

*16-17 (September 21, 2001) (striking negligent infliction of emotional distress claim because the

plaintiff failed to allege that the emotional distress caused by the defendants' conduct exposed her

to the risk of illness or bodily harm); Gilliam v. Town of Windsor Locks, 2006 U.S. Dist. LEXIS

12792 *22 (D.Conn. March 7, 2006) (Covello, J.) (granting summary judgment in favor of the

defendant on the negligent infliction of emotional distress claim because the plaintiff failed to

demonstrate that the defendants caused him emotional distress above and beyond his current

mental illness).  Similarly, this Court has observed that the present plaintiff's depression was

adequately maintained by prescription medication and concluded that the plaintiff had not shown

that his academic withdrawal or CHAS' decision to affirm that withdrawal "created an

unreasonable risk of causing the plaintiff emotional distress" that was "severe enough that it might

result in illness or bodily harm."  (ECF No. 64, p. 39.)

Since the present plaintiff has not alleged facts sufficient to permit a conclusion that the

defendants' conduct in acting in conformity with the Programs of Study created an unreasonable

risk of causing the plaintiff severe emotional distress that might result in illness or bodily harm, or

that he suffered emotional distress so severe that it resulted in illness or bodily harm, the plaintiff

has  failed to state a claim for negligent infliction of emotional distress.  Therefore, Count IV

should be dismissed.

### G.     Count V Fails to State a Claim for Tortious Interference with Contract or with Business Expectancies.

Claims for tortious interference with a contract and tortious interference with business expectancies require the pleading of similar elements.  "A claim for tortious interference with contractual relations requires the plaintiff to establish (1) the existence of a contractual or beneficial relationship, (2) the defendants' knowledge of that relationship, (3) the defendants' intent to interfere with the relationship, (4) the interference was tortious, and (5) a loss suffered by the plaintiff that was caused by the defendants' tortious conduct."  (Internal quotations omitted.) Landmark Investment Group, LLC v. CALCO Construction & Development Co., 318 Conn. 847, 864 (2015). "It is well established that the elements of a claim for tortious interference with business expectancies are: (1) a business relationship between the plaintiff and another party; (2) the defendant's intentional interference with the business relationship while knowing of the relationship; and (3) as a result of the interference, the plaintiff suffers actual loss."  Benchmark Municipal Tax Services, LTD. v. Greenwood Manor, LLC, 194 Conn.App. 432, 439 (2019).  In order to state a claim for either cause of action, the plaintiff must allege facts demonstrating that the defendants engaged in improper conduct:

> As our Supreme Court has explained, while it has long recognized a cause of action for tortious interference with contract rights or other business relations…[n]ot every act that disturbs a contract or business expectancy is actionable.  [A] claim is made out [only] when interference resulting in injury to another is wrongful by some measure beyond the fact of the interference itself.  Accordingly, [f]or a plaintiff successfully to prosecute such an action it must prove that the defendant's conduct was in fact tortious.  This element may be satisfied by proof that the defendant was guilty of fraud, misrepresentation, intimidation or molestation…or that the defendant acted maliciously….  [A]n action for intentional interference with business relations…requires the plaintiff to plead and prove at least some improper motive or improper means….  The plaintiff in a tortious

interference claim must demonstrate malice on the part of the defendant, *not in the sense of ill will, but intentional interference without justification*.

(Internal quotations and citations omitted; emphasis in original.)  Varley v. First Student, Inc., 158 Conn.App. 482, 502-03 (2015).   See also, Landmark Investment Group, LLC v. CALCO Construction & Development Co., 318 Conn. 847, 868-69, 124 A.3d 847 (2015); Benchmark Municipal Tax Services, LTD. v. Greenwood Manor, LLC, 194 Conn. App. 432, 440 (2019). Since the present plaintiff has failed to allege facts sufficient to demonstrate that the defendants engaged in improper conduct that interfered with the plaintiff's employment contract, Count V should be dismissed.

In Count V, the plaintiff alleges that he had an employment contract with Professor Edward A. Snyder[17] and that Dean Schenker was aware of this contract by virtue of statements the plaintiff made in his petition to CHAS.  The plaintiff further claims that Dean Schenker acted with reckless disregard to the plaintiff's employment and caused its termination by engaging in fraudulent misrepresentation as described in Count I.  (Second Amended Compl., ¶ 107-111.)  Insofar as the tortious interference claim is based upon the statements made by Dean Schenker as alleged in Count I, the plaintiff has failed to allege facts sufficient to demonstrate that Dean Schenker made false statements which he knew to be untrue.  See, Section III(A).  To the extent that the tortious interference claim is based on the conduct of any of the other defendants, Count V should be dismissed because the plaintiff has failed to allege facts demonstrating that any of the defendants acted arbitrarily, capriciously, or in bad faith in connection with his academic withdrawal.  See, Section III(C)(2) of this memorandum.  In the absence of facts suggesting that either Dean Schenker or any of the other defendants engaged in improper conduct that resulted in the loss of

---

[17] It is important to note that this is an alleged employment contract; the defendants do not admit that the plaintiff had an employment contract with Professor Snyder.

the plaintiff's alleged employment contract with Professor Snyder, the plaintiff has failed to state claims for tortious interference with a contract and tortious interference with business expectancies.

In Biro v. Hirsch, 62 Conn.App. 11, 22 (2001), *cert. denied*, 256 Conn. 908 (2001), the Appellate Court affirmed the trial court's decision to strike the third party plaintiffs' claim for tortious interference with business expectancies because the plaintiffs made no allegations to support their claim that the third party defendants' conduct constituted a tort or was improper. Similarly, in Kaithamattam v. Walnut Hill, Inc., 2012 Conn.Super. LEXIS 2619 *10-11 (October 19, 2012), the court granted a motion to strike a claim for intentional interference with a business expectancy, explaining: "The Fifth Count does not specifically allege facts showing fraud, misrepresentation, intimidation or that the defendant acted maliciously.  Conclusory allegations that the defendants' acts and omissions in this case were done with intent to 'to deceive, intimidate and otherwise . . . fraudulently and with malice' are insufficient."  The court in Battistoni v. Lakeridge Tax Dist., 2008 Conn.Super. LEXIS 1618 *2 (June 17, 2008), also granted the defendants' motion to strike the tortious interference with contract claim because the plaintiff had failed to allege facts sufficient to show that the defendants were guilty of fraud, misrepresentation, intimidation or molestation, or that they acted maliciously.  In the same vein, the court struck the tortious interference with business expectancy claim because the plaintiff failed to allege facts showing improper motive, improper means, or lack of justification.  Id. at *3.  See also, Tax Data Sols., LLC v. O'Brien, 2013 Conn.Super. LEXIS 304 *18 (February 6, 2013) (granting motion to strike claim for tortious interference with business expectancy because the plaintiff failed to plead facts demonstrating that the defendant's actions were not legally justified); Corra v. Sunwood Condo. Ass'n, 2012 Conn.Super. LEXIS 2849 *5-6 (November 26, 2012) (granting motion to

strike tortious interference with contract claim because the revised complaint was "devoid of any claim that the defendant's actions were tortious or were driven by some improper motive or means"); Eastlander Grp., LLC. V. Severin Hills, LLC, 2005 Conn.Super. LEXIS 3041 (November 8, 2005) (granting motion to strike tortious interference with business expectancies claim because plaintiff failed to allege that the defendant engaged in improper conduct).

The present plaintiff has failed to allege facts demonstrating that any of the defendants engaged in improper conduct that interfered with the plaintiff's alleged employment contract with Professor Snyder.  Consequently, Count V should be dismissed.

## IV.   Conclusion

The plaintiff has failed to allege facts supporting any of the elements of a fraudulent misrepresentation or fraud claim, and those claims must therefore be dismissed.  Since the plaintiff's own allegations demonstrate that the defendants abided by the clear mandates of the Programs of Study in placing the plaintiff on Academic Warning, withdrawing him from Yale College when he received a failing grade while on Academic Warning, and then provided the plaintiff an opportunity to appeal his withdrawal, the plaintiff has also failed to state claims for breach of contract and negligence.  The plaintiff has also failed to allege facts sufficient to support his claim for the negligent infliction of emotional distress.  Because he has failed to allege facts suggesting that the defendants engaged in any improper conduct whatsoever, he has similarly failed to state a claim for tortious interference with contract or business expectancies.  Therefore, the Second Amended Complaint should be dismissed in its entirety.

THE DEFENDANTS,
YALE UNIVERSITY, MARVIN CHUN, MARK
SCHENKER, PETER SALOVEY AND JESSIE
ROYCE HILL


By:_____/s/_____
PATRICK M. NOONAN – CT00189
COLLEEN NOONAN DAVIS – CT27773
DONAHUE, DURHAM & NOONAN, P.C.
Concept Park
741 Boston Post Road, Suite 306
Guilford, CT  06437
Telephone:  (203) 458-9168
Fax:          (203) 458-4424
Email:  pnoonan@ddnctlaw.com


## CERTIFICATION

I hereby certify that, on the above-written date, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the court's CM/ECF System.


_____/s/_____
Patrick M. Noonan