IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JAKUB MADEJ, | : | |
|     Plaintiff, | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 3:20-cv-133 (JCH) (SALM) |
| YALE UNIVERSITY ET AL., | : | |
|     Defendants. | : | DECEMBER 11, 2020 |

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO QUASH NOTICES OF DEPOSITION [DE 192, 194]**

Plaintiff Jakub Madej ("Madej") submits this memorandum in opposition to Defendants' Motions to Quash, (DE 192, 194), and in response to certain questions from the Court about the three depositions noticed in this case. (DE 197, 199). This Court should promptly deny Defendants' motions as lacking merit and unnecessarily delaying straightforward discovery.

**I.      INTRODUCTION**

At a last minute, Defendants Yale University and Mark Schenker (the "University Defendants", "the University" or "Yale") and a non-party Sarah Insley Say ("Ms. Say") demand that all discovery be stayed because, as they put it, "the plaintiff cannot possibly prevail on his claims". (DE 129-1, at *7). These oft-repeated contentions are nothing new in this case. At this point, however, the only question before the Court is whether to grant or to deny Defendants' Motions to Quash.

Yale Defendants seek to quash properly noticed depositions scheduled for December 14, 16, and 18, 2020. Two subjective convictions form the basis of Yale's request for relief, namely that Madej (1) "steadfastly refused to identify a court stenographer" and (2) "insists on administering the oath to witnesses [himself]". It is

unclear how these subjective beliefs about future events – even if accepted as true – warrant the relief that defendants seek. Should Madej persist in his purported demands, he would only ensure that the testimony he collected at deposition to prove his case at trial would never enter the courtroom. In other words, under Yale's theory, Madej insists on obtaining inadmissible evidence, that is, one that Madej could not introduce at trial. This makes little sense.

In reality, defendants desperately resort to poetic license – they impute some intentions to the plaintiff and convey them to the Court in a colorful language – all in desperate hope that the depositions do not take place at all.

Setting the record straight, Madej never insisted on administering an oath himself. He merely *proposed* a simple stipulation. Madej, as a notary public duly appointed in the State of Connecticut, would administer the oath. Defendants had every right to reject that proposal. Stipulation, after all, is a "*voluntary* agreement between opposing parties". Black's Law Dictionary (11th ed. 2019) (emphasis added). And they did. (Madej has since engaged a regular court reporter.) But instead of simply voicing their objection, defendants accused Madej of "intending to serve as a court reporter", and flooded the docket requesting a blanket permission that all depositions be stayed. They did not even attempt to satisfy the mandatory conferral requirement of Local Rule 37. This pattern squarely suggests that Defendants bring no genuine discovery dispute to this Court now.

Yale's practice to cry foul over simple discovery is nothing new in this case. The University's ever-evolving justifications why they should be effectively immune from discovery have now taken all shapes and forms.

Previously, discovery was "not warranted" because – to cite some colorful language by defense counsel – plaintiff issued "a barrage of inappropriate communications and discovery-related pleadings to defense counsel and the defendants themselves", (DE 94-1, at *1), sent the "same pleading or discovery request multiple times through a variety of methods of communication" (Id.), and purportedly "engaged in repeated harassment of the defendants and their counsel" (DE 96, at *1). (Defendants' motion to stay discovery, despite these vivid stories, was denied.) Yale's filings in this case now form a chronological story, with identifiable protagonists, progressing storyline, and internal references. For example, when defendants complained of "harassment" in one chapter of their soon-to-be "book", supra, they returned to the same theme in another chapter, seven days later. "The plaintiff's harassment has not abated," they said. "In fact, it has increased." (DE 96-1, at 2*).

Now, Madej intends to flout Federal Rules of Civil Procedure that govern oral depositions. He "steadfastly refused to identify a court stenographer", (Id., at 1*), "insists on administering the oath to witnesses himself", (Id.), and "intends on being the officer before whom the depositions are taken". (Id., at *5). It seems that Madej burdened himself with depositions only to obtain inadmissible testimony.

These artfully constructed sentences have now spanned several hundred pages on the docket. None of them is relevant to this case, or to law in general. Defense counsel's storytelling abilities, admirable as they may be, belong squarely in the fiction writing department, not in the legal method.

Defendants artfully try to capitalize on a perception deeply entrenched in the legal profession: that *pro se* defendants do not understand the rules of procedure, do

not seek to understand them, and do not believe they need to understand them. It is against that backdrop that Yale's current story may hold some water. But why would any reasonable litigant notice a deposition and did not care whether the testimony he obtains is admissible, that is, whether he could use it in court? Why would his adversary remind him of that apparent mistake? And why would any litigant <u>insist</u> on obtaining inadmissible testimony? Again, this story makes little sense.

Defendants raise no substantive argument and fail to carry their burden of persuasion that depositions should not proceed. Their copious filings only serve to bury the parties and the Court in non-existing disputes. Accordingly, and for all the reasons that follow, defendants' motion must be denied.

## II.     PROCEDURAL BACKGROUND

On November 30, 2020, Plaintiff noticed three remote depositions of Mark Schenker, Yale University, and Sarah Insley Say. The depositions are scheduled for December 14, 16, and 18, respectively. Because Yale University is a corporation, its deposition is taken pursuant to Fed. R. Civ. P. 30(b)(6). Ms. Say is not a party to this case, and a Rule 45 subpoena was issued to ensure her appearance. All notices and a subpoena were served on defendants' counsel and are attached to this response. See <u>Exhibits A-C</u>.

On December 2, 2020, Madej provided Defendants with amended notices of deposition. See <u>Exhibits D-F</u>.

On December 7, 2020, Defendants moved to quash all three depositions. (DE 192, 194). They also requested an expedited ruling from the Court. (DE 195, 196).

On December 9, 2020, Judge Hall denied Defendants' request to stay discovery pending a motion to dismiss (DE 197).

On December 11, 2020, Madej submitted this response to Defendants' Motions.

## III.    LEGAL STANDARD

The "party resisting discovery bears the burden of showing why discovery should be denied." Cole v. Towers Perrin Forster & Crosby, 256 F.R.D. 79, 80 (D. Conn. 2009) (Smith T.). The objecting party must do more than "simply intone [the] familiar litany that [discovery is] burdensome, oppressive or overly broad." In re Priceline.com Inc. Securities Litigation, 233 F.R.D. 83, 85 (D. Conn. 2005) (Squatrito, J.), citing Compagnie Francaise d'Assurance Pour le Commerce Exterieur v. Phillips Petrol. Co., 105 F.R.D. 16, 42 (S.D.N.Y. 1984). That party must show "**specifically** how, despite the broad and liberal construction afforded the federal discovery rules, each request is [] overly broad, burdensome or oppressive … by submitting affidavits or offering evidence revealing the nature of the burden." Id. (cleaned up[1]) (emphasis added). "[G]eneral and conclusory objections as to relevance, overbreadth, or burden are insufficient." N. Shore-Long Island Jewish Health Sys., Inc. v. MultiPlan, Inc., 325 F.R.D. 36, 48 (E.D.N.Y. 2018).

With respect to a subpoena, "the mere assertion that [it] is burdensome, without evidence to prove the claim, cannot form the basis for an 'undue burden' finding." In re County of Orange, 208 B.R. 117, 121 (1997). Similarly, "general injuries from discovery

---

[1] The parenthetical "cleaned up" indicates that internal quotation marks, alterations, and citations have been omitted from the cited passage. Jack Metzler, *Cleaning Up Quotation*s, 18 J. App. Prac. & Process 143 (2017), available at https://dx.doi.org/10.2139/ssrn.2935374. See, e.g., Lewis v. Siwicki, 944 F.3d 427, 434 (2d Cir. 2019); United States v. Rankin, 422 F. Supp. 3d 564, 590 (D. Conn. 2019) (Meyer, J.); Lenti v. Connecticut, Case No. 3:20-cv-127, at *10 (D. Conn. July 24, 2020) (Underhill, S.).

are insufficient to warrant issuance of a protective order. Instead, it must be shown that disclosure will cause a clearly defined and serious injury." Beyer v. Anchor Insulation Co., Case No. 3:13-cv-1576 (JBA), at *7 (D. Conn. Aug. 9, 2016) (cleaned up).

## IV.   DISCUSSION

### A. **Defendants Do Not, and Cannot Satisfy Their Burden of Persuasion That Depositions Should Not Proceed**

Defendants seek to quash depositions. They bear the burden of showing why depositions should not proceed. Dominion Res. Servs., Inc. v. Alstom Power, Inc., Case No. 3:16-cv-544 (JCH) (SALM), at *2 (D. Conn. Aug. 18, 2017), citing Cole v. Towers Perrin Forster & Crosby, 256 F.R.D. 79, 80 (D. Conn. 2009). Here, the Yale Defendants do not, and cannot meet the substantive burden of persuasion even minimally.

Defendants' Motions reveal no articulable reason grounded in law or in fact why depositions should not proceed. Defendants are confident that "plaintiff is insisting on administering the oath to witnesses himself", and therefore ask that all "notices of deposition [be] quashed". (Doc. 192-1, at *1). Defendants' subjective contentions, without more, are irrelevant. These illogical beliefs also fail because Madej engaged a court reporter, a person different than himself, who will swear in the witnesses. That fact alone is sufficient to deny Yale's motion.

Throughout more than 60 pages that Yale submitted to the Court, the University fails to display anything but sheer unwillingness to submit themselves to sworn depositions. This unwillingness is of no importance in judicial proceedings. Presumably, no litigant derives pleasure from being deposed. But this general feeling cannot be characterized even as "a general injury", which itself is "insufficient to warrant a

protective order" or a limitation on discovery. Beyer, supra (cleaned up). Rather, any burden that falls on Yale here is identical to the burden that any party faces in litigation. Defendants affirmatively accepted that burden when they chose to defend this suit.

Yale's filings fail to articulate any "clearly defined and serious injury" resulting from the depositions. Beyer v. Anchor Insulation Co., Case No. 3:13-cv-1576 (JBA), at *7 (D. Conn. Aug. 9, 2016) (Arterton J.). Defendants present nothing more than "pat, generic, non-specific objections, intoning the same boilerplate language". In re Priceline.com Inc. Securities Litigation, 233 F.R.D. at 85, citing Obiajulu v. City of Rochester, 166 F.R.D. 293, 295 (W.D.N.Y.1996). Such objections "are inconsistent with both the letter and the spirit of the Federal Rules of Civil Procedure". Id.

Underneath counsel's stories, Defendants admit that all depositions noticed were properly noticed and demand compliance. Specifically, Yale concedes that all depositions were noticed on November 30, 2020, or more than 2 weeks in advance, which in this Circuit is reasonable. See, e.g., In re Rule 45 Subpoena Issued to Cablevision Sys. Corp. Regarding IP Address 69.120.35.31, 2010 WL 2219343, at *5 (E.D.N.Y. Feb. 5, 2010), report and recommendation adopted in part, 2010 WL 1686811 (E.D.N.Y. Apr. 26, 2010) (fourteen days presumptively reasonable); Wis. Province of Soc. of Jesus v. Cassem, Case No. 3:17-cv-01477 (VLB), at *6 (D. Conn. Aug. 22, 2019) (Bryant V.) (more than fourteen days reasonable). Counsel also concedes that he received links to specific Zoom meeting rooms, dissipating Yale's chances to successfully claim "undue burden". Madej even offered to ship a hard copy of all exhibits to the Defendants before the deposition. See Exhibit H.

The University Defendants failed to carry their burden of persuasion, or to even raise it above the speculative level. Their motion must therefore be denied.

### B. Defendants Flouted Their Conferral Obligations Under Fed. R. Civ. P. 37(a) and L.R. 37

Defendants' filings raise a discovery dispute. This Court has established a mechanism for any party that wishes to <u>resolve</u> a discovery dispute.

Whenever a discovery dispute arises, the moving party must first "confer with opposing counsel, in person or by telephone, discuss the discovery issues in detail and in a good faith effort to eliminate or reduce the area of controversy, and to arrive at a mutually satisfactory resolution". L.R. 37(a) (cleaned up). The conferral must be meaningful. <u>See</u>, e.g., [Norris v. Gen. Elec. Emps. Fed. Credit Union](#), Case No. 3:19-cv-741 (SRU), at *6 (D. Conn. Oct. 22, 2020) (Underhill S.) (denying a motion when parties offered only general details about their conferral).

If conferring does not resolve the discovery issues, or resolves them only in part, the moving counsel must attach to their motion an affidavit certifying compliance with the duty to confer in good faith but has been unable to reach such an agreement." L. R. 37(a).

Alternatively, Judge Hall operates a simplified procedure to resolve discovery disputes without motion practice and full briefing. See *Standing Order Re: Discovery*. (DE 9).

Under Local Rule 37(a), a movant **must** confer with opposing counsel and must discuss discovery disputes in detail and in good faith." [Doe v. Mastoloni](#), 307 F.R.D. 305, 313 (D. Conn. 2015) (Haight, C.) (emphasis added). The Local Rule 37

mechanism is meant to be self-executing, that is, one that parties use without judicial intervention. There is ample case law from this District demonstrating that compliance with the conferral requirement is not optional. See, e.g., J-Square Mktg., Inc. v. Sipex Corp., 1999 WL 608817, at *6 (D. Conn. Aug. 9, 1999) (concluding that the plaintiff failed to comply with the district's meet and confer requirement when the plaintiff moved to strike portions of the defendants' confidentiality designations before conferring with the defendants' counsel); Wade v. Churyk, Case No. 3:15-cv-609 (RNC) (D. Conn. Feb. 13, 2018) (Martinez, D.) (denying a motion to compel for non-compliance with the conferral requirement); Myers v. Andzel, Case No. 1:06-cv-14420 (RWS), 2007 WL 3256865 (S.D.N.Y. Oct. 15, 2007) (denying plaintiff's motion under Fed. R. Civ. P. 37 because plaintiff failed to meet and confer with defendant). This Court even cautioned that "[f]ailure to hold a good faith conference is ground for the award of attorney's fees and other sanctions." Brown v. Clayton, Case No. 3:11-cv-714 (JCH), at *4 n.2 (D. Conn. July 31, 2012) (Fitzsimmons, H.), citing Krishnakumar v. Dunkin' Donuts, Inc., 2000 WL 1838319, *1 (S.D.N.Y. Dec. 12, 2000).

Here, the University defendants disregarded all procedures this Court has designed for them, and for other parties that wish to resolve a genuine discovery dispute. Yale failed to satisfy even **one** element of the conferral requirement. Defense counsel did not confer, or even attempt to confer, "by person or by telephone", or by alternative remote means such as Zoom. Defendants "cursory communications fall short of meeting [their] obligation to meet and confer". Saliga v. Chemtura Corp., Case No. 3:12-cv-832 (VAB), 2015 WL 851849, at *2 (D. Conn. Feb. 26, 2015) (Martinez D.). Defendants' efforts were "perfunctory" at best; "[c]ounsel never had any meaningful

dialogue". Id. Neither have defendants exerted a good faith effort to reduce the area of controversy – and, in any case, did not certify their efforts by submitting an affidavit.

The affidavit requirement is not a technicality; it is "designed to assist the Court in ensuring that (1) the parties have made a good faith effort to reach resolution without Court intervention and (2) the Court is aware of the extent to which any disputes have been resolved in whole or in part". Hollis v. Dep't of Mental Health, Case No. 3:14-cv-00516 (AWT) (SALM), at *4 (D. Conn. Apr. 8, 2016) (failure to submit an affidavit was "significant"). Otherwise, the Court must scour parties' submissions, attachments, email, and more – often hundreds of them – without any clear statement from the parties what are the facts that led to the dispute.

Defendants are experienced at disregarding their duty to confer. This Court has already admonished Yale's counsel for non-compliance with Local Rule 37. (DE 72). Since that admonishment, Yale has filed at least five discovery motions. None complied with the straightforward and non-controversial affidavit requirement. "All discovery issues should be resolved in good faith by counsel in accordance with their obligations to the Court under the Federal Rules of Civil Procedure and the District's Local Rules." Acosta v. Puccio, Case No. 3:18-cv-532 (MPS), at *7 (D. Conn. May 10, 2019) (Shea, M.). The issues in this case could have also been resolved amicably. Had Defendants wished to carry their duty to confer.

The Second Circuit has repeatedly stated the importance of following discovery orders of the Court, warning that "[a] party who flouts such orders does so at his peril." Sieck v. Russo, 869 F.2d 131, 134 (2d Cir. 1989). Defendants should not benefit from their lack of compliance with non-controversial orders governing discovery. If

Defendants genuinely wished to resolve a dispute, they had ample methods and time to do so. If defendants' counsel is unwilling to agree on a simple phone call to agree on minutiae of deposition logistics, then he should not be rewarded with relief that circumvents all prescribed procedures for discovery disputes.

### C. This Court Already Denied Primary Relief Defendants Seek

Defendants sought sweeping relief: staying all depositions until Yale's Motion to Dismiss is ruled on. This Court previously denied a similar request on the record (DE 83). Now, this Court again denied Yale's request, (DE 197), consistent with this Court's "normal practice that filing a motion to dismiss does not stay discovery." Michel v. Yale University, Case No. 3:20-cv-01080 (JCH), ECF #50 (D. Conn. Dec. 7, 2020).

Defendants' writings reveal that they seek no assurances that depositions will proceed in an organized fashion, or according to previously agreed upon procedures. If defendants sought any of these, they could have simply conferred and communicated their wishes or concerns. A full communication between the parties reveals that Yale's counsel refused to respond to a proposed stipulation that would govern the depositions. See Exhibit H.

Defendants only seek to stay depositions altogether, a relief that this Court already denied. Because Yale Defendants seek no further relief, their motion must be denied.

## V. PROCEDURES FOR DEPOSITIONS

### A. Generally

In general, parties may stipulate, without a leave of court, that a deposition be taken "before any person". Fed. R. Civ. P. 29(a). But without a stipulation, a deposition

must be taken before (A) "an officer authorized to administer oaths by the law in the place of examination" or (B) "a person appointed by the court to administer oaths and take testimony." Fed. R. Civ. P. 28(a) (cleaned up). In Connecticut, for example, notaries public are authorized by law to administer oaths. Conn. Gen. Stat. § 1-24 (providing that "notaries public" are "officers [who] may administer oaths"). See [Lagnese v. Town of Waterbury Town of Manchester](), Case No. 15-cv-975 (AWT) (SALM), at *3 (D. Conn. Nov. 23, 2015) (Merriam S.) (finding no reason why depositions could not be taken before notaries public). But a deposition may not be taken before (1) a relative or an employee of any party; (2) a relative or an employee of any party's counsel; or a person "financially interested in the action". Fed. R. Civ. P. 28(c).

### B. **Procedures That Will Govern Depositions In This Case**

Here, Madej engaged a certified court reporter – <u>not himself</u>, as defendants mistakenly believe – who is "authorized to administer oaths by the law in the place of examination", that is, in Connecticut. Fed. R. Civ. P. 29(a). That reporter will serve as an officer within the meaning of Rule 28 and will perform the duties prescribed by Rule 30(b)(5). The reporter will transcribe, record, and administer the deponent's oath remotely. The court reporter's transcript will serve as the official record of the deponent's testimony. Should circumstances arise which renders the court reporter's transcript unavailable, then a new transcript can be created by use of the video recording of the deposition.

The deposition will be taken by means of video conference. Parties agreed to use the Zoom platform for these depositions. Defendants were already provided with links to a specially designated virtual rooms for each noticed deposition.

Should defendants be concerned with further logistical issues, they should clearly articulate them and communicate to Madej. After all, "discovery is intended to take place without judicial intervention." John v. Bridgeport Bd. of Educ., Case No. 3:14-cv-1484 (RNC), at *2 (D. Conn. Sep. 12, 2016) (Martinez D.) (cleaned up). The University Defendants should not be rewarded for embroiling the Court in petty disputes, solely to delay the proceedings.

## VI. CONCLUSION

Defendants' motion should be denied in its entirety. The scheduled depositions should proceed in the due course. For the foregoing reasons, this Court should not accept further discovery motions from the Defendants unless they comply with Local Rule 37.

Dated: December 11, 2020.

Respectfully submitted,

By: /s/ Jakub Madej
Jakub J. Madej
415 Boston Post Rd Ste 3-1102
Milford, CT 06460
T: (203) 928-8486
F: (203) 902-0070
E: j.madej@lawsheet.com