IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JAKUB MADEJ, | : | |
| Plaintiff, | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 3:20-cv-133 (JCH) (SALM) |
| YALE UNIVERSITY ET AL., | : | |
| Defendants. | : | DECEMBER 14, 2020 |

**PLAINTIFF'S MEMORANDUM OF IN OPPOSITION TO**
**DEFENDANTS' MOTION TO DISMISS UNDER RULE 12(b)(6) [DE 185]**

Plaintiff Jakub Madej ("Madej") submits this memorandum in opposition to

Defendants' Motions to Dismiss (DE 185). Defendants invoke Federal Rule of Civil

Procedure 12(b)(6) and seek to dismiss the Second Amended Complaint ("SAC",

"Complaint") for failure to state a claim. For the foregoing reasons, this Court should

swiftly dispose of Defendants' Motion. To reach this conclusion, the Court need not

venture beyond Second Circuit's controlling precedents.

*First,* the sole issue in this motion is whether SAC states a plausible claim for

relief. It does. At this juncture, the Court need not – and cannot – decide anything more.

What evidence Madej may offer to prove his claims, what defenses the University may

assert, and whose theory will prevail – these are all questions of fact that belong at

summary judgment or trial. They can only be resolved after discovery, that is, after both

parties gain "mutual knowledge of all the relevant facts". Hickman v. Taylor, 329 U.S.

495, 507 (1947).

*Second,* Twombly, Iqbal, and their progeny are fatal to Yale's motion. Rule

12(b)(6) motions attack the complaint. At this stage, the court must accept all facts in

the complaint as true and draws all inferences in pleader's favor. Evidence does not

enter the court's analysis. But these Defendants append the record with a multitude of exhibits – emails, letters, affidavits – to reach a conclusion it could not credibly advance under the applicable legal standard. Unabashedly, the University cites these materials <u>a total of 53 times</u>. These materials are plain hearsay and must be disregarded at this stage.

Yale offers no legal authority for its fanciful proposition that a motion to dismiss can be converted into a trial on the merits. Nor could it. Under well-established precedents, a Rule 12(b)(6) motion only assesses the 'legal feasibility' of the complaint. Accordingly, the Court must consider only the 'four corners' of the complaint, accept the facts alleged as true, and draw all inferences in non-movant's favor. Defendants simply present an alternative theory that purports to explain some facts alleged here. This a party may do only at trial. Not at the 12(b)(6) stage. Attempting to do otherwise, Defendants brazenly invite this Court to also turn a blind eye to the controlling law governing motions under Rule 12(b)(6). This approach dooms Yale's motion. Yale's attempts to re-invent the applicable legal standard, solely to persuade the Court to reach a favorable verdict – squarely display the University's flawed approach to this litigation and utter disregard to the law.

*Third,* Defendants present no dispositive issues of law for the court to consider at this stage. The only legal points the University appears to advance here are inapplicable – because Defendants operate under a very different set of facts than those alleged in SAC.

Defendants' true motives in bringing its motion are clear. They are unhappy that a student – especially one who proceeds without counsel – who has personal

knowledge of how reality within Yale College contradicts the paper trail is bold enough to seek redress for his harms and to establish the facts, with evidence, in open court, subject to the same rules of evidence as its adversary. Yale urges the Court to dismiss most claims by invoking a familiar fact pattern: that of an unsatisfied, disgruntled student, who sues his university because the education he received "was not good enough". These 'facts' are nowhere to be found in the Complaint, for Madej does not complaint about education at all. Like a mantra, the University repeats *verbatim* what it must prove to succeed: that plaintiff "failed to state a claim" (11 times), "failed to allege facts" supporting his claims (18 times), and others "failed to" (64 times). But repeating what one must prove does not bring it any closer to the proof, nor does it make that proof any more likely to be found.

Based on Defendant's persistent misrepresentations of the law and facts, the Court should be all the more skeptical of University's arguments and refuse to indulge its efforts to waste the Court's time and to prevent Plaintiff from receiving redress for his harms. If the University believes Madej's claims are 'patently false', they should answer the complaint and affirmatively say so.

Ultimately, this case turns on issues of fact. But the present motion tests only the issues of law. At this stage, the complaint articulates claims sufficient to withstand the 12(b)(6) attack.

Accordingly, for the reasons set forth below, Madej respectfully requests that this Court deny Defendant's motion to dismiss.

# TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................... 5

II.   FACTUAL BACKGROUND...................................................................... 6

III.  LEGAL STANDARD ............................................................................... 9

IV.   DISCUSSION ........................................................................................ 10

   A.   The Court's Analysis Is Confined to Four Corners of The Complaint .................. 10

   B.   Madej's Complaint Satisfies the Requirements of Rule 8, Which Is All That Is

   Required at This Stage ........................................................................ 15

      1.   Madej's Allegations Must Be Accepted as True ................................ 16

      2.   Inferences Must Be Drawn in Madej's Favor..................................... 16

      3.   Allegations of Fraud Are Pled with Particularity................................ 17

      4.   The Educational Malpractice Doctrine Does Not Apply Here ........................... 19

   C.   Everything Else Remains for the Finder of Fact to Decide ................................. 21

V.    CONCLUSION........................................................................................ 22

## I.     INTRODUCTION

This case is about committees. A committee is "a body of persons delegated to consider, investigate, take action on, or report on some matter". Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com/dictionary/committee. (Accessed 13 Dec. 2020). For some lawyers, a committee is "[a] subordinate group to which a deliberative assembly or other organization refers business for consideration, investigation, oversight, or action". Black's Law Dictionary (11th ed. 2019).

All federal legislation in the United States begins in a congressional committee. In the House, 20 standing committees conduct hearings, organize markups, and process nominations. Each of these committees has a chairman, a ranking member, and some members. Each maintains an ample record of the proceedings, memorializing who said what and when, who voted aye, and who voted no on each roll call. Any human being with access to the internet may access that record, whenever she likes, from wherever she likes. Each committee has a website. Each publicly announces its public hearings, and most broadcast their hearings live. Every bill to be discussed is immediately published, for any interested party to read them.

Corporations also have committees. An audit committee, for example, is responsible for oversight of the financial reporting process. Each publicly traded company in the United States must have an audit committee, with enough independent members, adhering to pre-established regulations, or face delisting, regulatory action, or litigation by the Government. Unlike congressional committees, their corporate equivalents do not conduct business publicly. But the corporation's board generally

ensures they perform their work adequately. (One need not look far into recent history to find examples of what happens when they do not work.)

The committee in this case purportedly hears appeals in certain cases concerning undergraduate students at Yale College. The Committee does not have a website. It does not have any written rules setting out the form, manner or procedure in which the Committee should be, or indeed is run. The Committee lacks any documentation that stats its purpose, who are its members, how are they elected, how meetings are conducted, what responsibilities the Committee and its members have, and what their duties are. The Committee does not have a physical office, or a telephone number. The Committee does not maintain any record. Nor does it have any members or regular hearings. The Committee in this case is a mere creature of fiction that defendants run to create an appearance of meritorious decision-making, by one's peers, upon examination of evidence, subject to reasonable expectations. Yale University successfully maintained a façade committee for years, for penetrating a body that does not have any physical representation, address, record, or written rules is a futile exercise. Especially when that committee claims to have members and rules – and everyone involved has no reason or desire to question these fraudulent representations.

## II.   FACTUAL BACKGROUND

Plaintiff is a student at Yale University. SAC ¶ 1. Originally from Poland, he came to the United States in 2016 to study at Yale College. He worked as a research assistant for a prominent Nobel Prize winning economist since 2016. Id. ¶ 13.

In March 2019, Madej sought to reduce his course load because he accumulated enough "credits" to graduate. Id. ¶¶ 18, 22. At Yale, a student requests that his "course

load" be changed by submitting a form to an assistant of that student's dean of college, on paper and in person. Id. The dean of college must approve the new schedule before submitting it for further processing. Id. ¶ 25. At Yale, the dean of college serves as "the chief academic and personal adviser to students in her residential college", oversees their "academic progress", and "supports students on personal matters". Id. ¶ 4.

Before Madej decided to withdraw from a class, he confirmed with his dean's assistant whether doing so would have any consequences for his graduation as a matter of Yale's administrative policies. Id. ¶ 19. She responded in the negative. Id. Madej thus requested that he be withdrawn from that course, and his dean of college, Jessie Royce Hill ("Hill"), processed that request. Id.

In October 2019, Madej inadvertently learned that when Hill approved the new course schedule, she automatically placed him on "academic warning". Id. ¶ 22. Hill later claimed she notified Madej but admitted that she did not when challenged. Id. ¶ 24. Academic warning is usually imposed on underperforming students who struggle academically. Id. ¶ 20. Madej's academic warning was automatically imposed not for his grades or class performance, but for completing two courses in the Spring 2020 semester, rather than two and a half. Id. Madej voluntarily lowered his course below that threshold level relying on Yale College's staff who assured him that no administrative consequences follow this ministerial choice. Id.

In October 2020, Madej sustained a serious injury, which required a surgery. Id. ¶ 27. He did not receive requested disability accommodations, which Yale previously approved and he was entitled to. Id. ¶¶ 27-32. He ultimately received one "F" grade. Id. ¶ 35. Yale's internal rules allegedly automatically prompt a withdrawal of any student

who receives an "F" grade while on "academic warning", forcing him to re-apply to seek admission after no less than a year. Madej sought to explain the circumstances that led to this quagmire. His dean refused to meet in person but advised Madej to write a petition to the Committee on Honors and Academic Standing ("Committee"). Id. ¶ 40. She instructed Madej to send the petition to herself, and she would submit it to the Committee. Hoping for a non-adversarial resolution, Madej wrote a petition and submitted it as directed. Id. ¶¶ 41-44.

Yale College represented to Madej that the Committee is "an internal adjudicative body within Yale College responsible for enforcing, interpreting, and applying the academic regulations of Yale College", Id. ¶ 49, that it is "composed of representatives of the Yale College Dean's Office, tenured and non-tenured faculty members, as well as undergraduate students", Id. ¶ 71, and that it meets "about twice a month during the regular academic year". Id. ¶ 70. It also represented who its purported members are. Id. ¶ 50. Mark Schenker, who allegedly served as the Committee's chairman since academic year 1998, represented to Madej via letter on January 13, 2020 that the Committee voted without dissent not to approve Madej's petition. Id. ¶ 52.

In reality, the Committee did not meet to vote on Madej's petition, or at any time in academic year 2019/2020. Id. at 62. Since at least October 2018[1], the Committee has existed only on paper and was an *alter ego* of defendant Mark Schenker, who fraudulently disguised his own decisions as purportedly rendered by a deliberative body. Specifically, the Committee has never adopted any written policies or procedures; it lacked any founding or controlling document that stated its purpose, who are its

---

[1] The date of October 2018 corresponds to a case of another student before the Committee, to whom Defendants made similarly untruthful representations.

members, how are they elected, how meetings are conducted, or what are the responsibilities of the Committee and its members. Id. ¶ 58. It did not have a physical office or an address, a telephone number, or a website. Id. ¶ 59. No undergraduate students or faculty were its members, and neither did they participate in any 'deliberations'. Id. ¶ 55.

This case concerns only the Committee. It does not complain about the quality of education,

Madej brings five claims, which are briefly summarized as follows:

Count One: against Mark Schenker and Yale University for fraudulent misrepresentation.

Count Two: against Mark Schenker and Yale University for fraud.

Count Three: against Yale University for breach of contract and breach of the covenant of good faith and fair dealing.

Count Four: against all defendants for negligence and negligent infliction of emotional distress.

Count Five: against all defendants for interference with business expectations.

## III.    LEGAL STANDARD

A motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint, which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). A complaint does not require detailed factual allegations; it simply must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

The plausibility standard is not akin to a "probability requirement". Iqbal, 556 U.S. at 678; accord Twombly, 550 U.S. at 556 ("Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage…"). A well-pleaded complaint may proceed even if "a recovery is very remote and unlikely". Twombly, at 556.

"[A] motion under Rule 12(b)(6) presents a pure legal question, based on allegations contained within the four corners of the complaint[.]" Goldberg v. Danaher, 599 F.3d 181, 183 (2d Cir. 2010). "[A] ruling on a motion for dismissal pursuant to Rule 12(b)(6) is not an occasion for the court to make findings of fact." Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007).

The movant bears the burden of proof that no claim has been stated. Whitfield v. Imperatrice, 2010 WL 6032636, at *3 (E.D.N.Y. Sept. 17, 2010). See Ragin v. New York Times Co., 923 F.2d 995, 999 (2d Cir. 1991) ("any party moving to dismiss … must carry the burden of showing"); Bangura v. Hansen, 434 F.3d 487, 498 (6th Cir. 2006). Plaintiff need not defend against a Rule 12(b)(6) motion and may rest on the pleadings. Goldberg v. Danaher, 599 F.3d 181, 183–184 (2d Cir. 2010) (district court must undertake analysis of complaint and may not dismiss when complaint is sufficient, notwithstanding non-movant's failure to respond to motion).

## IV.    DISCUSSION

Because Yale moved to dismiss, the burden is on the University to show that Madej's complaint fails to state a plausible claim for relief.

### A.  The Court's Analysis Is Confined to Four Corners of The Complaint

As a threshold question, the court must decide what materials it may consider on this motion. Generally, on a motion to dismiss under Rule 12(b)(6), the court's analysis is confined to the facts asserted "within the four corners of the complaint", documents attached to the complaint, and matters of which judicial notice may be taken. Vikas Goel v. Bunge, Ltd., 820 F.3d 554, 559 (2d Cir. 2016) (the court "may review only a narrow universe of materials"; merely mentioning a document or offering "limiting quotations" not enough). See also Faulkner v. Beer, 463 F.3d 130, 134 (2d Cir. 2006) ("no material disputed issues of fact regarding the relevance of the document" necessary to consider a material outside the pleading). "Evidence does not enter into Rule 12(b)(6) analysis." Harasz v. Katz, 239 F. Supp. 3d 461, 466 (D. Conn. 2017). Evidence is properly examined at summary judgment or trial, where the trier of fact may assess the credibility of evidence and witnesses.

Here, the operative pleading is the Second Amended Complaint. (DE 170). The complaint contains no attachments. It references three letters written by Schenker, dated January 7, 15, and 19; these letters contain fraudulent statements, as alleged in the complaint[2]. (SAC, at ¶ 53). The Court has not taken judicial notice of any facts, and the Defendants have not requested that judicial notice of any facts or documents be taken. Accordingly, the court's analysis is confined to the 'four corners' of the complaint.

Defendants, contrary to these well-settled controlling principles, cite extrinsic materials in a sweeping and systematic fashion. The University's Motion references various letters, emails, internal policies, websites, an affidavit, and others – a total of 53 times. In so doing, the University seeks to transform Rule 12(b)(6) into a premature

---

[2] These letters appear on the record. See DE 23, at *140-148, also marked as "Exhibit 14".

summary judgment at best, and into a kangaroo trial at worst. A short table is warranted.

| How Cited: | Type of Material: | Cited on Pages | Total Cites |
|---|---|---|---|
| DX A | website | 2, 3, 3, 6, 21, 22, 28, 32, 34 | 9 |
| DX B | website | 12, 30 | 3 |
| DX C | email | 3, 6 | 2 |
| DX E | letter | 3, 4 | 3 |
| DX F | letter | 3 | 2 |
| PX 4 | Programs of Study | 7 | 1 |
| PX 13 | email | 3 | 4 |
| PX 14 | email, letter | 7, 10, 11, 12, 13, 14, 16 | 10 |
| PX 22 | letter/notice | 10, 23, 30 | 3 |
| PX 23 | email | 10, 11 | 3 |
| PX 24 | document/petition | 7, 25 | 2 |
| Schmertzler Affidavit | affidavit | 4, 5, 6 | 11 |
| | | | 53 |

None of these references can be considered here. "[A] Rule 12(b)(6) motion challenges the complaint <u>as presented by the plaintiff</u>". <u>Vikas Goel v. Bunge, Ltd.</u>, 820 F.3d 554, 559 (2d Cir. 2016) (emphasis added). "When addressing a 12(b)(6) motion, the court may <u>not</u> consider evidence proffered by the moving party or its opponent." <u>Thomas v. Calero</u>, 824 F. Supp. 2d 488, 497 (S.D.N.Y. 2011) (emphasis added); <u>Basak v. N.Y. State Dep't of Health & Celeste Johnson</u>, 9 F. Supp. 3d 383, 389 (S.D.N.Y. 2014) (the court may not consider evidence proffered by the moving party). "It is [] improper for the court to consider factual averments contained in affidavits on a Rule 12(b)(6) motion." <u>Amadei v. Nielsen</u>, 348 F. Supp. 3d 145, 155 (E.D.N.Y. 2018). <u>See also</u> <u>Glob. Network Commc'ns v. City of N.Y</u>, 458 F.3d 150, 155 (2d Cir. 2006) (district court erred by failing to convert a Rule 12(b)(6) motion into a Rule 56 motion for summary judgment, warranting reversal); <u>Nicosia v. Amazon.com, Inc.</u>, 834 F.3d 220,

234–235 (2d Cir. 2016) ("the district court erred in considering certain factual materials extrinsic to the complaint").

The practice under Rule 12(b)(6) is grounded in logic. To bring a suit in federal court, the plaintiff sets forth his allegations in a complaint. The complaint informs the defendants what is being alleged against them and why. By filing a complaint, plaintiff merely announces what he seeks to prove. Plaintiff's allegations must ultimately be proven with evidence. But in some cases, that complaint could not warrant relief even if all evidence on this planet supported pleader's allegations. To this effect, a court assumes that all allegations in the complaint are true and sees if that complaint "stated a claim", or whether plaintiff's complaint state a plausible claim of relief. The purpose of Rule 12(b)(6) also stems from judicial economy: discovery is unnecessary where everything it might uncover could not overcome the legal hurdles presented in the complaint. Here, Defendants do not argue that Madej does not state a claim. They do not argue that all evidence that can reasonably be found must support its theory. Rather, Defendants merely assert their own theory of the case, together with the facts in support, and urge the Court to find its theory conclusive. This fact-intensive inquiry is improper here.

The Second Circuit addressed diverging policies on Rule 12(b)(6) and Rule 56 motions in Glob. Network Commc'ns v. City of N.Y., 458 F.3d 150 (2d Cir. 2006). On a motion to dismiss, the court tests, "in a streamlined fashion, the formal sufficiency" of the plaintiff's complaint but does not resolve "its substantive merits". Id. at 155 (emphasis original). "The Rule thus assesses the legal feasibility of the complaint, but does not weigh the evidence that might be offered to support it." Id. "Substantive merits"

are more appropriately reserved for summary judgment, after parties conducted appropriate discovery. Id. See also Chambers v. Time Warner, Inc., 282 F.3d 147, 154 (2d Cir. 2002) (considering extraneous material "at odds" with the liberal pleading standard).

At this juncture, the Court does not estimate "whether [the] plaintiff will ultimately prevail". Bell Atl. Corp. v Twombly, 550 U.S. 544, 583 (2007). The court must only decide whether Madej "is entitled to offer evidence to support [his] claims." Id.

Defendants do not contend that they may present any exhibits on this motion, or that the Court may consider them. Rather, they silently seek to override the principles of Rule 12(b)(6) practice. Indeed, the University cites to no legal authority to support its startling position. Nothing in Adekoya[3], a Bivens case from the Western District of New York, supports Yale's position here. And neither does Lynch. In Lynch, the Second Circuit explained that "written instruments" that the court may consider at a 12(b)(6) motion, "generally refers to a legal document that defines rights, duties, entitlements, or liabilities, such as a statute, contract, will, promissory note, or share certificate[4]. Lynch v. City of N.Y., 952 F.3d 67, 79 (2d Cir. 2020), citing Black's Law Dictionary (10th ed. 2014). Here, no such "instrument" exists.

Defendants' arguments, stripped of its purported factual support, are naked and cannot satisfy their burden of proof. This alone is sufficient to deny defendants' motion.

---

[3] Defendants miscite this case as Adekoyu v. Herron [sic]. See Dismiss, at *8. The proper citation is Adekoya v. Herron, 2013 WL 6092507, at *1 (W.D.N.Y. Nov. 19, 2013).

[4] The logic of this approach is straightforward. In certain cases, for example in securities litigation, legal documents fully establish the legal relations of all parties, and parties rely on these documents in all of its conduct. But here, parties did not even sign a single contract.

Whenever a party moved to dismiss the Rule 12(b)(6), the Court has discretion to covert the motion to one for summary judgment. See <u>Sahu v. Union Carbide Corp.</u>, 548 F.3d 59, 60 (2d Cir. 2008). Doing so would be ill-advised here. *First*, Defendants do not seek summary judgment. *Second*, this case is all but one where there is "no genuine issue of material fact". Defendants are yet to answer the allegations. The proper course of action is for defendants to answer the complaint.

Madej specifically does not examine address any evidence that Defendants seek to advance here. Nor does he discuss what this evidence may unveil, or what evidence he seeks to use to prove his claims. Determining what evidence is admissible – which emails are genuine, which are taken out of context, and more – is properly done at trial, not here. It is a far cry for the Defendants to assert that all evidence would support its claims when they did not make a single statement under oath in this case, and who wish to present evidence in its favor without the benefit of cross-examination.

**B.** **<u>Madej's Complaint Satisfies the Requirements of Rule 8, Which Is All That Is Required at This Stage</u>**

Federal Rules only requires that the pleader submit a "short and plain statement of the claim showing that [he] is entitled to relief". Fed. R. Civ. P. 8(a)(2). That statement merely needs to "give the defendant fair notice of what the … claim is and the grounds upon which it rests." <u>Erickson v. Pardus</u>, 551 U.S. 89, 93 (2007), <u>quoting</u> <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957) (internal quotation marks omitted). A complaint governed by Rule 8 need not contain detailed factual allegations or specific evidence. <u>Arista Records v. Doe 3</u>, 604 F.3d 110, 119 (2d Cir. 2010). That complaint must only

plead facts that suggest the pleader's conclusion is plausible. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

Madej's Complaint readily satisfies that liberal standard. The SAC gives the Defendants a clear and concise description of what facts Madej alleges to be true, and on what grounds he seeks relief. Nothing more is required at this stage. And because defendants raise no dispositive issues of law, as demonstrated below, this is sufficient to survive scrutiny under Rule 12(b)(6).

### 1.  *Madej's Allegations Must Be Accepted as True*

Under the well-established standard of Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 556 U.S. 662 (2009), a complaint which contains sufficient factual allegations to state a plausible claim for relief will not be dismissed pursuant to FRCP 12(b)(6). Canzoneri v. Inc. Viii. of Rockville Ctr., 2013 WL 6330671 at *3 (E.D.N.Y.). This Court must assume the veracity of Plaintiff's well-pleaded factual allegations and determine whether the Complaint plausibly gives rise to an entitlement to relief. Iqbal, supra, 556 U.S. at 664. The issue is "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Todd v. Exxon Corp., 275 F.3d 191, 198 (2d Cir.2001), quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

In light of the detailed allegations in the Complaint, Defendants' motion must be denied in its entirety.

### 2.  *Inferences Must Be Drawn in Madej's Favor*

Defendants paint their own picture of the facts in this case. These characterizations must be disregarded not only because they are grounded in extrinsic evidence, as argued above, but also because all inferences on this motion must be drawn in Madej's favor. In other words, a different theory of the case that emphasizes specific points to support Yale's facts is inapposite here.

### 3.   *Allegations of Fraud Are Pled with Particularity*

Defendants correctly note that allegations of fraud must be pled "with particularity". Fed. R. Civ. P. 9(b). The SAC does exactly that. It identifies fraudulent statements in three official letters and on the University's website. SAC at ¶ ¶ 52-55, 70-71. It also states who (Mark Schenker and Yale University), where (official letters and a website), and when (on January 7, 15, and 19, 2020) made them. Id. at ¶ ¶ 51, 68, 71. See Tatum v. Mary Christina Oberg, 650 F. Supp. 2d 185, 191 (D. Conn. 2009), citing Rombach v. Chang, 355 F.3d 164, 170 (2d Cir. 2004) (explaining heightened pleading requirement on claims of fraud).

The SAC also alleges facts showing "that defendants had both the motive and opportunity to commit fraud, or facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." Id., quoted in U.S. ex Rel. Smith v. Yale University, 415 F. Supp. 2d 58, 83 (D. Conn. 2006).

Defendants argue that SAC does not pass the Rule 9(b) muster because it "only asserts conclusory allegations unsupported by facts". Dismiss at *11. But the Complaint does so without reservation. Whether a group of nine people met on January 14, 2020 at a particular time and place, pursuant to some written rules, for a concrete purpose is

a fact, not a conclusion. The University cites to a letter, where Schenker wrote that "the Committee has seven voting members and that a quorum of four is required to act on petitions". Id., at *12. But under SAC, these very statements were untrue, and Schenker knew they were not true when he wrote them. The Complaint does not dispute what Schenker wrote on any particular day, or what information the letter contains. Rather, it alleges that these pieces of information were untrue, and that Schenker knew them to be false when he made them. Defendants cannot defeat a bare-bones allegation that a statement included in a letter is false with a different reading of that same letter, only to conclude that these very statements are true. Neither does calling these allegations "patently false" make them any more or less plausible. A proper way for the Defendants to lay its factual allegations is an answer to a complaint, not a motion to dismiss where the court only examines the issues of law. That is, defendants will have an opportunity to argue their facts – and do so with evidence – but not on this motion.

They voluminously cite specific statements that under the SAC are fraudulent. Dismiss at *11. But their conclusion – that the complaint "only asserts conclusory allegations unsupported by facts" – reveals that Defendants misunderstand what is a "fact". To readily understand Madej's complaint, one does not need to ponder on what the meaning of the word "is" is[5]. SAC does not advance a far-fetched theory, where the same facts are both true and false. But the University reaches this conclusion without reservation, sometimes even resorting to escapades into what plaintiff's actions in this

---

[5] See Videotaped Testimony of President William J. Clinton before the Independent Counsel, August 17, 1998, available at: https://www.govinfo.gov/content/pkg/GPO-CDOC-105hdoc311/pdf/GPO-CDOC-105hdoc311-3.pdf, page 130, lines 5-8.

litigation – which are <u>outside</u> the complaint – may suggest about his beliefs. These conclusions are as irrelevant, as they are improper.

### 4. *The Educational Malpractice Doctrine Does Not Apply Here*

Defendants argue that by under negligence, Madej disguises an educational malpractice claim. "In educational malpractice cases, a plaintiff sues his or her academic institution for tortiously failing to provide adequate educational services." <u>Gupta v. New Britain General Hospital</u>, 239 Conn. 574, 591 n.15 (Conn. 1996). That doctrine forecloses generalized, unspecific claims "that the education was not good enough". <u>Id</u>. at 593. Here, the doctrine articulated in <u>Gupta</u> is inapplicable because SAC does not challenge that Yale failed to provide adequate educational services.

*First and foremost*, a service does not become educational because a "university" sells it to the public. Rather, most universities offer both educational and miscellaneous services. Yale College offers a four-year bachelor's program, whose customers (i.e. students) enroll in courses, obtain certifications, and have enhanced job prospects. These services are educational. But Yale also offers housing services to its students for a fee. It operates dining halls that serve students, faculty, and other interested parties, also for a fee. It owns, operates, and profits from more than thirty stores in New Haven. It rents conference spaces to corporations or anyone who wishes to pay for that space. These services are not educational, and they do not become any more "educational" because a university – or Yale University – sells them.

The present Complaint does not complain about "the overall quality of educational program", <u>Id</u>. at 592, or "[a] decision of an individual professor as to the

proper grade for a student in his course". Id. at 594. It does not allege that any course was substandard, or a professor disorganized. If anything, Madej was satisfied with Yale's educational services – he sought to remain at Yale in January to continue coursework, and now seeks the same. Yale's educational services – courses offered, professors employed, facilities available – were excellent. The SAC brings claims only against a sham administrative procedure embodied by the Committee, and false representations that Mark Schenker and Yale College made about it.

Madej does not allege that Yale failed to provide adequate educational services. Rather, he challenges the internal administrative procedures, designed and executed by career administrators, not professors or researchers.

Neither Madej does not allege that the Committee – in any shape or form – made an improper educational decision, for example by failing to consider some evidence, or putting too much weight on some factors. Rather, he alleges that (i) no students or faculty members ever convened to render a decision in his case; and (ii) that they did not do so for any other case brought by any other student since at least October 2018.

Notably, Madej does not allege that Defendants "acted negligently when they withdrew him pursuant to the Programs of Study". Dismiss, at 27. In other words, Madej does not fault the Defendants for all or some undefined circumstances that led to that withdrawal. Extending that argument inescapably leads to a non-sensical conclusion: that Yale is to be faulted for everything that happened to Madej when he was a student there. The SAC only alleges that Yale acted negligently by not establishing and implementing any policies or procedures that govern involuntary withdrawals – not just Madej's but that of all Yale College students.

Defendants also cite this Court's earlier ruling on a motion for preliminary injunction ("PI"). The present inquiry is independent from that for PI and governed by diverging standards of evidence. In deciding a motion for preliminary injunction, the court may consider otherwise inadmissible evidence, for example affidavits and hearsay evidence. Muwakil-Zakuri v. Zakuri, Case No. 17-CV-2062 (JCH), 2017 WL 6453399, at *1 (D. Conn. Dec. 11, 2017). At trial or at summary judgment, a court may only consider admissible evidence. Merry Charters, LLC v. Town of Stonington, 342 F. Supp. 2d 69, 75 (D. Conn. 2004). At a motion to dismiss, a court does not consider evidence. That defendants offered various exhibits seeking a favorable ruling – and that this Court denied the injunction – does not shift the analysis, and defendants do not contend otherwise.

Even assuming *arguendo* that the educational malpractice doctrine may apply here, the SAC pleads a viable claim under Gupta because it identifies "specific contractual promise[s]" that Yale breached, and these promises represent a "fundamental failure". Id. at 593. Gupta "does not foreclose a claim for a breach of a specific, identifiable promise." Bass v. Miss Porter's School, 738 F. Supp. 2d 307, 320 (D. Conn. 2010), citing Johnson v. Schmitz, 119 F. Supp. 2d 90, 96 (D. Conn. 2000) (cleaned up).

### C.  Everything Else Remains for the Finder of Fact to Decide

This case turns on issues on fact, which the finder of fact must decide on the basis of evidence. But the court does not resolve factual disputes when adjudicating a motion to dismiss. See Ashcroft v. Iqbal, 556 U.S. 662, 696 (2009) ("Twombly does not

require a court at the motion-to-dismiss stage to consider whether the factual allegations are probably true. We made it clear, on the contrary, that a court must take the allegations as true, no matter how skeptical the court may be."); Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007) (ruling on a Rule 12(b)(6) motions "not an occasion for the court to make findings of fact").

Defendants fail to carry their burden of proof. They do not argue that any "dispositive issues of law" warrant dismissal at this juncture. Neitzke v. Williams, 490 U.S. 319, 326 (1989). Defendants merely present their version of what happened in this case. Because Rule 12(b)(6) presents "a pure legal question," Goldberg v. Danaher, 599 F.3d 181, 183 (2d Cir. 2010), "the Court cannot resolve factual disputes on a motion to dismiss". Vale v. Great Neck Water Pollution Control Dist., 80 F. Supp. 3d 426, 438 (E.D.N.Y. 2015) (cleaned up).


## V.     CONCLUSION

Madej's complaint states a plausible claim for relief. It gives the University a fair notice of what these claims are, and what grounds they are based on. This is all that Federal Rules require at the pleading stage to withstand the scrutiny of Rule 12(b)(6).

Defendants did not argue otherwise. They simply set forth their case-in-chief, with distinct facts, evidence, and credibility determinations. They did not attack, much less succeeded in attacking, the legal feasibility of the complaint. But the court's analysis here is confined to the "legal feasibility". Accordingly, they failed to carry their burden of proof. Their Motion must be denied in its entirety.

Dated:  December 14, 2020.                    Respectfully submitted,

                                              By: /s/ Jakub Madej
                                                  Jakub J. Madej
                                                  415 Boston Post Rd Ste 3-1102
                                                  Milford, CT 06460
                                                  T: (203) 928-8486
                                                  F: (203) 902-0070
                                                  E: j.madej@lawsheet.com